**EDGCOMB LAW GROUP, LLP**
TIFFANY R. HEDGPETH (SBN 175134)
thedgpeth@edgcomb-law.com
355 S. Grand Ave., Ste. 2450, #2049
Los Angeles, CA   90071-9500
Telephone: (818) 861-7618

GABRIEL J. PADILLA (SBN 227591)
gpadilla@edgcomb-law.com
2102 Business Center Dr., Ste. 130, #651
Irvine, CA   92612-1001
Telephone: (818) 683-6904

*Attorneys for Defendant The GEO Group, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIGAYA RONDUEN; CARLOS CASTILLO; MIRIAM SCHEETZ; CESAR HERNANDEZ CARRILLO; WILFREDO GONZALEZ MENA; SOMBOON PHAYMANY; and YOLANDA MENDOZA, individually and on behalf of all others similarly situated,<br>    Plaintiffs,<br><br>v.<br><br>THE GEO GROUP, INC., a Florida corporation,<br>    Defendant.<br><br>THE GEO GROUP, INC., a Florida corporation,<br>    Third-Party Plaintiff<br><br>v.<br><br>SPARTAN CHEMICAL COMPANY, INC. and ROES 1-10,<br>    Third-Party Defendants | Case No.: 5:23-cv-00481 JGB(SHKx)<br>[CLASS ACTION]<br><br>**DEFENDANT THE GEO GROUP, INC.'S THIRD-PARTY COMPLAINT**<br><br>Trial Date:       None Set<br><br>Complaint Filed:   March 20, 2023 |

Defendant and Third-Party Plaintiff The GEO Group, Inc. ("GEO") hereby alleges the following against Third-Party Defendant Spartan Chemical Company, Inc. ("Third-Party Defendant Spartan") and ROES 1-10.

## JURISDICTION

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332 and 2201.

## VENUE

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the events giving rise to the claims herein occurred within this District and a substantial part of the events or omissions giving rise to these claims occurred within this District.

## THE PARTIES

3. Defendant and Third-Party Plaintiff GEO is a Florida corporation lawfully doing business in the State of California.

4. Third-Party Defendant Spartan is a corporation registered to do business in the State of California with its principal place of business in Maumee, Ohio.

5. GEO is presently unaware of the true names and capacities of the third-party defendants sued herein as ROES 1 through 10, inclusive, and therefore sues these third-party defendants by these fictitious names. GEO will amend or seek leave to amend this Third-Party Complaint to set forth the true names and capacities of ROES 1-10 when GEO ascertains them. GEO is informed and believes that each of these fictitiously named third-party defendants is in some manner liable for the conduct, acts, and injuries set forth herein.

## FACTUAL ALLEGATIONS

6. On or about January 7, 2020, GEO and Third-Party Defendant Spartan executed a Statement of Work Agreement effective December 1, 2019 through November 30, 2022. A true and correct copy of the "SOW" without exhibits is attached hereto as **Exhibit A**.

7. The stated intent of the SOW was to "cover[] the purchases of all Spartan

housekeeping, laundry, warewash, floor care, carpet care, food service, and drain maintenance chemicals made by GEO Group Facilities located in the United States."

8. The SOW contained a Dispenser and Chemical Cage Agreement, whereby "Spartan distributor associates will be responsible for providing dilution centers and containment cages to GEO Group Facilities at no - charge."

9. The SOW provided that Third-Party Defendant Spartan would provide Service Equipment Support to GEO, stating "Spartan Chemical authorized distributors and certified service technicians will provide monthly service calls to monitor and adjust as necessary the dispensing equipment to assure the proper ratio is dispensing for each application."

10. The service requirements to be provided by Third-Party Defendant Spartan under the SOW included "[s]ervicing and performance of preventative maintenance on Spartan Chemical's dispensers," "[t]raining as it relates to proper use of chemicals and dispensing equipment," and "SDS Binder updates."

11. One of the GEO facilities to which the SOW applied was the Adelanto Immigration and Customs Enforcement ("ICE") Processing Center in Adelanto, California (the "Adelanto Facility").

12. During the effective dates of the SOW, one of the disinfecting chemicals Third-Party Defendant Spartan provided to the Adelanto Facility was HDQ Neutral.

13. In accordance with the SOW, Third-Party Defendant Spartan installed or caused to be installed dispensing equipment for HDQ Neutral at various locations at the Adelanto Facility. Third-Party Defendant Spartan set the dilution rate at each location at two (2) ounces of HDQ Neutral per gallon of water.

14. On information and belief, Third-Party Defendant Spartan or one of its authorized representatives visited the Adelanto Facility approximately monthly and/or quarterly to provide service calls in accordance with the SOW, during which they would assure the proper ratio of HDQ Neutral was dispensing from the equipment for each application.

15. At no time during the relevant time period did Third-Party Defendant Spartan advise GEO that a dilution ratio for HDQ Neutral of two (2) ounces per gallon of water may be improper for its intended use at the Adelanto Facility.

16. GEO did not learn that a dilution ratio for HDQ Neutral of two (2) ounces per gallon of water could be challenged as improper until sometime in 2020 when GEO received dilution logs from Third-Party Defendant Spartan as part of GEO's efforts to respond to an investigation by the Environmental Protection Agency regarding use of HDQ Neutral at the Adelanto Facility.

17. The Adelanto Facility immediately ceased using HDQ Neutral altogether in accordance with a court order dated September 29, 2020, in litigation in this District entitled *Roman v. Wolf, et al.* (Case No. EDCV 20-00768 TJH (PVCx)).

18. On March 20, 2023, Plaintiffs filed their Complaint in this Court and initiated the underlying personal injury action against GEO alleging, among other things, that between February 2020 and April 2021, HDQ Neutral was improperly used at the Adelanto Facility. Among other allegations regarding purported improper use of HDQ Neutral, Plaintiffs claimed HDQ Neutral "should be diluted and applied at 1 ounce per gallon" but that "GEO consistently diluted and applied HDQ Neutral at 2 ounces per gallon."

19. GEO incorporates herein the contents of the Complaint by reference without admitting the allegations contained in the Complaint, the truth of which is expressly denied.

20. At all relevant times, Third-Party Defendant Spartan owed GEO both a contractual duty and a duty of care to ensure the ratio of HDQ Neutral dispensed, and the training provided with regard to HDQ Neutral, were appropriate for the Adelanto Facility. Said duty of care extended to detainees.

21. On information and belief, ROES 1-10 also owed a duty of care to ensure the ratio of HDQ Neutral dispensed, and training provided with regard to HDQ Neutral, were appropriate for the Adelanto Facility. Said duty of care extended to detainees.

22. On information and belief, should Plaintiffs' allegations prevail, Third Party Defendant Spartan and ROES 1-10 breached their duties of care to GEO and detainees.

23. GEO has incurred and will continue to incur legal and expert witness fees and costs defending itself in the underlying action. Such costs are a direct result of Third-Party Defendant Spartan's breach of contract and its duty of care and ROES 1-10's breach of its duty of care.

24. GEO denies that it has liability to Plaintiffs. However, should GEO be found liable to Plaintiffs, such liability should be allocated among all liable parties, including third-party defendants, based on relative fault.

## FIRST CAUSE OF ACTION

**(Breach of Contract)**

**(Against Third-Party Defendant Spartan)**

25. GEO hereby incorporates by reference the allegations contained in Paragraphs 1-24 of this Third-Party Complaint, as though fully set forth herein.

26. A valid contract existed between GEO and Third-Party Defendant Spartan during all relevant times in the form of the SOW attached to this Third-Party Complaint.

27. Third-Party Defendant Spartan owed an obligation to GEO under the SOW to properly dilute all chemicals it supplied to the Adelanto Facility during the relevant time period, including HDQ Neutral, as well as to provide appropriate training.

28. To the extent Plaintiffs are correct in their allegations regarding an improper dilution ratio and improper handling of HDQ Neutral, Third-Party Defendant Spartan's failure to properly set the dilution ratio of HDQ Neutral in the dispensing equipment provided to the Adelanto Facility and its failure to provide proper training were material breaches of the SOW.

29. Each and every service call by Third-Party Defendant Spartan to the Adelanto Facility during the relevant time period to monitor and adjust as necessary the dispensing equipment to assure the proper ratio of HDQ Neutral was dispensing for

each application or to provide training constitutes a material and continuing breach of the SOW.

30. GEO has performed all its obligations under the SOW, except those that have been prevented or excused by the acts of Third-Party Defendant Spartan.

31. GEO has been damaged as a result of Third-Party Defendant Spartan's breaches of the SOW, including having to defend itself in the underlying personal injury action.

32. By reason of the foregoing, GEO is entitled to recover from Third-Party Defendant Spartan any and all sums that GEO is compelled to pay to defend itself in the underlying litigation and/or as a result of any judgment or settlement in favor of Plaintiffs.

## SECOND CAUSE OF ACTION

### (Negligence)

### (Against Third-Party Defendant Spartan and ROES 1-10)

33. GEO hereby incorporates by reference the allegations contained in Paragraphs 1-32 of this Third-Party Complaint, as though fully set forth herein.

34. At all relevant times, Third-Party Defendant Spartan owed GEO a duty of care to ensure the ratio of HDQ Neutral dispensed, and the training provided with regard to HDQ Neutral, were proper and appropriate for the Adelanto Facility. Said duty of care extended to detainees.

35. On information and belief, ROES 1-10 also owed a duty of care to ensure the ratio of HDQ Neutral dispensed, and training provided with regard to HDQ Neutral, were proper and appropriate for the Adelanto Facility. Said duty of care extended to detainees.

36. Third party defendants breached their respective duties of care owed to GEO and detainees by failing to ensure the ratio of HDQ Neutral dispensed at the Adelanto Facility was proper and appropriate.

37. Third party defendants breached their respective duties of care owed to

1  GEO and detainees by failing to provide training with regard to HDQ Neutral that was
2  proper and appropriate for the Adelanto Facility.

3  38. The failure of third party defendants to ensure the ratio of HDQ Neutral
4  dispensed, and the training with regard to HDQ Neutral, were proper and appropriate
5  for the Adelanto Facility has caused GEO to suffer and to continue to suffer damages
6  as alleged herein.

7  39. As a direct and proximate result of the negligence of third party defendants
8  as alleged herein, GEO has incurred and may continue to incur costs, losses, and other
9  damages including, but not limited to, defending against the allegations in Plaintiffs'
10 Complaint.

## THIRD CAUSE OF ACTION

**(Implied Indemnity)**

**(Against Third-Party Defendant Spartan and ROES 1-10)**

14 40. GEO hereby incorporates by reference the allegations contained in
15 Paragraphs 1-39 of this Third-Party Complaint, as though fully set forth herein.

16 41. GEO is informed and believes, and thereupon alleges, that at the time and
17 place of the incident(s) alleged in Plaintiffs' Complaint, on file herein, third-party
18 defendants, and each of them, were negligent, careless, and reckless in a manner which
19 was the proximate cause of the injuries and damages, if any, sustained by Plaintiffs in
20 the underlying action.

21 42. GEO is informed and believes, and thereupon alleges, that in the event
22 said negligence of third-party defendants, and each of them, is determined to have been
23 a proximate cause of the injuries and damages, if any, allegedly sustained by Plaintiffs
24 in the underlying action, then GEO is entitled to indemnity from said third-party
25 defendants, and each of them, on a comparative fault basis and in an amount equal to
26 the portion of the verdict or judgment herein, if any, which is attributable to the
27 negligent acts or omissions of third-party defendants, and each of them.
28 ///

## FOURTH CAUSE OF ACTION

### (Equitable Indemnity)

### (Against Third-Party Defendant Spartan and ROES 1-10)

43. GEO hereby incorporates by reference the allegations contained in Paragraphs 1-42 of this Third-Party Complaint, as though fully set forth herein.

44. While GEO denies any liability arising from the Plaintiffs' Complaint, in response to Plaintiffs' Complaint, GEO has incurred and may continue to incur costs, losses, and damages relating to the improper dilution of HDQ Neutral and/or improper training at the Adelanto Facility by third-party defendants.

45. While GEO denies any liability arising from the allegations in Plaintiffs' Complaint, GEO is informed and believes and thereon alleges that the improper dilution of HDQ Neutral and/or improper training at the Adelanto Facility was caused, in whole or in part, by third-party defendants, as herein alleged. Thus, the costs, losses, and other damages incurred and that may be incurred by GEO are and will be in part the result of the acts and/or omissions of third-party defendants.

46. GEO is thus equitably entitled to be fully reimbursed or indemnified by third-party defendants for those costs, losses, and other damages.

47. GEO also has incurred and may continue to incur legal fees and costs in defending itself in connection with Plaintiffs' Complaint as a result of the improper dilution of HDQ Neutral and/or improper training at the Adelanto Facility by third-party defendants.

48. GEO is thus entitled to be fully reimbursed or indemnified by third-party defendants for the attorneys' fees and other costs incurred and that may be incurred by GEO in defending against Plaintiffs' Complaint.

## FIFTH CAUSE OF ACTION

### (Contribution)

### (Against Third-Party Defendant Spartan and ROES 1-10)

49. GEO hereby incorporates by reference the allegations contained in

Paragraphs 1-48 of this Third-Party Complaint, as though fully set forth herein.

50. GEO contends that it is in no way legally responsible for the damages alleged in Plaintiffs' Complaint. However, if as a result of the matters there alleged, GEO is held liable for all or any part of Plaintiffs' damages, third-party defendants, to the extent that their fault is determined by the Court, are obligated to reimburse GEO for all or any liability so assessed by way of contribution, and GEO accordingly asserts hereby its right to contribution.

## SIXTH CAUSE OF ACTION

### (Declaratory Relief)

### (Against Third-Party Defendant Spartan and ROES 1-10)

51. GEO hereby incorporates by reference the allegations contained in Paragraphs 1-50 of this Third-Party Complaint, as though fully set forth herein.

52. An actual, substantial, and justiciable controversy now exists between GEO, on the one hand, and Third-Party Defendant Spartan, on the other hand, in that GEO contends, and GEO is informed and believes and thereon alleges, that Third-Party Defendant Spartan denies or will deny, that Third-Party Defendant Spartan's conduct has resulted in any damages to GEO.

53. On information and belief, ROES 1-10 deny or will deny that they have liability for GEO's damages as alleged in the Third-Party Complaint, and GEO contends otherwise.

54. While GEO denies any liability arising out of Plaintiffs' Complaint, GEO desires a judicial determination of the respective rights and obligations of GEO and third-party defendants with respect to the damages alleged in this Third-Party Complaint, including third-party defendants' obligation to fully reimburse GEO for costs incurred to date and third-party defendants' obligations with respect to any judgment or settlement that may occur in the underlying action.

55. A declaratory judgment is necessary and appropriate because it will obviate the need for multiple lawsuits regarding each party's liability for costs or

damages GEO may sustain in the future, thereby providing a complete resolution of the differences between the parties herein.

## **PRAYER FOR RELIEF**

WHEREFORE, GEO prays for judgment against third-party defendants as follows:

1. For a declaration of the parties' respective rights and duties;

2. That GEO recover judgment against third-party defendants, and each of them, for the total amount of any sums which GEO is adjudged liable to the Plaintiffs;

3. For all damages arising out of the third-party defendants' indemnification and contractual obligations, including all costs, expenses and attorneys' fees associated with the claims made in this action;

4. For an order of the Court declaring the percentage of fault, if any, between GEO and third-party defendants for damages and losses allegedly caused to Plaintiffs;

5. For an order of the Court awarding judgment in favor of GEO and against third-party defendants based upon the relative percentage of fault of each party;

6. For an order of the Court that GEO is entitled to be fully indemnified by third-party defendants for any and all settlements, compromises and/or judgments agreed to or entered as a result of the underlying action;

7. For interest on all sums awarded as damages, upon which GEO is entitled prejudgment interest in accordance with applicable terms; and

8. For such other and further relief as the court may deem just and proper.

DATED:   July 20, 2023

Respectfully submitted,

EDGCOMB LAW GROUP, LLP,

By: /s/ Gabriel J. Padilla
Tiffany R. Hedgpeth
Gabriel J. Padilla
thedgpeth@edgcomb-law.com
gpadilla@edgcomb-law.com
*Attorneys for Defendant*
*The GEO Group, Inc.*

**DEMAND FOR JURY TRIAL**

Pursuant to FRCP 38(b) and Local Rule 38-1, GEO demands a jury trial on all issues so triable.

DATED: July 20, 2023

Respectfully submitted,

EDGCOMB LAW GROUP, LLP,

By: /s/ Gabriel J. Padilla
Tiffany R. Hedgpeth
Gabriel J. Padilla
thedgpeth@edgcomb-law.com
gpadilla@edgcomb-law.com
*Attorneys for Defendant
The GEO Group, Inc.*

10
DEFENDANT THE GEO GROUP, INC.'S THIRD-PARTY COMPLAINT

# EXHIBIT A



 

# Statement of Work Agreement

## Effective Dates: December 1st, 2019-November 30th 2022

| | | | |
|---|---|---|---|
| SUPPLIER: | Spartan Chemical Company, Inc. | BUYER: | GEO Group Facilities |
| ADDRESS: | 1110 Spartan Drive<br>Maumee, OH 43537 | ADDRESS: | 4955 Technology Way<br>Boca Raton, FL 33431 |
| ACCT. MGR: | Doug Peterson | MANAGER: | Todd Nadrich |
| TEL. NO: | 423-794-7397 | TEL. NO: | 561-999-7349 |
| FAX NO: | 419-724-7500 | FAX NO: | 561-699-0933 |
| EMAIL: | dpeterson@spartanchemical.com | EMAIL: | tnadrich@geogroup.com |
| WEB SITE: | www.spartanchemical.com | WEB SITE: | www.geogroup.com |

ITEMS/SERVICES COVERED: All Spartan Chemical Products & Services

**INTENT:**

This Statement of Work Agreement covers the purchases of all Spartan housekeeping, laundry, warewash, floor care, carpet care, food service, and drain maintenance chemicals made by GEO Group Facilities located in the United States. The only products approved for the Spartan / GEO Group Facilities Program are listed in GEO Group Facilities Approved Formulary at the conclusion of this document. All requests for additional products must be made to Spartan Account Manager and approved by the GEO Group regional or corporate offices. **(* See Approved Formulary Exhibit A)**

**\*The approved product formulary includes both approved for general use and special project restoration items. This is intended to eliminate any unnecessary items from being purchased or brought in to GEO facilities\***

Exhibit A
11



**ORDERING PROCESS:**

GEO Group Facilities will place orders directly with Spartan Chemical via phone, fax, email or Spartans web ordering platform.  The GEO Group customer service / order agent will be:

Claire Mendoza
cmendoza@spartanchemical.com
1-800-537-8990 Ext 205
1-419-897-9862 FAX Number
http://www.b2bgateway.net/OrderPortalSpartan/login.asp

The attached GEO Facility Order Guide **(Exhibit B)** can be used to facilitate ease of transaction.

Orders will be immediately routed to assigned distribution center for delivery in 3-5 business days. A listing of the servicing distributors is outlined on the provided directory. **(See Directory Exhibit C)**

Once delivery to each GEO facility has been made, the servicing distributor will submit a proof of delivery to Spartan Chemical.  Once the Proof of delivery has been confirmed, Spartan Chemical will invoice the GEO group facility.

*Note:* Spartan Chemical distributor associates will not provide additional items unless instructed by GEO Region or GEO corporate office.  Items currently being purchased by GEO facilities will be done so at the sole discretion of the individual GEO facility.

**SHIPPING INSTRUCTIONS:**

Products will be shipped from a Spartan Chemical Authorized Distributor selected by Spartan Chemical, On all orders of $350 or more, freight will be prepaid and not charged to GEO Group Facilities . Orders less than $350 shall be shipped from an appointed distributor, and a freight charge may be added to invoice.

**MINIMUM PURCHASE ORDER QUANTITY:**
No minimum order quantity. However, see shipping instructions above. To minimize transaction costs and freight charges, GEO Group Facilities  will make a reasonable attempt to consolidate ordering.

**PAYMENT TERMS:**  Net 30 days

Exhibit A
12



**REMITTANCE ADDRESS:**   Spartan Chemical Company, Inc.
P.O. Box 1472
Toledo, OH 43603-1472

**LEAD TIME:**  Orders will be shipped within 3-5 days of receipt of order

**PRICES:**

Pricing for Spartan Chemical products will be based on current Exhibit A formulary pricing.  All GEO pricing will be held firm until December 31st 2021.

**SERVICE EQUIPMENT SUPPORT:**

Spartan Chemical authorized distributors and certified service technicians will provide monthly service calls to monitor and adjust as necessary the dispensing equipment to assure the proper ratio is dispensing for each application. Service requirements are as follows:
- Servicing and performance of preventative maintenance on Spartan Chemical's dispensers
- Servicing dish machines as it relates to proper dispensing of chemicals
- Servicing laundry dispensers as it relates to the proper dosing of the Spartan laundry products
- Training as it relates to proper use of chemicals and dispensing equipment.
- SDS Binder updates

A service summary report shall be provided to each facility upon completion of each service call. The report will include; service performed, findings & actions.

**ACCOUNT REPRESENTATION:**

Spartan Chemical Company will assign Spartan Regional Sales Managers to oversee and visit each GEO Group Facilities to assist and provide on-site, hands on, and classroom training. Training will be provided on GEO specific training modules including but not limited to, GHS Standards,  HazCom, OSHA Bloodborne Pathogens, Carpet Care, Restroom Care, Hard Floor Care, Green Cleaning. Spartan Regional Sales Managers will perform comprehensive audits of the facilities quarterly and report the findings to the following contacts:

- Warden
- Fire and Safety manager
- Business office manager

Exhibit A

Case 5:23-cv-00481-JGB-SHK   Document 35   Filed 07/20/23   Page 16 of 18   Page ID #:287



- Kitchen Manager
- Laundry Manager

The quarterly audits will be sent to each Regional Vice President for review upon collection of all facility level reports. **(Exhibit E – Quartely Regional Manager Inspections)**

Spartan Regional Sales Managers are available for any problems, concerns, or questions from GEO Group Facilities Supervisors. Any site visits performed by Regional Managers will be followed by a **(Exhibit F- RM Site Visit Form)**

**REPORTING**

GEO will receive monthly usage reports. Reports will be provided at no cost to GEO and contain the following:

- Orders by facility
- Cost per facility per month
- Cost per inmate per day
    - Kitchen
    - Laundry
    - Housekeeping
- Company Average
- Division Average

Reports will be sent to GEO Corporate office as well as Regional Vice Presidents. Spartan Chemical will host monthly review calls with field team to address any spikes in usage and report corrective measures to each regional vice president.

**DISPENSER AND CHEMICAL CAGE AGREEMENT:**

Spartan distributor associates will be responsible for providing dilution centers and containment cages to GEO Group Facilities at no – charge. Dispenser and containment cage needs to be determined by Spartan Chemical Regional manager upon initial facility walkthrough. Replacement dispensers and chemical containment cages due to abuse or neglect will be a responsibility of the GEO group facility.

**TRAINING & SUPPORT MATERIALS:**

Spartan will provide GEO Group Facilities the following point of use and value add training materials.

1. Customized Wall Charts

Exhibit A
14



    2.    Customized GEO Training Certification Program
    3.    Web Based English / Spanish Clean √ Program
    4.    GEO Continuum of Care program training available

**ROLL OUT PROCEDURES:**

- GEO to notify Wardens, Business Managers, and Fire and Safety contacts of Program and alert them that a Spartan Team Member will be contacting them to introduce / reintroduce the Spartan Program benefits and conduct Site Specific survey.

- GEO to notify facilities to minimize off contract chemical purchases in anticipation of converting to new program.

- Prior to survey and installation local Spartan Team Members to contact each Warden and schedule introduction visit. (Meeting time approximately 1 hour)

    - Warden
    - Deputy Warden
    - Housekeeping Managers
    - Maintenance Manager
    - Kitchen Manager
    - Fire & Safety
    - Laundry Manager
    - Business Manager
    - IT Manager
    - Anyone else the Warden feels will benefit

- Local Spartan Team Members and person designated by the Warden to tour facility and complete survey. (Complete same day as introduction meeting)

- Initial product ordered and initial install. (As scheduled approximately 2 – 3 weeks after survey)

- Follow-up and begin training. (Initial training during install, regular training on a scheduled basis thereafter)

Exhibit A

15



- For facilities with Vocational Program or desire to have Vocational Program, start working with Regional Vocational Program Managers to modify/build GEO specific program. (To be determined by GEO/Spartan Corporate)

**Accepted by Authorized Representatives**

**Supplier:** Spartan Chemical Company, Inc.     **Buyer:** GEO Group Facilities

**Name:**   Dave Reed     **Name:** Todd Nadrich
Todd Nadrich
Corporate Director
Sourcing and Supply
The GEO Group, Inc.

**Title:**   Vice President National Accounts     **Title:** Director Sourcing & Supply

**Signature:** David N Reed     **Signature:** *[signature]*

**Date:** January 7, 2020     **Date** 1/6/2020

*David N. Reed*