SOCIAL JUSTICE LEGAL FOUNDATION
Maria del Pilar Gonzalez Morales (SBN 308550)
pgonzalez@socialjusticelaw.org
Vanessa M. Domenichelli (SBN 326867)
vdomenichelli@socialjusticelaw.org
Shubhra Shivpuri (SBN 295543)
sshivpuri@socialjusticelaw.org
523 W 6th St, Suite 450
Los Angeles, California 90014
Telephone:   (213) 542-5241; Fax: (213) 542-5241

HUESTON HENNIGAN LLP
John C. Hueston (SBN 164921)
jhueston@hueston.com
Robert N, Klieger (SBN 192962)
rklieger@hueston.com
Jacob D. Muller (SBN 335519)
jmuller@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:   (213) 788-4340
Facsimile:   (888) 775-0898

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIGAYA RONDUEN, et al., | Case No. 23-cv-00481-JGB (SHK) |
| Plaintiffs, | [CLASS ACTION] |
| vs. | **JOINT RULE 26(f) REPORT** |
| THE GEO GROUP, INC., a Florida corporation, | Judge:      Hon. Jesus G. Bernal |
| Defendant. | Date:       October 2, 2023<br>Time:       11:00 AM<br>Location: Courtroom 1 |
| THE GEO GROUP, INC., a Florida corporation, | |
| Third-Party Plaintiff, | |
| vs. | |
| SPARTAN CHEMICAL COMPANY, INC. and ROES 1-10, | |
| Third-Party Defendants. | |

The parties to the above-captioned matter hereby submit this Joint Report pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, Local Rule 26-1, and the Court's Order Setting Scheduling Conference. The parties, through their respective counsel, met and conferred regarding this report and the proposed trial plan on August 31, 2023, and continued to meet and confer by telephone and email on multiple occasions prior to the filing of this report.

## A.     STATEMENT OF THE CASE

### 1. Plaintiffs' Statement:

This action arises out of Defendant The GEO Group Inc.'s ("Defendant" or "GEO") tortious, negligent, and fraudulent conduct that led to the poisoning of the individual Plaintiffs and more than 1,300 other individuals detained at Adelanto Detention Center ("Adelanto" or "the Facility"). From February 2020 until April 2021, Defendant indiscriminately used HDQ Neutral—a powerful aerosol chemical— against the manufacturer's and regulators' safety guidelines, including by incessantly spraying indoors, improperly diluting the chemical, and failing to provide Personal Protective Equipment (PPE) or training to detained people. GEO implemented policies, practices and procedures that misrepresented to Plaintiffs, the putative class, and the public the necessity and its safe use of HDQ Neutral. GEO's fraudulent scheme further harmed Plaintiffs and the class. Their months-long exposure to HDQ Neutral lead detained people to experience acute and chronic healthcare issues, including but not limited to: persistent coughs, headaches, nasal bleeding, itchiness of the eyes and throat, loss of sight, vomiting, and dizziness. Through this lawsuit, Plaintiffs seek compensation for the harmful actions of GEO on behalf of themselves and all others detained at the Facility.

Plaintiffs assert claims against Defendant for violations of Cal. Civ. Code §§ 1710(2), 1710(3), and 1714. Plaintiffs seek compensatory, special, and medical monitoring damages to compensate Plaintiffs and the class for their injuries, and punitive damages for Defendant's intentional and willful misconduct.

### 2. Defendant's Statement

GEO is a private company that operates the Adelanto Immigration and Customs Enforcement ("ICE") Processing Center under a contract with ICE through an intergovernmental service agreement with the City of Adelanto. GEO denies all Plaintiffs' allegations, including that it mishandled HDQ Neutral, engaged in any form of deceit, or has any liability for Plaintiffs' asserted causes of action and alleged damages.

Class certification is not appropriate in this toxic exposure personal injury and deceit case because of the highly individualized nature of Plaintiffs' claims and damages. Plaintiffs and putative class members all had different experiences at the Adelanto Facility, including but not limited to: length and time period of detention; living arrangements and work experiences; levels of exposure to HDQ Neutral; misrepresentations they allegedly heard from different people at different times and places at the facility; and injuries suffered. Plaintiffs will not be able to satisfy the commonality requirement of FRCP 23 or be able to show that common questions predominate over individualized ones and, therefore, may also not be adequate class representatives. At a minimum, the proposed class is overbroad. Plaintiffs' claims also lack merit as they will be unable to establish causation as to all causes of action and will be unable to establish, at a minimum, justifiable reliance in support of their deceit claims. In addition, GEO has several affirmative defenses. All claims of some or all named Plaintiffs (as wells other putative class members) may be barred by the statute of limitations and some or all of the Plaintiffs (as wells other putative class members) may have consented to the alleged conduct or been contributorily negligent. Finally, joint tortfeasor Third-party Defendant Spartan Chemical Company, the supplier of HDQ Neutral to the Facility, owed a contractual duty to GEO to properly dilute the HDQ Neutral and provide training as to its proper use.

/ / /

/ / /

**B.    SUBJECT MATTER JURISDICTION**

Pursuant to 28 U.S.C. § 1332 the Court has subject matter jurisdiction because the Parties are diverse and the amount in controversy exceeds $75,000.

**C.    LEGAL ISSUES**

**1. Plaintiffs' Statement**

The principal legal issues in the matter are as follows:

1. Whether Defendant GEO violated California Civil Code § 1714(a) by negligently failing to fulfill its special duty of care to protect Plaintiffs and the Detained Class from foreseeable harms stemming from Defendant's improper use of HDQ Neutral.

2. Whether Defendant GEO intentionally assaulted and physically battered Plaintiffs and the Detained Class with the intent to harm Plaintiffs and the Detained Class by wrongfully touching both groups and spraying a toxic chemical mixture on and around their person while detained in the Facility. Plaintiffs claim that Defendant did so with malice and oppression and with a conscious disregard for Plaintiffs' and the Detained Class's rights, making Defendant GEO liable for punitive damages under California Civil Code § 329.

3. Whether Defendant GEO acted wantonly, recklessly, negligently, and carelessly in owning, operating, leasing, possessing, managing, maintaining, securing, inspecting, servicing, staffing, and/or otherwise controlling Adelanto, and thus committed a violation of California Civil Code § 1714(a).

4. Whether Defendant GEO violated California Civil Code § 1710(3) by intentionally concealing and suppressing its improper use of HDQ Neutral indoors on and around Plaintiffs and the Detained Class, by improperly diluting HDQ Neutral, and by failing to provide protective

equipment, among other failures, with the intent to defraud Plaintiffs and the Detained Class.

5. Whether Defendant GEO violated California Civil Code § 1710(1) after making false and material misrepresentations to the public regarding its use of HDQ Neutral in Adelanto. Whether, in making such misrepresentations, Defendant GEO acted with fraud, malice and oppression, and with a conscious disregard of Plaintiffs' and the Detained Class's rights, making Defendant GEO liable for punitive damages under California Civil Code § 3294.

6. Whether Defendant GEO violated Cal. Civ. Code § 1710(2) by negligently making false and material misrepresentations regarding the use of HDQ Neutral at Adelanto or by omitting information of which they were aware, on which misrepresentations or omissions Plaintiffs and the Detained Class relied.

**2. Defendant's Statement**

GEO asserts the key legal issues in this matter include:

1. Whether this case is proper for class certification pursuant to Federal Rule of Civil Procedure 23.

2. Whether the proposed class is properly defined or whether it should be modified.

3. Whether the applicable statute of limitations bars all claims filed by some or all of the Plaintiffs and proposed class.

4. Whether Plaintiffs have failed to state a claim as to their negligence, premises liability, and battery causes of action.

5. Whether GEO breached any duty of care owed to Plaintiffs and the putative class.

6. Whether any breach of a duty of care owed by GEO caused Plaintiffs' alleged injuries.

7. Whether Plaintiffs' own conduct contributed to their alleged harm.

8. Whether Plaintiffs consented in any way to the alleged harmful conduct by GEO.

9. Whether some or all of Plaintiffs' alleged injuries were caused by a third party over whom GEO had no control or some other cause.

10. Whether Plaintiffs have failed to state a claim for deceit.

## D.   PARTIES AND EVIDENCE

### 1. Plaintiffs' Statement

Named Plaintiffs and members of the proposed class are persons formerly or currently detained at Adelanto and harmed by Defendant's improper use of HDQ Neutral at the Facility between February 2020 and April 2021. Plaintiffs challenge the practices, policies and procedures implemented by Defendant in its use of HDQ Neutral throughout the Facility and the fraudulent scheme devised by Defendant to cover up its improper use of the chemical. The named Plaintiffs' experiences capture those of the class members, including the acute and chronic health effects of people exposed to the improper use of HDQ Neutral. Defendant GEO has oversight and responsibility over the Facility and is ultimately responsible for the policies, practices, and procedures being challenged by Plaintiffs and the proposed class.

Plaintiffs will rely on various forms of evidence to establish Defendant GEO's liability for the harm associated with its misconduct, including both direct and circumstantial evidence. *United States v. Brugnara*, 856 F.3d 1198, 1208 (9th Cir. 2017) (holding that intent to defraud "may be established by circumstantial evidence" and may be "inferred from after-the-fact misrepresentations designed to cover up fraudulent conduct" (citation omitted)). Plaintiffs also anticipate relying on various sources of evidence to support their request for damages stemming from Defendant GEO's unlawful conduct. The evidence needed to support these damages will include, but is not limited to, medical records and expert testimony, from Plaintiffs and gathered through discovery, regarding the acute and chronic health effects of exposure

1    to HDQ Neutral and needed medical monitoring.

2        **2. Defendant's Statement**

3        GEO has filed a Third-Party Complaint against Spartan Chemical Company,

4    Inc. ("Spartan"). Spartan has yet to appear in this case. It is possible that Spartan's

5    contractor who serviced the Adelanto Facility may be added as a party.

6        Key witnesses for GEO will be (a) each of the seven (7) named Plaintiffs; (b)

7    current and/or former GEO personnel of the Adelanto Facility; (c) representatives of

8    Spartan and/or its contractor; (d) absent members of the class; (e) medical providers at

9    the Adelanto Facility during the relevant time period; (f) Plaintiffs' current and former

10   treating physicians; and (g) relevant experts.

11       The principal evidence for GEO will include Plaintiffs' records concerning their

12   detention at the Adelanto Facility; Plaintiffs' medical records; GEO business records

13   from the Adelanto Facility; relevant communications and directives from ICE

14   regarding the Adelanto Facility and HDQ Neutral; ICE and other governmental agency

15   policies and regulations related to the COVID-19 pandemic and use of disinfectants at

16   the Adelanto Facility; relevant contract(s) between Spartan and GEO and related

17   documents; documents related to the Environmental Protection Agency's July 2020

18   investigation of use of HDQ Neutral at the Adelanto Facility; and expert testimony.

19   **E.    DAMAGES**

20       **1. Plaintiffs' Statement**

21       In addition to declaratory relief, Plaintiffs seek compensatory and special

22   damages for the harm they, and members of the proposed class, experienced as a result

23   of Defendant's tortious, negligent and fraudulent conduct. Damages will arise out of

24   the physical and emotional harm experienced by Plaintiffs and members of the

25   proposed class as a result of their exposure to HDQ Neutral at Adelanto. The specific

26   damages associated with these physical and emotional harms will be determined after

27   the necessary discovery and expert testimony occurs.

28

1        In addition, Plaintiffs seek medical monitoring funds for the costs associated
2    with Plaintiffs' and members of the proposed class's medical conditions stemming
3    from exposure to HDQ Neutral. The specific damages associated with these medical
4    expenses will be proven after the necessary discovery and expert testimony occurs.
5    Plaintiffs anticipate, however, that given the extent of the acute and chronic health
6    symptoms and the size of the proposed class, damages will greatly exceed $75,000.
7    Finally, because Defendant GEO acted fraudulently, with malice, and with the intent
8    to oppress, Plaintiffs seek punitive damages.

9        **2. Defendant's Statement**

10      GEO denies Plaintiffs' allegations and denies that Plaintiffs or any members of
11   the proposed class are entitled to any damages, including medical monitoring, and
12   therefore believes Plaintiffs' realistic provable damages is zero. If Plaintiffs prevail on
13   their claims, GEO will seek contribution from third-party defendant Spartan for all or
14   some of any damages awarded to Plaintiffs, in an amount to be determined.

15   **F.   INSURANCE**

16       **1. Plaintiffs' Statement**

17       Plaintiffs are not currently aware of any insurance policy that covers the
18   claims they assert in this action.

19       **2. Defendant's Statement**

20      GEO is still investigating whether any insurance agreement exists that may
21   satisfy all or part of a possible judgment or to indemnify or reimburse for payments
22   made to satisfy the judgment. GEO will supplement this response if any insurance
23   coverage is determined as a result of that investigation.

24   **G.   MOTIONS**

25       There are no motions pending before the court.

26       On July 7, 2023, GEO filed a third-party complaint against Spartan Chemical
27   Company Inc. (ECF No. 37). GEO does not anticipate at this time joining additional

28

parties but reserves its right to do so. It is possible Third-Party Defendant Spartan may add its sub-contractor(s) as parties.

The Parties anticipate that additional motions may be necessary during discovery, including to amend pleadings, add new parties, enter a protective order governing disclosure of confidential documents, and compel discovery.

## H.    MANUAL FOR COMPLEX LITIGATION

Plaintiffs believe that the Court should not utilize the procedures in the Manual for Complex Litigation in this case. This case does not warrant application of the Manual for Complex Litigation the procedures because the common claims and issues maintained within this class action do not contain complex issues warranting such procedures. Furthermore, all information related to class members and relevant documents are maintained within Defendant's control and management, therefore, there is no additional complexity warranting procedures from the Manual for Complex Litigation.

GEO believes that this case warrants application of the procedures of the Manual for Complex Litigation including, but not limited to, those pertaining to managing class actions. In addition, there are additional layers of complexity added to this case because GEO operates under ICE's regulatory control and as required by federal law (*see* 8 C.F.R. §236.6) must clear the production of certain documents and information through ICE prior to turning it over to Plaintiffs and because of the likely difficulty in locating some class members.

## I.    STATUS OF DISCOVERY

There has been no discovery between the Parties in the suit thus far. The parties plan to exchange Initial Disclosures pursuant to FRCP Rule 26(a)(1) on September 25, 2023. The parties have agreed to produce documents identified in their Initial Disclosures within thirty (30) days of that date.

GEO is currently in the process of identifying and collecting documents, and in light of the expected volume of GEO's production, is expected to make a rolling

production of documents. Certain categories of documents will require a second review and clearance by ICE officials prior to production (even if in Defendant's possession). Defendant expects that this will delay discovery given that ICE is not a party to this lawsuit. Plaintiffs disagree that discovery will require delays, since the documents relevant to discovery, as outlined in section J of this report, are in Defendant's possession.

The Parties intend to agree on and file an ESI protocol to govern production of ESI in this action. The parties anticipate entering into a protective order that will include claw-back provisions for asserting privilege after inadvertent production and will govern the disclosure of medical and other sensitive or confidential information.

**J.     DISCOVERY PLAN**

**1. Plaintiffs' Statement**

a. Topics of Discovery

Plaintiffs anticipate that discovery (through document production, interrogatories, depositions, and requests for admission) will be conducted on the subjects and issues outlined in Plaintiffs' Complaint (ECF 1), including, but not limited to:

- Defendant's policies, practices and procedures related to its use of HDQ Neutral at the Facility between February 2020 and April 2021;
- Defendant's internal communications regarding its COVID-19 precautions, including its use of HDQ Neutral, trainings, safety instructions and any other information or documentation provided to Defendant's staff, Plaintiffs and/or class members regarding HDQ Neutral;
- Defendant's statements and communications with regulators, government entities, and other third parties regarding its COVID-19 precautions, including its use of HDQ Neutral;

- Defendant's statements, communications, contracts and any other documents with Spartan Chemical related to the purchasing and use of HDQ Neutral;

- Defendant's medical and detention records for Plaintiffs and class members;

- Medical requests, grievances, kites and any other documents from Plaintiffs or members of the class that are or were in Defendant's possession, custody, or control and are related to the use of HDQ Neutral or medical symptoms associated with exposure to HDQ Neutral.

b. Class certification discovery

Plaintiffs do not believe that bifurcation of expert discovery is necessary. Bifurcation of expert discovery would needlessly complicate the litigation and hinder judicial economy by unnecessarily delaying the litigation. In this case, the issues of class certification and merits significantly overlap, especially considering that the named Plaintiffs and putative class members have significant commonality and typicality in their claims; and were all exposed to the same policies, practices or procedures established by Defendant regarding its use of HDQ Neutral and the fraudulent scheme to deceive Plaintiffs and the class about the need and safety of Defendant's use of the chemical (See *Kamrava v. Cenlar Capital Corp.*, 2021 U.S. Dist. LEXIS 209314, *4). Given the significant overlap between issues bifurcation would not promote judicial economy. Furthermore, bifurcation would not promote the FRCP 23 requirement that class certification be decided at an early, practicable time. Defendant's proposed timeline would delay the decision until November 2024, approximately 21 months after Plaintiffs first filed their complaint. Meanwhile, the Plaintiffs and this Court will have spent considerable time and resources without the ability to move forward with discovery regarding the merits of this case. Plaintiffs intend to file their motion for class certification within the next two (2) months and

1  see no reason why extensive discovery is needed before doing so. Plaintiffs have been
2  suffering since 2020, in some instances, and Defendant's bifurcated discovery
3  proposal significantly delays their ability to seek justice in timely manner.

4              c.  Excessive discovery is unwarranted

5        Finally, Plaintiffs disagree with Defendant's requests to be allowed to issue up
6  to 50 interrogatories against each Plaintiff, which would total 350.  Plaintiffs believe
7  this will be unduly burdensome and unnecessary given the common questions of fact
8  amongst the Plaintiffs. Plaintiffs believe thirty (30) depositions to be equally
9  burdensome and unnecessary considering there are only 7 named Plaintiffs and
10 Plaintiffs expect to have no more than five (5) experts. Plaintiffs believe the number
11 of interrogatories should be limited as restricted under FRCP 33 (a) and depositions
12 should be limited to 10 per side.

13        **2. Defendant's Statement**

14              a.   <u>Bifurcation of expert disclosures and discovery</u>

15        GEO is not seeking to bifurcate fact discovery for class certification and the
16 merits, but believes it is appropriate to have separate expert disclosures and discovery
17 for certification issues, followed by separate disclosures related to the merits of the
18 allegations. The certification decision in this case is critical and given the highly
19 individualized nature of Plaintiffs' claims and alleged personal injury damages, GEO
20 believes Plaintiffs will not be able to satisfy the requirements of Federal Rule of Civil
21 Procedure Rule 23, in particular the requirements to prove commonality and to show
22 that common questions predominate. Expert discovery into certification issues will test
23 whether the claims and defenses are susceptible to class-wide proof.

24        Subjects on which pre-certification expert discovery will focus will include:

25        • <u>Extent of exposure to HDQ Neutral</u>. The type and level of potential
26            exposure to HDQ Neutral experienced by putative class members will
27            vary widely. For example, each class member was detained for a different
28            period and length of time, were housed in different units, and some were

part of the cleaning crew. Some detainees may have been exposed for months, some may have been exposed for weeks, some only for days or hours, or some not at all. Expert discovery on this issue will go directly to whether the various levels of exposure experienced by the detainees are subject to common proof.

- <u>Types of personal injuries suffered</u>. The personal injuries allegedly suffered by the detainees will vary greatly and depend on several factors, for example, pre-existing conditions any class member may have had prior to detention, types of employment before and after detention (e.g., whether they worked with chemicals or other toxic substances), lifestyle, and the state of the environment in which they live or grew up, just to name a few. Class members with present injuries have different interests than those who have no continuing injury or those whose injuries may not yet have manifested. For example, Plaintiffs seek damages in the form of medical monitoring on behalf of themselves and a proposed class of 1,300 detainees, all of which had different experiences at the Adelanto Facility. Recovery of medical monitoring damages is not available solely upon proof of an exposure to toxic chemicals; rather, there must be a further showing that the need for monitoring is a reasonably certain consequence of the exposure. In determining the reasonableness and necessity of monitoring, the Court must consider several factors including the significance and extent of the plaintiff's exposure to chemicals and it is for the trier of fact to decide on the basis of competent medical testimony whether and to what extent the particular plaintiff's exposure to toxic chemicals in a given situation justifies future periodic medical monitoring. *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1006-1009 (1993). Expert discovery on these issues will show the highly

individualized nature of Plaintiffs' claims and establish that certification is not appropriate.

Other subjects on which pre-certification discovery will be needed and which will weigh against certification include:

- The facts supporting Plaintiffs deceit claims, such as the misrepresentations they heard, and when, where, and from whom they heard them, all of which necessarily will be highly individualized;

- The capacity of detainees to read and understand English;

- The housing units in which detainees lived while at the Adelanto Facility;

- Whether detainees were part of the Voluntary Work Program;

- Whether detainees consented in any way, complained or filed grievances, or were contributorily negligent to their exposure to HDQ Neutral;

- Whether detainees had knowledge prior to March 19, 2021 from internal bulletins posted or outside sources (e.g., family members) that the Adelanto Facility was being investigated for alleged improper use of HDQ Neutral.

Before deciding on certification, the Court will need to make whatever factual and legal inquiries that are necessary under Rule 23 and, as such, given the complexity of this action, an evidentiary hearing will be necessary as to GEO's challenges to the factual bases for certification.

Finally, due to the fact-intensive inquiries necessitated by the individualized nature of the claims and alleged injuries of Plaintiffs and the putative class, GEO proposes the following changes in the limitations on discovery:

- As the Federal Rules will allow Plaintiffs to collectively issue 175 interrogatories against GEO, GEO requests the ability to issue up to 50 interrogatories against each Plaintiff.  This is necessary given the numerous causes of action and types of damages sought by Plaintiffs; and

- Defendant be allowed thirty (30) depositions. There are seven (7) named Plaintiffs in this action. GEO will need to depose, at least, each of the Plaintiffs, their medical providers, other witnesses they identify, representatives from Spartan, representatives from Spartan's subcontractor, and other third parties.

**K.    Discovery Cut-off**

**1. Plaintiffs' Statement**

Plaintiffs propose a fact discovery cut-off of July 15, 2024.

**2. Defendant's Statement**

GEO proposes a fact discovery cut-off of ninety (90) days after the Court's ruling on Plaintiffs' Motion for Class Certification. See attached Exhibit A.

**L.    EXPERT DISCOVERY**

**A. Plaintiffs' Statement**

Plaintiffs propose the following schedule for exchange of expert disclosure and expert discovery:

- Opening disclosures/reports: July 29, 2024
- Rebuttal disclosures/reports: September 9, 2024
- Deadline to complete expert depositions: October 16, 2024

**B. Defendant's Statement**

See attached Exhibit A.

**M.    DISPOSITIVE MOTIONS**

**A. Plaintiffs' Statement:** November 4, 2024

**B. Defendant's Position**

GEO anticipates filing motions for summary judgment and/or adjudication as to multiple issues, including statutes of limitation and inability of Plaintiffs to establish each element of their deceit claims. GEO proposes any deadline to file dispositive motions be at least 120 days after the Court's ruling on certification.

**N.    SETTLEMENT/ALTERNATIVE DISPUTE RESOLUTION**

To date, the parties have not engaged in settlement negotiations. The Parties agree that settlement discussions would be better served after a decision from the Court on class certification.

## O.    TRIAL ESTIMATE

In light of the scope of the claims, defenses and damages, along with the need for several subject matter experts, the Parties anticipate that the trial will take fifteen (15) days.

## P.    TRIAL COUNSEL

Plaintiffs' trial counsel will be Social Justice Legal Foundation and Hueston Hennigan LLP, including current attorneys of record: Maria del Pilar Gonzalez Morales, Vanessa Domenichelli, and Sara Haji (Social Justice Legal Foundation), and John C. Hueston and Robert N. Klieger (Hueston Hennigan LLP).

Defendant's trial counsel will be Edgcomb Law Group, LLP, including GEO's attorneys of record Tiffany Hedgpeth and Gabriel J. Padilla.

## Q.    INDEPENDENT EXPERT OR MASTER

The Parties do not believe that appointment of a master pursuant to Rule 53 or independent expert is necessary at this time.

## R.    TIMETABLE

As directed by the Court's Order Setting Scheduling Conference (ECF 45), the parties have filed herewith a proposed litigation schedule as **Exhibit A**.

## S.    OTHER ISSUES

As noted above, GEO anticipates there may be several issues that affect the status or management of this case, including voluminous document production, numerous depositions of Plaintiffs, their health care providers, and other persons Plaintiffs identify with knowledge of the issues raised in this litigation, as well as third-parties like Spartan and its subcontractor, delays in GEO's document production due to the necessity for prior review by ICE, non-English speaking witnesses, and GEO's proposed bifurcation of expert discovery issues. Plaintiff disagrees with Defendant's

position regarding the status issues and management of the case and notes that all of Defendant's proposals serve to delay and slow resolution of this case, which is actually not that many claims or parties. Spartan and its subcontractor have not appeared, Defendant has not identified the need for prior review by ICE, bifurcation of expert/class discovery is unnecessary, and this case should have the ordinary number of depositions.

Dated: September 18, 2023    THE SOCIAL JUSTICE LEGAL FOUNDATION

/s/ Maria del Pilar Gonzalez Morales
Maria del Pilar Gonzalez Morales
Vanessa Domenichelli
Shubhra Shivpuri

*Attorneys for Plaintiffs*

Dated: September 18, 2023    HUESTON HENNIGAN LLP

/s/ Jacob  Muller
John C. Hueston
Robert N. Klieger
Jacob Muller

*Attorneys for Plaintiffs*

Dated: September 18, 2023    EDGCOMB LAW GROUP, LLP

By: /s/ Gabriel J. Padilla
Tiffany R. Hedgpeth
Gabriel J. Padilla
thedgpeth@edgcomb-law.com
gpadilla@edgcomb-law.com

*Attorneys for Defendant and Third-Party Plaintiff The GEO Group, Inc.*