UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **5:23-cv-00481-JGB-SHK** | Date: | October 4, 2024 |
|----------|---------------------------|-------|-----------------|

| Title: | Ligaya Ronduen, et al., v. The Geo Group, Inc., a Florida corporation |
|--------|------------------------------------------------------------------------|

Present: The Honorable    Shashi H. Kewalramani, United States Magistrate Judge

| D. Castellanos | Not Reported |
|----------------|--------------|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---------------------------------------|---------------------------------------|
| None Present | None Present |

**Proceedings (IN CHAMBERS):    ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER [ECF No. 83]**

Before the Court is Plaintiffs Somboon Phaymany, Miriam Scheetz, and Cesar Hernandez Carrillo's (collectively, "Plaintiffs") Motion for a Protective Order ("Motion" or "Mot."), Electronic Case Filing Number ("ECF No.") 83, Mot., filed on April 26, 2024 pursuant to the Court's request for such briefing in the continued informal discovery dispute conference on April 24, 2024, ECF No. 81.  On May 8, 2024, The Geo Group, Inc., a Florida corporation ("Defendant" or "GEO") filed an Opposition to Plaintiff's Motion ("Opposition" or "Opp'n"), ECF No. 88, and on May 14, 2024, Plaintiff filed a Reply In Support of the Motion ("Reply"), ECF No. 91, Reply.  On August 1, 2024, the Court also received a communication that following discussion between the parties, certain aspects of the subpoenas were no longer at issue.

After reviewing the parties' arguments, for the reasons set forth in this Order, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion.

## I.    BACKGROUND

### A.    Procedural History and Background

On March 20, 2023, Plaintiffs filed the operative class action complaint ("Complaint" or "Compl."), ECF No. 1, Compl., alleging that Defendant's "improper use of a toxic chemical at Adelanto [Detention Center ("Adelanto" or "the Facility")] from February 2020 to April 2021" caused Plaintiffs to be "systematically poisoned, ignored, and left to suffer" by Defendant and that in response to "eerily similar reports of concerning symptoms," Defendant "den[ied] and misrepresent[ed] the use and effects of the toxic chemical to people detained and regulators

alike." Id. at 4.  This matter was filed in this Court based on the existence of diversity jurisdiction between the parties.  Id. at 7.

Plaintiffs allege that in response to the COVID-19 pandemic, Defendant's staff began "widely and indiscriminately spraying a powerful aerosol chemical called HDQ Neutral ["HDQ"] . . . into the air and onto all surfaces [in Adelanto], including food contact surfaces, telephones, rails, door handles, bathrooms, showers and sinks." Id. at 5.  Plaintiffs further allege that Defendant's staff sprayed HDQ "when people were eating, and the chemical mist would fall on their food[,]" "at night on or around the bunk beds and cells where people slept[,]" and "on at least one occasion, [Defendant's] staff sprayed individuals as a disciplinary measure." Id.  "Due to their incessant, months-long exposure to HDQ Neutral, Plaintiffs and others detained at Adelanto experienced acute symptoms, including but not limited to persistent cough, irritation of the throat and nasal passages, skin irritation and rashes, and headaches[,]" "had nosebleeds or found blood in their mouth and saliva[,]" "had debilitating headaches or felt dizzy and lightheaded[,]" "suffered anxiety during the months in which the chemical was sprayed at Adelanto[,]" and experienced other individualized symptoms. Id.  In response to complaints about Defendant's use of HDQ and its effects on Plaintiffs, Defendant's staff reassured Plaintiffs and other detained individuals that HDQ "was a necessary and safe protective measure against COVID-19." Id. at 6.  Defendant's medical staff "failed to provide accurate information to Plaintiffs about the cause of their suffering" and "failed to identify any potential medical risks related to such a significant exposure to HDQ Neutral." Id.

As a result, Plaintiffs asserted the following six causes of actions against Defendant: (1) negligence under Cal. Civ. Code § 1714(a); (2) battery; (3) premises liability under § 1714(a); (4) concealment under Cal. Civ. Code § 1710(3); (5) intentional misrepresentation under Cal. Civ. Code §1710(1); and (6) negligent misrepresentation under Civ. Code § 1710(2). Id. at 43-51.  Plaintiffs "seek compensatory and special damages[,]" "payment of medical monitoring and expenses for the next five years[,]" and "exemplary damages sufficient to punish and deter Defendant GEO from such misconduct in the future." Id. at 6-7.  On July 20, 2023, Defendant filed an Answer. ECF No. 34, Answer.

On April 23, 2024, the Court held a continued informal discovery dispute conference where Plaintiffs requested a protective order limiting the third-party subpoenas Defendant sent to Plaintiffs' health care providers on April 11, 2024.  ECF No. 81.  The Court ordered the parties to provide briefing regarding Plaintiffs' Motion.  Id.

## B.      The Disputed Third-Party Subpoenas

At issue are the following Defendant's three third party subpoenas to Plaintiffs' health care providers ("Subpoenas"), all served on April 11, 2024.  ECF Nos. 83-5 - 83-7.  With respect to Plaintiff Miriam Jeanette Scheetz, Defendant served a subpoena on Penn Medicine, California Correctional Health Care Services, Health & Imaging Records Center, and California Department of Corrections and Rehabilitation, Office of Legal Affairs seeking the following materials:

Any and all documents and electronically stored information relating to the

following:

1. Treatment, care, diagnosis and prognosis for any complaints or conditions relating to the eyes and eye area, head, lungs, nose, nasal passages, mouth, throat, stomach, and chest (including heart or lungs) of Ms. Scheetz.

2. Examination of the eyes and eye area, head, lungs, nose, nasal passages, mouth, throat, stomach, and chest (including heart or lungs) of Ms. Scheetz.

3. Treatment, care, examination, diagnosis, and prognosis of Ms. Scheetz for itchy, watery or inflamed eyes or eye area, tightness in chest, irritation in nose and throat, difficulty breathing, nose bleeds, bleeding in mouth, headaches, nausea, vomiting, blurred vision, madarosis, disorientation, memory recall issues, dizziness, sleep issues, fainting, or anxiety.

4. Medications prescribed to Ms. Sheetz to treat any of the body parts identified above in No. 1 or the conditions identified above in No. 3.

The above requested documents and records are to cover May 1, 2014 to the present.

5. Medications prescribed to or taken by Ms. Scheetz after May 1, 2019 that can cause any of the following:

   - Itchy eyes
   - Watery eyes
   - Blurred vision
   - Inflamed eyes or eye area
   - Pain in the eyes
   - Nose irritation
   - Throat irritation
   - Difficulty breathing
   - Nausea
   - Vomiting
   - Nose bleeds
   - Mouth bleeding
   - Headaches
   - Madarosis
   - Anxiety
   - Fainting
   - Tightness in the chest
   - Sleep issues

6. Medical billing documents for any treatment, care, or examination performed, or medications provided for conditions relating to the body parts identified above in No. 1 or the conditions identified above in No. 3 after

---

August 30, 2020; such documents are to include but not be limited to statements of charges and costs, payment transactions, billing adjustments, and insurance information and correspondence.

ECF No. 83-5 at 9-10. [1]

Similarly, Defendant served a subpoena seeking the following materials related to Plaintiff Somboon Phaymany on Dr. Michael Avila, Neighborhood Healthcare, California Correctional Health Care Services, Health & Imaging Records Center, and California Men's Colony San Luis Obispo, California Department of Corrections and Rehabilitation:

Any and all documents and electronically stored information relating to the following:

1.  Treatment, care, diagnosis, and prognosis for any complaints or conditions relating to skin, lungs, throat, head, and eyes of Mr. Phaymany.

2.  Examination of the skin, lungs, throat, head, and eyes of Mr. Phaymany.

3.  Treatment, care, examination, diagnosis, and prognosis of Mr. Phaymany for difficulty breathing, asthma, cough, headaches, dizziness, throat discomfort, itchiness, irritation, dry, itchy, or cracking skin, headaches, bloody nose., burning and itchiness in eyes, vision loss, anxiety, emotional distress.

4.  Medications prescribed to Mr. Phaymany to treat any of the body parts identified above in No. 1 or the conditions identified above in No. 3.

The above requested documents and records are to cover July 3, 2013 to the present.

5.  Medications prescribed to or taken by Mr. Phaymany after July 3, 2018 that can cause:

    - Difficulty breathing
    - Asthma
    - Cough
    - Headaches
    - Dizziness
    - Throat discomfort
    - Itchiness
    - Irritation
    - Dry, itchy or cracking skin
    - Headaches

---

[1] Item 6 in each of the three Subpoenas was only included in the subpoenas sent to Plaintiffs' private health care providers. See ECF Nos. 83-5 - 83-7.

---

- Bloody nose
- Burning and itchiness in eyes
- Vision loss
- Anxiety
- Emotional distress

6. Medical billing documents for any treatment care, or examination performed, or medications provided for conditions relating to the body parts identified above in No. 1 or the conditions identified above in No. 3 after April 14, 2020; such documents are to include but not be limited to statements of charges and costs, payment transactions, billing adjustments, and insurance information and correspondence.

ECF No. 83-6 at 9-10.

Finally, Defendant issued a subpoena seeking the following information related to Plaintiff Cesar Hernandez Carrillo on Dr. Maryjoe Romando and New Life FFSRP:

Any and all documents and electronically stored information relating to the following:

1. Treatment, care, diagnosis, and prognosis for any complaints or conditions relating to the eyes, nose, throat, chest (including heart and lungs), sinuses, nasal passages, skin, and head of Mr. Carrillo.

2. Examination of the eyes, nose, throat, chest (including heart and lungs), sinuses, nasal passages, skin and head of Mr. Carrillo.

3. Treatment, care, examination, diagnosis, and prognosis of Mr. Carrillo for burning or itching sensation in eyes, nose and throat; nasal and throat discomfort; deteriorated or blurred vision; irritation; itchiness; tightness in chest; anorexia; cough; nose bleeds; nose and throat irritation; headache; nausea; dizziness; anxiety; difficulty with concentration; sleep issues, including nightmares.

4. Medications prescribed to Mr. Carrillo to treat any of the body parts identified above in No. 1 or the conditions identified above in No. 3. The above requested documents and records are to cover September 3, 2015 to the present

The above requested documents and records are to cover September 3, 2015 to the present.

5. Medications prescribed to or taken by Mr. Carrillo after September 3, 2020 that can cause:

- Burning in the eyes, nose or throat

- Itching in the eyes, nose or throat
- Persistent cough
- Nose bleeds
- Throat irritation
- Headaches
- Nausea
- Dizziness
- Nasal and throat discomfort
- Irritation
- Itchiness
- Deteriorated vision
- Blurred vision
- Anxiety
- Tightness in the chest
- Trouble concentrating
- Sleep issues
- Nightmares

6. Medical billing documents for any treatment, care, or examination performed, or medications provided for conditions relating to the body parts identified above in No. 1 or the conditions identified above in No. 3 after February 8, 2022; such documents are to include but not be limited to statements of charges and costs, payment transactions, billing adjustments, and insurance information and correspondence.

ECF No. 83-7 at 9-10.

### C.    <u>Parties' Arguments</u>

#### 1.    **Plaintiffs' Motion**

Plaintiffs seek a protective order limiting the scope of Defendant's Subpoenas on the grounds that they are "not narrowly tailored to be directly relevant to the specific injuries Plaintiffs have alleged."  ECF No. 83, Mot. at 1.  Even if the Subpoenas were directly relevant, however, that does not mean they are "automatically allowed." Id. (quoting Redfern v. Home Depot U.S.A. Inc., No. 17-CV-01944-EMC, 2017 WL 5492360, at *2 (N.D. Cal. Nov. 16, 2017)). Instead, the compelling need for the Subpoenas must outweigh Plaintiff's fundamental right of privacy and the Subpoenas "must be narrowly circumscribed, drawn with narrow specificity, and must proceed by the least intrusive manner." Id.  By seeking "the production of all records in any way related to Plaintiffs' various unspecified body parts – not injuries—over a ten-year period[,]" Defendant's Subpoenas include "privileged medical records outside [the scope of tendered issues,]" and therefore, are not directly relevant  to Plaintiffs' claims Id. at 2.

Plaintiffs concede that Item 3 in each of the Subpoenas seeks production of medical records within the scope of tendered issues but contest the relevance of the rest of the Subpoenas. Id.  For example, in each subpoena, Items 1 and 2 seek medical records "relating to treatment,

---

care, diagnosis, prognosis for any complaints relating to," and "examination of", "[the] head[,]" "chest[,]" and "skin." Id. at 3 (quoting ECF No. 83-5 - 83-7). "Plaintiffs, however, have not asserted head, chest or skin diseases or injuries writ large but instead specific, acute injuries to particular parts of their skin (face, arms, hands) or lungs as a result of constant contact with the chemical used by [Defendant], or inhalation of its unventilated fumes." Id. Similarly, Plaintiffs argue that Item 5 of the Subpoenas will include "all medications" because the lists of side effects are so extensive that the Subpoena will encompass medications as common as Advil. Id.

Plaintiffs also argue that the Subpoenas are overbroad because they request records from five years prior to Plaintiffs' entry into the Facility. Id. This broad of a temporal scope amounts to "a fishing expedition in which [Defendant] may access almost a decade's worth of Plaintiff's sensitive medical information because there is some minimal chance that relevant information is contained within them." Id. (citation omitted). Plaintiffs contend that one year of pre-injury medical records, not five years, "would be the least intrusive means of meeting [Defendant's] demands[,]" because "one full year of pre-injury medical records will reveal an entire patient history with any pre-existing conditions that produce similar symptoms, all four seasons of any seasonal allergies, and treatment for any of the acute or subsequently chronic conditions (conditions that do not disappear for years on end) complained of in the Complaint." Id. at 4 (citations omitted).

Finally, Plaintiffs argue that "given the clear risk that a medical records custodian may inadvertently disclose more data than that governed by the Protective Order [Plaintiffs are seeking]," the Court should order that "the subpoenaed records be sent to counsel for Plaintiffs for their review, redaction in accordance with the Protective Order, if necessary, and production to Defendant." Id. at 4.

### 2.    Defendant's Opposition

In its Opposition, Defendant argues that "Plaintiffs cannot demonstrate good cause for a protective order that would severely restrict the disclosure of directly relevant medical information thereby unfairly prejudicing [Defendant] in its development of its defenses to Plaintiffs' claims." ECF No. 88 at 1.

First, Defendant contends that the information sought by the Subpoenas is not protected the Plaintiffs' right of privacy because "a party waives its constitutional rights to privacy when he or she 'raises an otherwise protected matter before the Court." Id. at 3 (quoting Kindred v. Price, No. 119CV00955AWIJLTPC, 2020 WL 3288464, at *2 (E.D. Cal. June 18, 2020)).

Further, Defendant argues that "[o]btaining historical medical information regarding the body part injured is important to fully evaluating Plaintiffs' conditions" because "there are numerous conditions of affected body parts that could explain, or provide information concerning the extent of, Plaintiffs' alleged injuries and symptoms[.]" Id. at 2. For example, Defendants argue that Plaintiff Cesar Hernandez Carrillo's alleged chest tightness "can be caused by many conditions" which "can implicate many different organs and structures that are located in the chest[.]" Id. Therefore, Mr. Carrillo's medical records concerning his chest are important in determining the "possible causes of [Mr. Carrillo's] 'chest tightness' and whether any

underlying conditions are implicated." Id.

Contrary to what Plaintiffs argued in their Motion, records of medications prescribed to Plaintiffs that have Plaintiffs' complained-of symptoms as a side effect are directly relevant. Id. Limiting this request to medications prescribed which did cause Plaintiffs' complained-of symptoms during the period of Plaintiffs' complaints, as suggested by Plaintiff, is "insufficient" because some side effects "do not stop even after medications have been discontinued[,]" and because such a "limitation would require that Plaintiffs have 'connected the dots' regarding the link between their symptoms and medications" and sought medical treatment for those symptoms.  Id.

Finally, the temporal scope of the Subpoenas is necessary to "provide sufficient information to perform a reasonable causal analysis" of "whether the injuries Plaintiffs allege were actually caused by [Defendant]." Id. at 4 (citation omitted).  "Records for a shorter period of time run the risk that insufficient data would be available as a patient may not regularly visit a physician or the symptoms of a condition may be dormant for a period of time." Id. (citation omitted).  Defendant cites several cases where district courts in the Ninth Circuit have found that requests for medical records from five years prior to injury are appropriate.  Id. (citations omitted).

### 3.      Plaintiffs' Reply

In their Reply, Plaintiffs argue that Defendant fails to cite any case law supporting their Subpoenas, which "would necessarily require the production of medical records unrelated to the specific conditions in the case." ECF No. 91 at 1.  Plaintiffs point to Defendant's use of equivocating phrases like "could explain[,]" "may have caused[,]" and "would potentially omit" to argue that "records that live in the world of may or could are, by tautology, not directly relevant to that specific injury and are a far cry from the careful, tailored analysis that every federal court understands the California Constitution demands when finding a waiver of privilege." Id. (internal quotation marks omitted).

The Subpoenas seek "records not directly related to those body parts and conditions tendered." Id. at 2.  For example, Plaintiffs "have not tendered . . . their lower bodies, including sex organs, the buttocks, legs, and feet[,]" in this case and yet, the Subpoenas will produce "among other unrelated things, gynecological and mammography records, exams of patients' buttocks, and patients' sexual assault histories." Id. at 2.  Therefore, Plaintiffs warns that "sensitive, privileged and unrelated records will be produced should this Court deny this Protective Order." Id.

Finally, Plaintiffs cite several cases where district courts in the Ninth Circuit limited the temporal scope of requests for pre-injury medical records, "in some instances to just two months, six months, one year, or three years." Id. (citations omitted).  Because "Plaintiffs were in continuous ICE or state custody for several years prior to injury[,] [j]ust one year of pre-injury records will generate hundreds of 'data points' to evaluate, including comprehensive patient histories." Id. (citation omitted).

---

**CIVIL MINUTES—GENERAL**                      Initials of Deputy Clerk DC

4.    **Partial Agreement Between the Parties Regarding Mental and Emotional Health Records**

On August 1, 2024, the parties notified the Court of the following agreement between the parties and a clarification regarding the type of damages Plaintiff are seeking in this matter:

Plaintiffs and Defendant The GEO Group (GEO) write to inform you that they have reached an agreement on the scope of discovery into Plaintiffs' mental and emotional health records and information, and specifically GEO's subpoena requests for psychotherapist communications or records. The following agreement does not resolve the issues set forth in the parties' briefing on Plaintiffs' motion for protective order currently pending before the Court.

To make clear that Plaintiffs do not seek anything beyond garden-variety emotional distress and therefore have not waived the psychotherapist-patient privilege, Plaintiffs have:
• Issued supplemental interrogatory responses stating: "Plaintiff [name] has not suffered emotional damages over and above the emotional distresses of the kind that any person would experience who has been injured by the GEO Group in the manner Plaintiff has alleged. In other words, Plaintiff [name] is only alleging garden variety emotional damages as that term is discussed in Ryan v. Putnam, CV 17-05752-CAS(RAOx), 2021 WL 9721273 at *5 (C.D. Cal. July 26, 2021) (citing cases)."
• Amended their Initial Disclosures to include the following statement: "Plaintiffs will not rely on expert testimony regarding any plaintiff's emotional distress damages."
• Agreed to stipulate, as to the three Plaintiffs who have asserted emotional distress allegations, that:
o "[Plaintiff Name] is not making a claim against The GEO Group for specific mental or psychiatric injury or disorder, or for unusually severe emotional distress. Further, [Plaintiff Name] is not making a claim for mental and emotional distress against The GEO Group over and above that usually associated with ordinary or common place emotional distresses of the kind that any person would experience who has been injured by the GEO Group in the manner [Plaintiff Name] has alleged ('garden variety emotional distress').
o "At trial, [Plaintiff Name] will not call on any expert regarding [his or her] alleged emotional distress damages against The GEO Group, nor will [Plaintiff Name] rely on any documentary evidence to prove any specific mental or psychiatric injury or disorder, or to prove unusually severe emotional distress over and above garden variety emotional distress against The GEO Group."

Accordingly, GEO will:

• Withdraw all subpoenas that sought any psychotherapy records. If GEO has already have received such records, GEO will destroy, without reviewing, all records already received in response to those subpoenas. GEO will reissue those

subpoenas in accordance with this Court's ruling on Plaintiffs' motion for protective order when it issues.

GEO reserves its right to later seek to exclude from admission in any court proceedings evidence of emotional distress injury beyond garden variety emotional distress.

## II.    DISCUSSION

### A.    General Legal Standards Regarding Discovery

#### 1.    Rule 26(b)(2) Relevancy

Federal Rule of Civil Procedure ("Rule") 26(b)(2) governs the scope of permissible discovery and provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(2). Relevancy, for purposes of discovery, "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Nguyen v. Lotus by Johnny Dung Inc., No. 8:17-cv-01317-JVS-JDE, 2019 WL 3064479, at *1 (C.D. Cal. June 5, 2019) (internal citations and quotation marks omitted). "Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." Duran v. Cisco Sys., Inc., 258 F.R.D. 375, 378 (C.D. Cal. 2009) (internal citations and quotation marks omitted).

Because discovery must be both relevant and proportional, the right to discovery, even plainly relevant discovery, is not limitless. See Fed. R. Civ. P. 26(b)(1); Nguyen, 2019 WL 3064479, at *1. Discovery may be denied where: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." United States ex rel. Brown v. Celgene Corp., No. CV 10-3165 GHK (SS), 2015 WL 12731923,

at *2 (C.D. Cal. July 24, 2015) (internal citations and quotation marks omitted).

### 2. Rule 26(c) Protective Order

Under Rule 26, a "party or any person from whom discovery is sought may move for a protective order" and "the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," by, among other things, "forbidding the disclosure or discovery," "prescribing a discovery method other than the one selected by the party seeking discovery," and "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters" Fed. R. Civ. P. 26(c)(1)(A)-(D).

The "party seeking a protective order bears the burden of showing good cause for the order by demonstrating harm or prejudice that will result from the discovery." Apple Inc. v. Samsung Elecs. Co., Ltd., 282 F.R.D. 259, 262-63 (N.D. Cal. 2012) (citing Rivera v. NIBCO, Inc., 364 F.3d 1057, 1063 (9th Cir. 2004)). When deciding whether to issue a protective order preventing or limiting discovery, a court may consider factors such as the relevance of the requested materials, breadth of the requests, potential harm of disclosure to the movant, and the movant's reasonable privacy interests in the materials. See Rivera, 364 F.3d at 1064; Prado v. Equifax Info. Servs. LLC, 331 F.R.D. 134, 139 (N.D. Cal 2019). Generally, Rule 26(c) "confers broad discretion on the . . . court to decide when a protective order is appropriate and what degree of protection is required." Al Otro Lado, Inc. v. Nielsen, 328 F.R.D. 408, 415 (S.D. Cal. 2018) (citation and internal quotation marks omitted).

### 3. Rule 45 Third Party Subpoenas

A party may obtain discovery by serving a subpoena pursuant to Rule 45. The "scope of discovery permitted by subpoena under Rule 45 is the same as that permitted under Rule 26," that is, "a party may obtain discovery of any matter this is relevant to a claim or defense and that is 'proportional to the needs of case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" In re Perez by Allen, No. 20-mc-80191-VKD, 2020 WL 7056024, at *2 (N.D. Cal. Dec. 2, 2020) (citing Rules 26(b)(1), 45)

Non-parties and third parties "are subject to the same discovery obligations . . . under [Rule] 45, including the obligation to respond to subpoenas for documents and testimony." United States v. Acad. Mortg. Corp., 968 F.3d 996, 1006 (9th Cir. 2020) (citing Exxon Shipping Co. v. U.S. Dep't of Interior, 34 F.3d 774, 779 (9th Cir. 1994)). Although the general scope of discovery for parties and non-parties is the same, courts may consider non-party status when determining whether discovery restrictions are necessary. See Dart Indus. Co. v. Westwood Chem. Co., 649 F.2d 646, 649 (9th Cir. 1980) ("[T]here appear to be quite strong considerations indicating that discovery would be more limited to protect [non-]parties from harassment, inconvenience, or disclosure of confidential documents.") (citation and internal quotation marks omitted). Indeed, in "the third-party subpoena context . . . courts have often demanded a stronger-than-usual showing of relevance, requiring the requesting party to demonstrate that its need for discovery outweighs the nonparty's interest in nondisclosure." Briggs v. Cnty. of

Maricopa, No. CV-18-02684-PHX-EJM, 2021 WL 1192819, at *3 (D. Ariz. Mar. 20, 2021) (citation and internal quotation marks omitted).

### 4. California Law Regarding Disclosure of Medical Records

"[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." See Fed. R. Evid. 501. Under California law, confidential communications between a patient and physician are privileged, "including information obtained by an examination of the patient" and "a diagnosis made and the advice given by the physician." Cal. Evid. Code § 992. The statutory privilege is waived for "a communication relevant to an issue concerning the condition of the patient if such issue has been tendered" by the patient in litigation. Cal. Evid. Code § 996(a). "The [litigation] exception has been generally applied only to compel disclosure of medical treatment and communication concerning the very injury or impairment that was the subject matter of the litigation." Redfern, 2017 WL 5492360, at *3 (citation omitted).

Additionally, California law recognizes that patients have a constitutional right of privacy in their medical records. See Grafilo v. Wolfsohn, 33 Cal. App. 5th 1024, 1034, 245 Cal. Rptr. 3d 564 (2019) (holding that under Cal. Const. art. I, § 1, patients have a right to privacy with respect to information contained in medical records). "The constitutional right of privacy in such records is 'broader' than the statutory privilege." Redfern, 2017 WL 5492360, at *2 (citation omitted). While the right of privacy may be partially waived by bringing suit, the scope of such waiver "must be narrowly, rather than expansively construed, so that plaintiffs will not be unduly deterred from instituting lawsuits by fear of exposure of private activities." Id. (citation omitted). Specifically, "[a]n implicit waiver of a party's constitutional rights encompasses only discovery directly relevant to the plaintiff's claim and essential to the fair resolution of the lawsuit." Id. (emphasis in original) (citation omitted). "Even when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must then be a careful balancing of the compelling public need for discovery against the fundamental right of privacy." Id. (citation omitted). "Any disclosure must be narrowly circumscribed, drawn with narrow specificity, and must proceed by the least intrusive manner." Id. (citation and internal quotation marks omitted).

### B. Analysis

After careful review of the Motion, the Opposition, the Reply, and relevant law, the Court finds that: (1) with the exclusion of the reference to "skin" in the subpoena for Mr. Carrillo's medical records, the Rule 45 Subpoenas seek information directly relevant to Plaintiffs' alleged injuries and (2) the temporal scope of the Subpoenas is appropriate. As such, the Motion is granted as to the general reference to "skin" in the subpoena for Mr. Carrillo's medical records but is denied as to the rest of the Subpoenas.

/ / /

/ / /

/ / /

**1. Plaintiffs Have Implicitly Waived Their Right of Privacy to the Certain Medical Records Sought by the Subpoenas for Purposes of this Litigation.**

Because "[t]he constitutional privacy protection in [medical] records is 'broader' than the statutory privilege[,]" Redfern, 2017 WL 5492360, at *2 (citation omitted), resolution of the issue regarding physician-patient privilege in favor of Defendant would not necessarily be dispositive of Plaintiffs' right of privacy with respect to the Subpoenas. Therefore, the Court addresses the "broader" California constitutional privacy protection. Id. In this case, as Plaintiffs acknowledge, the production of certain medical records in response to Defendant's subpoenas are appropriate. As explained subsequently, with respect to each of the subpoenas, the Court has endeavored to appropriately narrow the information that is sought such that it also comports with the requirements of Rule 26 which requires the Court to limit the materials sought such that it is "proportional to needs of the case . . . ." Fed. R. Civ. P. 26(b)(2).

With respect to Plaintiffs' argument that the subpoenas seek information for injuries that are broader than the injuries for which Plaintiffs are seeking relief because Plaintiffs have not asserted conditions related to those body parts "writ large," ECF No. 83, Mot. at 3, the allegations related to Plaintiffs' injuries in the Complaint are not as specific as the Motion suggests. See e.g. ECF No. 1, Compl.at 30 (alleging that Mrs. Scheetz suffers from "chest pains"). And as Defendant notes, vague symptoms like those alleged in the Complaint could be caused or exaggerated by numerous conditions in the symptomatic body part. See ECF No. 88 at 2. While the Court acknowledges that the information sought by the subpoena must be "directly relevant" to Plaintiffs' claims, Redfern, 2017 WL 5492360, at *2, the Court is also mindful of the fact that discovery need not be admissible to be relevant under Rule 26(b). Thus, medical records related to the symptomatic body part are "the least intrusive manner" by which Defendants can obtain the "directly relevant," Redfern, 2017 WL 5492360, at *2, "data point[s]" necessary "to perform a reasonable casual analysis[,]" ECF No. 88-1, Padilla Decl. Exhibit ("Exh.") 1 at 7-8, irrespective of whether the discovered data points or subsequent analysis are ultimately admissible.

The Court now turns to whether the body parts and conditions listed in each of the disputed subpoenas is directly relevant to the alleged injuries of the corresponding Plaintiff.

      a.     Items 1, 2, and 4 of the Subpoena for Miriam Scheetz's Medical Records

According to the Complaint, while detained at Adelanto from March 2019 to August 2020, Plaintiff Miriam Scheetz experienced the following symptoms:

> She frequently suffered headaches, including a sharp pain behind her ear which would cause her vision to blur. The headaches were so strong that she would have to sit still for long periods of time. Mrs. Scheetz feared that she might faint and hurt herself during a fall. Mrs. Scheetz also experienced nosebleeds and several times she also bled from her mouth. Her eyes were constantly itchy and would become swollen. Mrs. Scheetz eventually lost her eyelashes while at Adelanto.

ECF No. 31, Compl. at 31.  The Complaint also alleges that Mrs. Scheetz suffered "pain and itchiness in her eyes, nose, and throat" and "had trouble sleeping."  Id. at 32.  Since being released from Adelanto, Mrs. Scheetz has experienced "anxiety and chest pains" when smelling chemicals. Id. at 33.

Items 1 and 2 of the subpoena sent to Mrs. Scheetz's health care providers request "any and all documents and electronically stored information" relating to the following:

1. Treatment, care, diagnosis and prognosis for any complaints or conditions relating to the eyes and eye area, head, lungs, nose, nasal passages, mouth, throat, stomach, and chest (including heart or lungs) of Ms. Scheetz.

2. Examination of the eyes and eye area, head, lungs, nose, nasal passages, mouth, throat, stomach, and chest (including heart or lungs) of Ms. Scheetz.

ECF No. 83-5 at 9.[2]

The body parts listed in Items 1 and 2 are directly tied, in multiple ways, to Mrs. Scheetz's symptoms as alleged in the Complaint.  Compare ECF No. 1, Compl. at 31-33, with ECF No. 83-5 at 9.  Specifically, medical records related to Mrs. Scheetz's "eyes and eye area," "nose, nasal passages," and "throat," ECF No. 83-5 at 9, are directly relevant to the allegation of "pain and itchiness in [Mrs. Scheetz's] eyes, nose, and throat[,]" ECF No. 31, Compl. at 31.  Medical records related to Mrs. Scheetz's "head," ECF No. 83-5 at 9, are directly relevant to Mrs. Scheetz's alleged "headaches," ECF No. 31, Compl. at 31, and records concerning her "chest (including heart or lungs)[,]" ECF No. 83-5 at 9, are directly relevant to the "chest pains" she allegedly now suffers, ECF No. 31, Compl. at 31.  And finally, medical records referencing Mrs. Scheetz's "mouth" and "stomach," ECF No. 83-5 at 9, are directly relevant to the allegation that Mrs. Scheetz "bled from her mouth" several times because of exposure to HDQ, ECF No. 31, Compl. at 31.  Thus, the medical records sought by Items 1, 2, and 4 of the subpoena are directly relevant to Mrs. Scheetz's alleged injuries.

In Plaintiffs' proposed modification to this subpoena, Plaintiffs only cross out references to the head, nose, and chest, ECF No. 83-5 at 74, but as mentioned above, each of those body parts is afflicted by a symptom complained of by Mrs. Scheetz.

Plaintiffs argue that Defendant's Subpoenas would "sweep in" medical records concerning Plaintiffs' "lower bodies, including sex organs, the buttocks, legs, and feet" which are "not tendered in this case and [] therefore remain privileged[.]"  ECF No. 91 at 2.  But the subpoena requesting Mrs. Scheetz's medical records only mentions the upper body, see ECF No. 83-5 at 9, and it is difficult for the Court to see how the items requested would "sweep in" Mrs. Scheetz's gynecological records, as suggested by Plaintiffs, ECF No. 83 at 3.  Indeed, the exclusion of Mrs. Scheetz's lower body or skin in the subpoena is evidence that the subpoena is "drawn with narrow specificity" to be "directly relevant" to Mrs. Scheetz's alleged

---

[2] The body parts listed in Item 1 of the Subpoenas are incorporated by reference into Item 4. See ECF No. 83-5 at 9; ECF No. 83-6 at 9; ECF No. 83-7 at 9. Therefore, the Court's analysis of the body parts listed in Items 1 and 2 applies to Item 4 as well.

injuries.  See Redfern, 2017 WL 5492360, at *2.

> b.      Items 1, 2, and 4 of the Subpoena for Somboon Phaymany'
> Medical Records

The Complaint alleges that Plaintiff Somboon Phaymany suffered the following symptoms in the early months of 2020 because of his exposure to HDQ:

> exacerbation of his asthma, a persistent cough, dry and cracking skin, irritation and burning sensation in his eyes, nausea, and headaches. On multiple occasions, he noticed traces of blood when blowing his nose.

ECF No. 1, Compl. at 38.

Items 1 and 2 of the subpoena for Mr. Phaymany's medical records request "any and all documents and electronically stored information" relating to the following:

1.  Treatment, care, diagnosis, and prognosis for any complaints or conditions relating to skin, lungs, throat, head, and eyes of Mr. Phaymany.

2.  Examination of the skin, lungs, throat, head, and eyes of Mr. Phaymany.

ECF No. 83-6 at 9.

As with Mrs. Scheetz, the body parts listed in Items 1 and 2 are directly tied to Mr. Phaymany's alleged injuries: "lungs," ECF No. 83-6 at 9, tied to "exacerbation of his asthma," ECF No. 1, Compl. at 38; "throat" and "lungs," ECF No. 83-6 at 9, to "a persistent cough," ECF No. 1, Compl. at 38; "skin," ECF No. 83-6 at 9, to "dry and cracking skin," ECF No. 1, Compl. at 38; "eyes[,]" ECF No. 83-6 at 9, to "irritation and burning sensation in his eyes," ECF No. 1, Compl. at 38; and "head," ECF No. 83-6 at 9, to "headaches[,]"ECF No. 1, Compl. at 38.  Again, the medical records sought by Items 1, 2, and 4 of this subpoena are directly relevant to Mr. Phaymany's alleged symptoms and are narrowly tailored not to seek information that is not tendered in this case.

In their redlined version of this subpoena, Plaintiffs only cross out the head and skin, replacing skin with "epidermis of face, hands, and arms[.]"  ECF No. 83-6 at 74.  Again, it is not clear why "head" has less of a connection to an alleged symptom—namely "headaches"—as any of the other body parts referenced in Items 1 and 2.  See ECF No. 83-6 at 9; ECF No. 1, Compl. at 38.  And as for the narrowing of "skin" to "epidermis of face, hands, and arms[,]" ECF No. 83-6 at 74, Mr. Phaymany's allegation of "dry and cracking skin" is not limited in the same way, ECF No. 1, Compl. at 38.  Contrary to what Plaintiffs argue in their Reply, the Complaint does not exclude the skin on Mr. Phaymany's lower body by limiting the alleged injury to the skin on Mr. Phaymany's upper body.  Compare ECF No. 1, Compl. at 38 (referencing "dry and cracking skin") with ECF No. 83-6 at 74 (referencing "epidermis of face, hands, and arms").

Thus, the discovery sought through Items 1 and 2 of the subpoena for Mr. Phaymany's medical records is "directly relevant to [Mr. Phaymany's] claims" and "narrowly circumscribed"

to what he has put at issue.  See Redfern, 2017 WL 5492360, at *2.

            **c.**      **Items 1, 2, and 4 of the Subpoena for Cesar Hernandez Carrillo's Medical Records**

Plaintiff Cesar Hernandez Carrillo allegedly suffered the following symptoms "[a]fter weeks of constant exposure to [HDQ]":

> burning and itching eyes, headaches and dizziness, and sustained irritation to his nose and throat. Mr. Hernandez had a persistent cough— sometimes bad enough that he coughed up blood—and he also had nosebleeds on multiple occasions.

ECF No. 1, Compl. at 34.  The Complaint also alleges that Mr. Carrillo "felt [HDQ] land on his skin, burning his face and arms." Id.  Since being released from Adelanto, Mr. Carrillo's eyesight is allegedly "noticeably worse" and he occasionally experiences "tightness in his chest, as though he cannot breathe." Id.

Items 1 and 2 of the subpoena for Mr. Carrillo's medical records seek "any and all documents and electronically stored information" relating to the following:

1. Treatment, care, diagnosis, and prognosis for any complaints or conditions relating to the eyes, nose, throat, chest (including heart and lungs), sinuses, nasal passages, skin, and head of Mr. Carrillo.

2. Examination of the eyes, nose, throat, chest (including heart and lungs), sinuses, nasal passages, skin and head of Mr. Carrillo.

ECF No. 83-7 at 9.

As with the other Plaintiffs, the body parts targeted by Items 1 and 2 of the subpoena for Mr. Carrillo's medical records are directly tied to the symptoms he allegedly suffers as a result of HDQ:  "eyes," ECF No. 83-6 at 9, tied to "burning and itching eyes" and "noticeably worse" eyesight, ECF No. 1, Compl. at 34; "nose," "sinuses," and "nasal passages," ECF No. 83-6 at 9, to" to "sustained irritation to his nose" and "nosebleeds"; "throat" to "sustained irritation to his [] throat" and "persistent cough— sometimes bad enough that he coughed up blood[,]" ECF No. 1, Compl. at 34 ; "head[,]" ECF No. 83-6 at 9, to "headaches and dizziness," ECF No. 1, Compl. at 34; "chest (including heart and lungs)," ECF No. 83-6 at 9, to "tightness in his chest, as though he cannot breathe[,]"ECF No. 1, Compl. at 34; and "skin," ECF No. 83-6 at 9, to the "burning [the skin on] his face and arms[,]"ECF No. 1, Compl. at 34.  Again, every medical record sought is directly relevant to alleged harm suffered by Mr. Carrillo because of Defendant's conduct.

The Court also notes that Plaintiffs do not submit a redlined subpoena for Mr. Carrillo's medical records as they do for Mrs. Scheetz and Mr. Phaymany. See ECF No. 83-7. However, as applied to this subpoena, Plaintiffs are correct that Items 1 and 2 will "sweep in" unrelated medical records related to Mr. Carrillo's lower body.  ECF No. 91 at 2.  Unlike Mr. Phaymany's skin condition, the alleged injury to Mr. Carrillo's skin concerns only "his face and arms." ECF

---

No. 1, Compl. at 34.  Thus, the reference to "skin" in Items 1 and 2 of the subpoena for Mr. Carrillo's medical records shall be limited to "skin of the face and arms" as to Mr. Carrillo.

The subpoena is otherwise "directly relevant to [Mr. Carrillo's] claims" and "narrowly circumscribed" to what he has put at issue.  See Redfern, 2017 WL 5492360, at *2.

d.      Items 3 and 5 of the Subpoenas

Plaintiffs acknowledge that the records requested in Item 3 of the Subpoenas are directly relevant to Plaintiffs' alleged injuries.  See ECF No. 83, Mot. at 2 ("To the extent Defendant seeks discovery of preexisting conditions that manifested the same conditions or injuries alleged in the complaint, those records have been properly sought in Item No. 3[.]").  Because Item 3 lists medical records related to "the same conditions or injuries alleged in the complaint," Item 3 seeks "medical records within the scope of tendered issues[.]"  Id.  Yet, Plaintiff argues that the medications sought in Item 5 do not meet the "directly relevant" standard, id. at 3, despite referring to the exact same symptoms as Item 3, see ECF Nos. 83-5 - 83-7.  Plaintiff explains this discrepancy by arguing that in the context of a request for a list of medications, "medical records custodian receiving such a subpoena will simply disclose all medications regardless of the possible side effects."  ECF No. 83, Mot. at 3.  But that hypothetical situation does not change the fact the side effects listed in Item 5 are the symptoms, or synonyms of the symptoms, alleged in the Complaint.  Contrary to Plaintiffs' argument, a common medication taken by Plaintiffs that can cause the same symptoms alleged in the Complaint is directly relevant to a potential defense by Defendant that HDQ did not cause Plaintiff's alleged injuries.

Plaintiffs' suggestion that "Defendant could ask for medical records related to medications which did cause the same symptoms of which Plaintiffs have complained, if prescribed during the time Plaintiffs complained of those symptoms[,]" id. at 3 (emphasis in original), is insufficient because, as Defendant notes, some side effects "do not stop even after medications have been discontinued[,]" ECF No. 88 at 2.  Moreover, such a "limitation would require that Plaintiffs have 'connected the dots' regarding the link between their symptoms and medications, and that they sought treatment for the symptoms."  Id.  Thus, Item 5 is "the least intrusive manner" by which Defendant can obtain discovery to test the causation of Plaintiff's injuries.  See Redfern, 2017 WL 5492360, at *2.

**2.      The Temporal Scope of the Subpoenas Is Appropriate.**

The Subpoenas seek Plaintiffs' medical records from five years prior to the onset of Plaintiffs' symptoms to today.  See ECF Nos. 83-5 - 83-7.  Plaintiffs do not dispute the appropriateness of seeking medical records from the date of Plaintiffs' injury to today.  See ECF No. 83-8 at 22.  Thus, the only timeframe in dispute is the five years prior to the onset of Plaintiff's symptoms.

Defendant is entitled to discover pre-injury medical records to "evaluate whether [any complained-of symptom identified in the pre-injury medical records] has been stable, worsening or easing, and whether the alleged injury (here, exposure to a chemical) affected the trending of the symptoms or condition."  ECF No. 88-1, Padilla Decl. Exh. 1 at 7-8.  Five years of pre-injury

---

records is necessary to identify periodic or dormant symptoms. Id. Plaintiff argues that one year of pre-injury records is sufficient to reveal "an entire patient history[,]" ECF No. 83 at 4, but many people do not see a doctor annually and the five-year window makes it much more likely that Defendant discovers a sufficient number of pre-injury medical records to conduct a reliable causal analysis of Plaintiff's injuries, ECF No. 88-1, Padilla Decl. Exh. 1 at 7-8. Further, courts in the Ninth Circuit have permitted discovery of medical records from a timeframe of five years prior to injury. See ECF No. 88 at 4 (citing cases finding five years pre-injury to be appropriate). Thus, the temporal scope of the Subpoenas is appropriate.

### 3.     Plaintiffs' Request for First Review of the Discovered Medical Records Is Inappropriate.

Finally, Plaintiffs' request that the "the subpoenaed records be sent to counsel for Plaintiffs for their review, redaction in accordance with the Protective Order, if necessary, and production to Defendant[,]" ECF No. 83, Mot. at 4, is denied because the Court does not find it necessary, especially given that the information to be discovered by the Subpoenas is already covered by a protective order, see ECF No. 79.

## III.     CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for a Protective Order is **GRANTED IN PART AND DENIED IN PART.**

**IT IS SO ORDERED.**