

**HANNAH COMSTOCK**
*Senior Staff Attorney*

hcomstock@socialjusticelaw.org
T: 213 259 2503
F: 213 542 5241

523 West 6th Street
Suite 450
Los Angeles, CA 90014

November 1, 2024

The Honorable Shashi H. Kewalramani
United States Courthouse
3470 12th St., Courtroom 3 or 4, 3rd Floor
Riverside, California 92501

Dear Judge Kewalramani:

Pursuant to the Court's October 29, 2024, Minute Order, Plaintiffs submit this letter brief to explain why Defendant The GEO Group, Inc., and Third-Party Defendant Spartan Chemical Company, Inc. cannot invoke the joint defense doctrine ("Doctrine") to withhold documents responsive to Plaintiffs' Request for Production (RFP) 17, which seeks "All COMMUNICATIONS and DOCUMENTS relating to COMMUNICATIONS between YOU and SPARTAN, including without limitation YOUR and SPARTAN's respective counsel, from January 1, 2019 to the present relating to or referencing HDQ NEUTRAL." The Doctrine does not apply here because GEO and Spartan are actual adversaries on the exact topics for which they invoke the doctrine: dilution and the use of HDQ Neutral. Plaintiffs therefore respectfully request that the Court order GEO to produce non-privileged documents and communications responsive to RFP 17.[1]

## I.      The Joint Defense Doctrine is Not Available for Actual Adversaries.

"The joint defense and common interest doctrines are not privileges in and of themselves." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007). "Rather, they constitute exceptions to the rule on waiver where [attorney-client] communications are disclosed to third parties," or where work-product is disclosed to an adversary. *Id.* "The doctrine applies where (1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *Citizens Dev. Corp., Inc. v. Cnty. of San Diego*, 2019 WL 172469, at \*12 (S.D. Cal. Jan. 11, 2019) (quoting *United States v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003)). It does *not* apply to parties who are potential adversaries, let alone parties that are actual adversaries in a litigation. *See United States v. Gonzalez*, 669 F.3d 974, 979 (9th Cir. 2012) (holding that any joint defense agreement between co-defendants "ended at least by the time Gonzalez decided to pursue his own defense and blame Paiz for the crime, (thus ending their common legal interests)"). As illustrated by the following authorities, a hallmark of an adversarial relationship is the ability to pass blame for the alleged harm.

In *Citizens Dev. Corp., Inc. v. Cnty. of San Diego*, for example, the Southern District of California noted that the Doctrine requires "'at a minimum, [that the parties] be engaged in maintaining substantially the same cause on behalf of the same parties in the litigation.'" 2019 WL 172469, at \*12 (quoting *Gonzalez*, 669 F.3d at 980). Applying that principle, the court declined to extend the Doctrine to environmental data, reports,

---

[1] Plaintiffs' RFP 16 seeks: "All DOCUMENTS exchanged between YOU and SPARTAN, including without limitation YOUR and SPARTAN'S respective counsel, from January 1, 2019 to January 1, 2023." Unlike RFP 17, RFP 16 is temporally limited to before the instant lawsuit was filed, and GEO's counsel has not asserted the existence of any joint defense or common interest agreement before January 2023. *See* Tr. at 20:3–10.



and related communications that were shared between plaintiff Citizen Development Corporation (CDC) and the several public-agency defendants (referred to collectively as Public Agency Defendants (PADs)) that plaintiff CDC sued. *See id.* The court explained that "[t]he filing of this action, in which CDC seeks recovery from each of the PADs, could not be more clear evidence that an adversarial relationship existed between them." *Id.* Indeed, the CDC and the PADs "do 'not have a true common goal, as it could not have been the [PADs'] goal to impose liability on [themselves],' which is CDC's objective in naming the PADs in this suit." *Id.* (quoting *Bergonzi*, 216 F.R.D. at 497).

*Citizens Dev. Corp.* appears to be the only available case wherein a federal district court in California considered whether opposing parties that were *actual* adversaries in a litigation could invoke the Doctrine to assert privilege in their inter-party communications. But even when faced with *potential* adversaries, courts still reach the same conclusion: the Doctrine does not apply. In *Crosby v. California Physicians' Serv.*, 2020 WL 2510651, at *1 (C.D. Cal. Feb. 26, 2020), the court found the Doctrine inapplicable to communications between a non-party medical provider and a plaintiff-patient who sued his medical-insurance-provider alleging a policy of systematically denying medically necessary therapy. There, "the purported common interest [was] little more than a 'shared desire to see the same outcome,' i.e., a judgment in Plaintiffs' favor that requires Defendants to pay ASC for services being provided to [plaintiff]." *Id.* at *4. That interest was not only insufficient as a matter of law, but it was also not fixed; "[d]epending on the outcome of this case, that relationship may become adversarial in nature if [the medical provider] later seeks payment for any ABA therapy for [plaintiff] that was not covered by Defendants." *Id.*

Because the adversary inquiry turns on the ability to pass blame, courts find a sufficient common interest in cases where there was *no indication* the parties at issue might seek to pass blame on each other. For example, in *Ellis v. J.P. Morgan Chase & Co.*, 2014 WL 1510884, at *1 (N.D. Cal. Apr. 1, 2014), defendant Chase Bank established a sufficient common legal interest with its non-party vendors with respect to the underlying litigation, which alleged that an unlawful RICO conspiracy between Chase Bank and its vendors. In that context, there was no risk that Chase Bank or its non-party vendors could blame each other to evade liability; the RICO claims were predicated on a conspiracy between at least two entities and would result in all, or none, of the entities being found liable. *See id.* at *6. Thus, Chase Bank and its non-party vendors were not adversaries but instead shared the identical common interest of proving that no conspiracy existed.

## II.    Spartan and GEO are Actual Adversaries Whose Communications and Joint or Exchanged Work Product are Not Protected Under the Joint Defense Doctrine.

GEO and Spartan are actual, current adversaries, particularly on the topics of toxicity of HDQ Neutral, proper dilution of HDQ Neutral, and the proper use of HDQ Neutral. Plaintiffs have asserted six causes of action based on GEO's haphazard use of an over-concentrated solution of HDQ Neutral. *See* Dkt. 1 at 42–51. In response, GEO filed a Third-Party Complaint against Spartan, alleging that it was Spartan—not GEO—who improperly diluted HDQ Neutral and failed to provide adequate training. *See* Dkt. 35 at 5–35. And in its defense, Spartan responded by denying all of GEO's allegations and asserting eighteen affirmative defenses, including superseding/intervening cause. *See* Dkt. 48 at 4–11. The diagram attached as Exhibit A to this



letter brief illustrates where and how each party's interests diverge; arrows reflect where one party is placing blame on another, while blue signifies GEO's claims against Spartan and red signifies Spartan's defenses.[2]

Based on the pleadings and answer alone, GEO and Spartan's interests are directly at odds. GEO disclaims liability because it was following Spartan's instructions and seeks to blame Spartan for Plaintiffs' harms. GEO's counsel effectively confirmed as much when she described the substance of the intra-party communications as addressing whether HDQ Neutral "can be used the way that *you* [Spartan] say it can be used…?" Tr. at 18:8. GEO and Spartan's adversarial relationship is materially indistinguishable from one in *Citizens Dev. Corp.* because Spartan and GEO "'[can]not have a true common goal, as it [can]not have been [Spartan's] goal to impose liability on [themselves],' which [was] [GEO's] objective in naming [Spartan] in this suit." 2019 WL 172469, at *12. Moreover, GEO and Spartan's relationship is fundamentally dissimilar from the one in *Ellis*, where there was no indication that Chase Bank could somehow pass off its liability to its co-conspirator vendors. *See* 2014 WL 1510884, at *6.

Additionally, the adversarial relationship between GEO and Spartan has foreclosed any assertion of privilege in at least two categories of materials. *First*, their adversarial relationship has destroyed the attorney-client or work-product privilege in any internal information, data, reports, and communications relating to HDQ Neutral have been exchanged between GEO and Spartan. *See MD Helicopters, Inc. v. Aerometals, Inc.*, 2019 WL 1227919, at *6 (E.D. Cal. Mar. 15, 2019) (concluding that work product privilege was waived when plaintiff disclosed material "to an *actual* adversary *in the context of litigation*."). *Second*, it follows that the adversarial relationship has foreclosed GEO and Spartan from invoking the work product privilege as to jointly created materials. *See id.*[3]; *Citizens Dev. Corp., Inc.*, 2019 WL 172469, at *12 ("Work-product protection is typically waived by a party's voluntary disclosure of the information.").

### III.     The Materials Exchanged Between Counsel for Spartan and GEO are Directly Relevant to Plaintiffs' Claims and GEO and Spartan's Defenses.

Despite their adversarial relationship, neither GEO nor Spartan have propounded any discovery on the other. Instead, they are privately conferring regarding their expert opinions on issues of toxicity, including whether

---

[2] On November 4, 2024, per the operative Scheduling Order in this matter, Plaintiffs anticipate moving for leave to amend to assert a single failure to warn claim against Spartan. The adversary relationship between GEO and Spartan does not change with this amendment. Rather, Plaintiffs' claim against Spartan will likely amplify the existing conflict between GEO and Spartan by requiring Spartan to actually take action to defend against GEO claims.

[3] As this Court noted during the October 29 hearing, the court in *Wellons v. PNS Stores, Inc.*, 2020 WL 12834156, at *2–5 (C.D. Cal. Jan. 31, 2020), found counsel-to-counsel communications not protected by the joint defense doctrine but nonetheless privileged under the work product doctrine. *See* Tr. at 6:1–6. On the latter finding, the *Wellons* court underscored that the communications between the defendant and its non-party consulting agency were limited to strategizing about the consulting agency's response to plaintiff's subpoena for deposition. *See id.* at *4–5. Applying the work product privilege was consistent with the principle that "the voluntary disclosure of work product to a third party does not waive the work product protection unless such disclosure enables an adversary to gain access to the information." *Sugar Hill Music v. CBS Interactive Inc.*, 2014 WL 12586744, at *8 (C.D. Cal. Sept. 5, 2014). But because *Wellons* did not involve actual or potential adversaries, its holding on the work produce privilege does not apply here.



the spray is toxic and "how to apply ammonia products."  Tr. at 17:5-7; *see id.* at 22–23.  GEO's counsel underscored this point at the hearing, stating that "[w]hat we're going to be talking to Spartan's counsel about is going to be, … [w]ell, what's the deal with this product?  Can it be used in the way that you say it can be used, and what's the toxicity expert going to say?"  Tr. at 17:5-10.

Whether HDQ Neutral is toxic and how it should be safely applied is central to Plaintiffs' and GEO's claims as well as Spartan's and GEO's defenses.  All parties are therefore entitled to discovery reflecting Spartan's opinion on the proper use of HDQ Neutral or its understanding of the chemical's toxicity that at all differs from or adds to the information produced in response to Plaintiffs' discovery requests.  For all Plaintiffs know, the material GEO is withholding could include laboratory data, analysis of that data, and scientific articles, all of which are directly relevant.  *See Citizens Dev. Corp., Inc.*, 2019 WL 172469, at *12 (holding that environmental data, reports, communications exchanged between opposing counsel in underlying litigation was "clearly relevant and proportional to the needs of the case.").  Yet, Plaintiffs, and only Plaintiffs, are stonewalled from obtaining this highly relevant information because GEO and Spartan apparently have circumvented traditional discovery channels and entered a joint defense agreement that allows them to freely exchange the information while cloaking it with an erroneous shield of privilege.  Consequentially, Plaintiffs are operating in an unequal informational void that prejudices Plaintiffs not only in developing their case, but also in preparing a response to GEO and Spartan's anticipated defenses.  *See* Fed. R. Civ. Proc. 26(b)(1) (allowing "discovery regarding any nonprivileged matter that is relevant to *any* party's claim or defense…"); Tr. at 13–15.

GEO is using Spartan as a sword and a shield.  Spartan is a sword for GEO because it has information (e.g., toxicity and dilution rate data) that could help defend against Plaintiffs' claims against GEO.  At the same time, Spartan is also a shield for GEO because, per GEO's Third-Party Complaint, Spartan was negligent in the execution of its duties to warn, to train, and in its design of the HDQ Neutral dispensers.  And, of course, GEO has conceded that it will view Spartan exclusively as a shield when Plaintiffs prevail.  Tr. at 12:18-19 (GEO's counsel stating that its "legal interest diverge[s] [with Spartan's] … if we lose.").  GEO cannot have it both ways while simultaneously claiming a shared legal interest with Spartan.

## IV.    Conclusion

Plaintiffs respectfully ask the Court to order GEO to produce documents responsive to RFP 17 which have been withheld based on the Doctrine.  Responsive documents would include data, reports, or other materials concerning toxicity, dilution rates, and usage of HDQ Neutral that were exchanged between Spartan and GEO.  And to the extent any responsive documents were created at counsel's request after Plaintiffs filed suit, any work product privilege was waived when the document was shared with an adversary.

Sincerely,

Hannah Comstock
Senior Staff Attorney

HC



cc:    Tiffany R. Hedgpeth
       thedgpeth@edgcomb-law.com
       Gabriel J. Padilla
       gpadilla@edgcomb-law.com

       David D. Mesa
       david.mesa@pierferd.com

       Gregory H. Wagoner
       gwagoner@shumaker.com
       Evan J. Bunis
       ebunis@shumaker.com

**EXHIBIT A**



Spartan, not GEO, breached its duty of care to detainees "to ensure the ratio of HDQ Neutral dispensed, and the training provided with regard to HDQ Neutral, was proper and appropriate." Dkt. 35 at ¶ 34–37.

GEO's Defense to negligence; GEO's COA 2

Spartan adequately trained and dilution was proper; GEO misused, or other superseding cause caused Plaintiffs' injury. Dkt 48 at 9.

Spartan adequately warned via labels, signage, and training; intervening acts by GEO. Dkt. 48 at 9.

GEO's Defense to fraud/misrepresentation

GEO did not misrepresent because "[a]t no time during the relevant time period did [Spartan] advise GEO that a dilution ratio for HDQ Neutral of two (2) ounces per gallon of water may be improper for its intended use at [Adelanto]." Dkt. 35 at ¶ 15.

Spartan adequately warned via labels and signs; GEO did not properly display.

**Defendant - GEO**

**Third Party Defendant - Spartan**

**Plaintiffs**

COAs 1 & 2: Negligence

COAs 4, 5, & 6: Fraud/misrepresentation

Proposed COA 7: Failure to Warn

**Defendant - Spartan**