UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **5:23-cv-00481-JGB-SHK** | Date: | February 7, 2025 |
|---|---|---|---|
| Title: | ***Ligaya Ronduen, et al. v. The GEO Group Inc., et al.*** | | |

Present: The Honorable   Shashi H. Kewalramani, United States Magistrate Judge

| D. Castellanos | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings (IN CHAMBERS):   ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL RESPONSES TO RFP NO. 17 [ECF Nos. 120, 124, 126]**

Before the Court is Plaintiffs Ligaya Ronduen, Carlos Castillo, Miriam Jeannette Scheetz, Wilfredo Gonzalez Mena, Somboon Phaymany, and Yolanda Mendoza's (collectively, "Plaintiffs") Letter Brief ("Motion" or "Mot.") seeking to compel responses to Plaintiffs' Requests for Production Numbers ("RFP Nos.") 16 and 17 propounded on Defendant/Third Party Plaintiff The GEO Group, Inc. ("GEO") and Defendant/Third Party Defendant Spartan Chemical Co. ("Spartan").  Electronic Case Filing Number ("ECF No.") 120, Mot.

After reviewing the parties' arguments and for the reasons set forth in this Order, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion.

## I.    BACKGROUND

On March 20, 2023, Plaintiffs filed a class action complaint ("Complaint" or "Compl."), ECF No. 1, Compl., alleging that GEO's "improper use of a toxic chemical at Adelanto [Detention Center ("Adelanto" or "the Facility")] from February 2020 to April 2021" caused Plaintiffs to be "systematically poisoned, ignored, and left to suffer" by GEO and that in response to "eerily similar reports of concerning symptoms," GEO "den[ied] and misrepresent[ed] the use and effects of the toxic chemical to people detained and regulators alike."  Id. at 4.  This matter was filed in this Court based on the existence of diversity jurisdiction between the parties.  Id. at 7.

Plaintiffs allege that in response to the COVID-19 pandemic, GEO's staff began "widely and indiscriminately spraying a powerful aerosol chemical called HDQ Neutral [("HDQ")] . . . into the air and onto all surfaces [in Adelanto], including food contact surfaces, telephones, rails,

door handles, bathrooms, showers and sinks." Id. at 5. Plaintiffs further allege that GEO's staff sprayed HDQ "when people were eating, and the chemical mist would fall on their food[,]" "at night on or around the bunk beds and cells where people slept[,]" and "on at least one occasion, [GEO's] staff sprayed individuals as a disciplinary measure." Id. "Due to their incessant, months-long exposure to HDQ Neutral, Plaintiffs and others detained at Adelanto experienced acute symptoms, including but not limited to persistent cough, irritation of the throat and nasal passages, skin irritation and rashes, and headaches[,]" "had nosebleeds or found blood in their mouth and saliva[,]" "had debilitating headaches or felt dizzy and lightheaded[,]" "suffered anxiety during the months in which the chemical was sprayed at Adelanto[,]" and experienced other individualized symptoms. Id. In response to complaints about GEO's use of HDQ and its effects on Plaintiffs, GEO's staff reassured Plaintiffs and other detained individuals that HDQ "was a necessary and safe protective measure against COVID-19." Id. at 6. GEO's medical staff "failed to provide accurate information to Plaintiffs about the cause of their suffering" and "failed to identify any potential medical risks related to such a significant exposure to HDQ Neutral." Id.

As a result, Plaintiffs asserted the following six causes of actions against GEO: (1) negligence under Cal. Civ. Code § 1714(a) ("§ 1714(a)"); (2) battery; (3) premises liability under § 1714(a); (4) concealment under Cal. Civ. Code § 1710(3); (5) intentional misrepresentation under Cal. Civ. Code §1710(1); and (6) negligent misrepresentation under Cal. Civ. Code § 1710(2). Id. at 43-51. Plaintiffs "seek compensatory and special damages[,]" "payment of medical monitoring and expenses for the next five years[,]" and "exemplary damages sufficient to punish and deter GEO from such misconduct in the future." Id. at 6-7.

On July 20, 2023, GEO filed an Answer to Plaintiffs' Complaint, ECF No. 34, and a Third Party Complaint ("TPC") against Spartan, alleging that Spartan "executed a Statement of Work Agreement [("SOW")] effective December 1, 2019 through November 30, 2022," which included the installation of "dispensing equipment for HDQ Neutral at various locations at [GEO's] Adelanto facility," ECF No. 35, TPC at 2, 3. "The SOW provided that Third-Party Defendant Spartan would provide Service Equipment Support to GEO, stating 'Spartan Chemical authorized distributors and certified service technicians will provide monthly service calls to monitor and adjust as necessary the dispensing equipment to assure the proper ratio is dispensing for each application.'" Id. at 3.

GEO further alleged that "Third-Party Defendant Spartan owed GEO both a contractual duty and a duty of care to ensure the ratio of HDQ Neutral dispensed, and the training provided with regard to HDQ Neutral, were appropriate for the Adelanto Facility. Said duty of care extended to detainees." Id. at 4. Consequently, "should Plaintiffs' allegations prevail, Third Party Defendant Spartan and ROES 1-10 breached their duties of care to GEO and detainees." Id. at 5.

Based on these allegations, GEO brought the following six causes of action against Spartan:

(1)     breach of contract arising from the potential "improper dilution ratio and improper handling of HDQ Neutral" "to the extent Plaintiffs are correct in their allegations regarding an improper dilution ratio and improper handling of HDQ Neutral," id. at 5-6;

(2)    negligence arising from Spartan's alleged breach of its "duties of care owed to GEO and detainees by failing to ensure that the ratio of HDQ Neutral dispensed at the Adelanto Facility was proper and appropriate," id. at 6;

(3)    implied indemnity "in the event said negligence of third-party defendants, and each of them, is determined to have been a proximate cause of the injuries and damages, if any, allegedly sustained by Plaintiffs in the underlying action, then GEO is entitled to indemnity from said third-party defendants, and each of them, on a comparative fault basis . . . ," id. at 7;

(4)    equitable indemnity, because even though "GEO denies liability arising from Plaintiffs' Complaint, GEO is informed and believes and thereon alleges that the improper dilution of HDQ Neutral and/or improper training at the Adelanto Facility was caused, in whole or in part, by third-party defendants, as herein alleged[,]" id. at 8;

(5)    contribution, because while "GEO contends that it is in no way legally responsible for the damages alleged in Plaintiff[s'] Complaint[,]" if "GEO is held liable for all or any part of Plaintiff[s'] damages, third-party defendants, to the extent that their fault is determined by the Court, are obligated to reimburse GEO for all or any liability so assessed by way of contribution," id. at 9; and

(6)    declaratory relief in the form of a "judicial determination of the respective rights and obligations of GEO and third-party defendants with respect to the damages alleged in this Third-Party Complaint, including third-party defendants' obligation to fully reimburse GEO for costs incurred to date and third-party defendants' obligations with respect to any judgment or settlement that may occur in the underlying action." Id.

Accordingly, GEO seeks "a declaration of the parties respective rights and duties;" "judgment against third-party defendants . . . for the total amount of any sums which GEO is adjudged liable to Plaintiffs;" "damages arising out of the third-party defendants' indemnification and contractual obligations"; "an order of the Court declaring the percentage of fault, if any, between GEO and third-party defendants for damages and losses allegedly caused to Plaintiffs" and "awarding judgment in favor of GEO and against third-party defendants based upon the relative percentage of fault of each party;" "an order of the Court that GEO is entitled to be fully indemnified by third-party defendants for any and all settlements, compromises and/or judgments agreed to or entered as a result of the underlying action;" "interest on all sums awarded as damages;" and "further relief as the court may deem just and proper." Id. at 10.

On October 13, 2023, Spartan filed an Answer to GEO's TPC ("TPC Answer"). ECF No. 48, TPC Answer. Spartan denies the allegations in GEO's TPC and asserts various affirmative defenses, including that "if [GEO] sustained any damages as a result of the conduct alleged in the [TPC], which Spartan denies, such damages were not the result of any acts, omissions, or other conduct of Spartan[,]" and "[a]ll of the alleged damages that are subject of [GEO's TPC] are the result of intervening and/or superseding cause(s) for which Spartan is not responsible and for which it has no liability." Id. at 2-11.

On October 16, 2024, at the request of the parties, the Court held a hearing to address ongoing discovery disputes between the parties. ECF No. 111. In relevant part, the parties discussed GEO's objection to Plaintiffs' RFP Nos. 16 and 17 on the grounds that the information sought is protected by attorney-client privilege and the work product doctrine through the

common interest doctrine.  ECF No. 112 at 31.  The Court ordered the parties to provide case law in support of their respective positions on the applicability of the common interest doctrine by October 23, 2024, and GEO and Spartan consented to submit their Joint Defense Agreement ("JDA") for in-camera review.  ECF No. 111.

On October 29, 2024, the Court held a continued discovery hearing, when the parties agreed to brief their positions on GEO's objection to RFP Nos. 16 and 17 on the basis of the common interest doctrine.  ECF No. 118.  On November 4, 2024, Plaintiffs filed their Motion. ECF No. 120, Mot.  On November 6, 2024, GEO and Spartan filed a Letter Brief opposing Plaintiffs Motion ("Opposition" or "Opp'n"), ECF No. 124, Opp'n, and on November 12, 2024, Plaintiffs filed a Letter Brief in support of their Motion ("Reply"), ECF No 126, Reply.

On January 6, 2025, Plaintiffs filed the operative First Amended Complaint ("FAC"), which adds Spartan as a Defendant to Plaintiffs' pre-existing negligence cause of action against GEO and asserts the following new causes of action against Spartan: (1) strict liability design defect for deliberately overconcentrating HDQ Neutral in "spray bottles, bulk sprayers, and mopping buckets beyond the level directed for use by the EPA approved label"; (2) strict liability failure to warn of "the overconcentration of HDQ Neutral[,]" "the potential risks related to spraying overconcentrated HDQ Neutral throughout the Adelanto Facility[,]" and for failing "to provide any instruction regarding the safe or unsafe uses of the product"; and (3) negligent failure to warn "of the danger resulting from the planned use of HDQ Neutral at the Adelanto Facility and/or instruct on the safe use of HDQ Neutral[.]"  ECF No. 152, FAC at 59-62.

Defendant filed its Answer to the FAC on January 30, 2025, ECF No. 176, and Spartan filed its Answer to the FAC on February 6, 2025, ECF No. 179.

### A.    The Disputed Discovery

At issue are Plaintiffs' RFP Nos. 16 and 17, which read as follows:

**RFP No. 16**: All DOCUMENTS exchanged between YOU and SPARTAN, including without limitation YOUR and SPARTAN'S respective counsel, from January 1, 2019 to January 1, 2023."

**RFP No. 17**: All COMMUNICATIONS and DOCUMENTS relating to COMMUNICATIONS between YOU and SPARTAN, including without limitation YOUR and SPARTAN's respective counsel, from January 1, 2019 to the present relating to or referencing HDQ NEUTRAL.

ECF No. 120, Mot. at 1.  GEO objected to RFP Nos. 16 and 17, in relevant part, on the following ground:

RESPONDING PARTY further objects to this Request to the extent it seeks documents protected by the attorney/client privilege, the attorney-work product doctrine, the common interest or joint defense doctrines, and any other statutory or common law privilege.

ECF No. 134-5 at 44.

---

B.     **The Parties' Arguments**

1.     **Plaintiffs' Motion**

In their Motion, Plaintiffs argue that GEO and Spartan cannot avail themselves of the common interest doctrine because "GEO and Spartan are actual adversaries on the exact topics for which they invoke the doctrine: dilution and the use of HDQ Neutral[,]" and the doctrines do "not apply to parties who are potential adversaries, let alone parties that are actual adversaries in a litigation." ECF No. 120, Mot. at 1 (citations omitted).

GEO and Spartan are actual adversaries "on the topics of toxicity of HDQ Neutral, proper dilution of HDQ Neutral, and the proper use of HDQ Neutral" because GEO, in its TPC, alleges that Spartan "improperly diluted HDQ Neutral and failed to provide adequate training" and Spartan, in its TPC Answer, "responded by denying all of GEO's allegations and asserting eighteen affirmative defenses, including superseding/intervening cause." Id. at 2 (citations omitted). This "adversarial relationship [concerning who is liable for Plaintiffs' injuries] has destroyed the attorney-client or work-product privilege in any internal information, data, reports, and communications relating to HDQ Neutral [that] have been exchanged between GEO and Spartan." Id. at 3 (citation omitted).

GEO and Spartan "are privately conferring regarding their expert opinions on issues of toxicity," but "[w]hether HDQ Neutral is toxic and how it should be safely applied is central to Plaintiffs' and GEO's claims as well as Spartan's and GEO's defenses[,]" and, therefore, all parties are "entitled to discovery reflecting Spartan's opinion on the proper use of HDQ Neutral or its understanding of the chemical's toxicity[.]" Id. at 3-4. Thus, "Plaintiffs respectfully ask the Court to order GEO to produce documents responsive to RFP 17" which have been withheld behind "an erroneous shield of privilege." Id. at 4.

2.     **GEO and Spartan's Joint Opposition**

In their Joint Opposition, GEO and Spartan argue that their "JDA is valid and applicable, and communications between GEO and Spartan designed to further their shared legal interests are protected under the joint defense and common interest doctrines and there has been no waiver of privilege." ECF No. 124, Jt. Opp'n at 1.

First, as a preliminary matter, "counsel-to-counsel communications here relating to dilution ratio, training, and use of HDQ Neutral are of marginal utility as counsel are not fact witnesses nor experts." Id. Therefore, "the documents being sought are not relevant." Id.

Second, GEO and Spartan share the following common legal interests and therefore, the common interest doctrine applies to communications and documents about such interests:
1) "[D]isproving [P]laintiffs' liability claims and defeating class certification";
2) Establishing that the dilution of HDQ Neutral and the training on the use of HDQ Neutral at the Adelanto facility was proper and adequate;
3) "[D]isproving causation between HDQ Neutral exposure and Plaintiffs' claimed injuries";
4) Limiting damages claimed by Plaintiffs; and

5)  Jointly retaining experts.

Id. at 2-3.

Third, GEO and Spartan cite several cases applying "the common interest doctrine . . . even where adverse interests are present[.]"  Id. at 3 (emphasis added).  For example, the Ninth Circuit held "that the common interest doctrine can apply even when there are some adverse interests, as long as there is a shared legal interest."  Id. (citing Hunydee v. United States, 355 F.2 183, 185 (9th Cir. 1965)).  Thus "[t]he adversarial relationship [between Spartan and GEO] concerning indemnification and negligence claims does not negate their common legal interest in the primary litigation."  Id. at 4

Fourth, even on issues involved in GEO's indemnification and negligence claims, GEO and Spartan are not "directly opposing parties" because "GEO's [TPC] against Spartan is conditional and seeks to hold Spartan liable only if GEO is found liable to Plaintiffs."  Id. (citation omitted).

### 3.  Plaintiffs' Reply

Plaintiffs reply that "no curtain shields the highly relevant, documents, information, and communications that [GEO and Spartan] has voluntarily disclosed to its actual adversary."  ECF No. 126, Reply at 1.

First, "the exchanged work product and communications concerning dilution ratios, training, causation, and damages are directly relevant to Plaintiffs' claims."  Id. (emphasis in original) (citations omitted).

Second, "GEO and Spartan have explicitly stated that they currently have an 'adversarial relationship concerning [GEO's] indemnification and negligence claims[,]'" id. (first alteration in original) (quoting ECF No. 124, Opp'n at 4), and therefore, "cannot assert privilege over their shared communications concerning the very topics on which they are at odds."  Id. at 2.

Third, contrary to what they claim in their Opposition, GEO and Spartan do not have a shared interest in "'disproving causation between HDQ Neutral and Plaintiffs' claimed injuries,'" id. (quoting ECF No. 124, Opp'n at 2-3), because GEO, to prevail on its claims against Spartan, must prove that Spartan's failure "to properly meter and provide adequate training with respect to HDQ Neutral" caused Plaintiffs' injuries and Spartan, in turn, will have "to point the liability and causation finger at GEO by homing in on GEO's rogue, incessant spraying of HDQ Neutral."  Id. (citations omitted).

Fourth, GEO and Spartan's asserted shared interest in "'disproving liability and defeating class certification' and demonstrating limited damages[,]'" id. (quoting ECF No. 124, Opp'n at 2-3), is a "'shared desire to see the same outcome in a legal manner'" which "is insufficient to bring a communication between two parties within [the joint defense doctrine]."  Id. (quoting In re Pac. Pictures Corp., 679 F.3d 1121, 1129 (9th Cir. 2012)).

Thus, Plaintiffs request that the Court order GEO and Spartan to "produce documents responsive to Plaintiffs' [RFP] No. 17."  Id.

## II.    LEGAL STANDARD

### A.    <u>General Legal Standards Regarding Discovery</u>

Federal Rule of Civil Procedure ("Rule") 26(b)(1) governs the scope of permissible discovery and provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  Relevancy, for purposes of discovery, "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." <u>Nguyen v. Lotus by Johnny Dung Inc.</u>, No. 8:17-cv-01317-JVS-JDE, 2019 WL 3064479, at *1 (C.D. Cal. June 5, 2019) (internal citations and quotation marks omitted).  "Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." <u>Duran v. Cisco Sys., Inc.</u>, 258 F.R.D. 375, 378 (C.D. Cal. 2009) (internal citations and quotation marks omitted).

Because discovery must be both relevant and proportional, the right to discovery, even plainly relevant discovery, is not limitless.  <u>See</u> Fed. R. Civ. P. 26(b)(1); <u>Nguyen</u>, 2019 WL 3064479, at *1.  Discovery may be denied where: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(C).

"The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1).  The party opposing discovery then has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." <u>Bryant v. Ochoa</u>, No. 07-cv-200 JM (PCL), 2009 WL 1390794 at * 1 (S.D. Cal. May 14, 2009).  "The party opposing discovery is 'required to carry a heavy burden of showing' why discovery should be denied." <u>Reece v. Basi</u>, No. 2:11-cv-2712 TLN AC P, 2014 WL 2565986, at *2 (E.D. Cal. June 6, 2014), <u>aff'd</u>, 704 F. App'x 685 (9th Cir. 2017) (quoting <u>Blankenship v. Hearst Corp.</u>, 519 F.2d 418, 429 (9th Cir.1975)).

"The district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." <u>United States ex rel. Brown v. Celgene Corp.</u>, No. CV 10-3165 GHK (SS), 2015 WL 12731923, at *2 (C.D. Cal. July 24, 2015) (internal citations and quotation marks omitted).

### B.      Attorney-Client Privilege

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." United States v. Sanmina Corp., 968 F.3d 1107, 1116 (9th Cir. 2020) (citing Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)). "The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney[.]" Upjohn, 44 U.S. at 395. Whether information is covered by the attorney-client privilege is determined by an eight-part test:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

Id. (quoting U.S. v. Graf, 610 F.3d 1148, 1156 (9th Cir. 2010)). A "'party asserting the attorney-client privilege has the burden of establishing the [existence of an attorney-client] relationship and the privileged nature of the communication.'" Graf, 610 F.3d at 1156 (quoting United States v. Ruehle, 583 F.3d 600, 607 (9th Cir. 2009)). This means that the "party asserting the privilege bears the burden of proving each essential element." Id. (citations and internal quotation marks omitted).

The attorney-client privilege "may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice," as well as to communications with third parties "acting as agent" of the client. Id. (citations omitted). While there are contexts in which communications with attorneys for the purpose of non-legal advice are not privileged, generally, if a person hires a lawyer for advice, there is a rebuttable presumption that the lawyer is hired to give legal advice. Id. (citing United States v. Chen, 99 F.3d 1495, 1501 (9th Cir. 1996)).

There are several ways by which parties may waive the attorney-client privilege. First, the privilege may be destroyed by "express waiver" where a party voluntarily discloses privileged documents to a third-party not bound by the privilege, "or otherwise shows disregard for the privilege by making the information public." Bittaker v. Woodford, 331 F.3d 715, 719 (9th Cir. 2003). Second, "implied waiver" waives the privilege where a party "put[s] the lawyer's performance at issue during the course of litigation," which is meant to prevent parties from "abus[ing] the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." Id. at 718-19. Finally, "subject matter waiver" operates such that "voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject." Weil v. Inv./Indicators, Rsch. & Mgmt., Inc., 647 F.2d 18, 24 (9th Cir. 1981).

### C.      Work Product Doctrine

The "work product doctrine is a qualified protection limiting discovery of 'documents and tangible things' prepared by a party or his or her representative in anticipation of litigation or

---

trial." Jones v. Hernandez, 322 F.R.D. 411, 412 (S.D. Cal. 2017) (citing Admiral Ins. Co. v. U.S. Dist. Court for Dist. Of Ariz., 881 F.2d 1486, 1494 (9th Cir. 1989)). The party claiming work product protection bears the burden of establishing that the work product doctrine applies. United States v. Richey, 632 F.3d 559, 566 (9th Cir. 2011). "A party may obtain discovery of work product only on a showing of 'substantial need' and an inability to obtain equivalent information from other sources." Hernandez, 322 F.R.D. at 412 (quoting Fed. R. Civ. P. 26(b)(3)(A)(ii)). "Even when a court orders disclosure of work product, 'it must protect against disclosure of the mental impressions, conclusion, opinions, or legal theories of a party's attorney or other representative concerning the litigation.'" Id. (quoting Fed. R. Civ. P. 26(b)(3)(B)). These materials—otherwise known as "opinion" work product—represent the "core types of work product" that the doctrine was designed to protect. Id. (citing Republic of Ecuador v. Mackay, 742 F.3d 860, 870 n.3 (9th Cir. 2014)).

### D.      Common Interest Doctrine

"The common interest doctrine is not a privilege in and of itself; rather, it constitutes an exception to the rule on waiver where communications are disclosed to third parties." Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc., 299 F.R.D. 638, 646 (E.D. Cal. 2014); see also Waymo LLC v. Uber Techs., Inc., 2017 WL 2485382, at *7 (N.D. Cal. June 8, 2017). The common interest exception is construed more narrowly in the context of the attorney-client privilege than in the context of the work product doctrine. Cal. Sportfishing Prot. All., 299 F.R.D. at 646. "While many courts have held that to not waive a privilege, such as the attorney-client privilege, the common interest that parties must share has to have a legal component, this is not the case with the work product doctrine." Pecover v. Elec. Arts Inc., No. C08-2820 CW (BZ), 2011 WL 6020412 at *2 (N.D. Cal. Dec. 2, 2011).

For purposes of preserving the attorney-client privilege, the common interest doctrine applies where: "(1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." Resilient Floor Covering Pension Fund v. Michael's Floor Covering, Inc., No. C11-5200 JSC, 2012 WL 3062294, at *5 (N.D. Cal. July 26, 2012) (citation omitted). In the context of the attorney-client privilege, the Ninth Circuit has recognized the common interest doctrine is "designed to allow attorneys for different clients pursuing a common legal strategy to communicate with each other." In re Pac. Pictures Corp., 679 F.3d 1121, 1129 (9th Cir. 2012) (as amended); Bruno v. Equifax Info. Servs., No. 2:17-cv-327-WBS-EFB, 2019 WL 633454 at *11 (E.D. Cal. Feb. 14, 2019). However, "a shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within [the common interest] exception." In re Pac. Pictures Corp., 679 F.3d at 1129. "Instead, the parties must make the communication in pursuit of a joint strategy in accordance with some form of agreement-whether written or unwritten." Id. While the common interest does not need to be identical, "the overall interests of the parties who assert the common interest doctrine must be aligned to the extent that they are 'maintaining substantially the same cause.'" Shenwick v. Twitter, Inc., No. 16-cv-05314-JST (SK), 2019 WL 3815717, at *2 (N.D. Cal. Apr. 1, 2019) (citation omitted).

For work-product immunity to be preserved, "[t]he shared interest may be only financial or commercial in nature," and "no waiver will occur so long as there is a reasonable basis for believing that the common interest recipient will keep the disclosed material confidential." Lennar Mare Island, LLC v. Steadfast Ins. Co., No. 2:12-cv-2182 KJM KJN, 2014 WL 1366252, at *6 (E.D. Cal. Apr. 7, 2014) (citations omitted); Resilient Floor Covering Pension Fund, 2012

---

WL 3062294, at *6.  It applies where "the third party shares a common interest with the disclosing party that is adverse to that of the party seeking the discovery." Cal. Sportfishing Prot. All., 299 F.R.D. at 646.  "Essentially, a court must determine if disclosure is consistent with the work product doctrine's purpose of preserving the adversary system." Id.  Thus, disclosure generally "does not waive the work product immunity unless it has substantially increased the opportunities for potential adversaries to obtain the information." Id. at 645 (citation omitted).

### III.   DISCUSSION

After careful review of the briefing and relevant law, the Court grants in part and denies in part Plaintiffs' Motion and orders GEO and Spartan to produce materials responsive to the portions of Plaintiffs' Motion which are granted as discussed below.

### A.   Plaintiffs' Motion Is Granted as to RFP No. 16.

During a continued discovery hearing held on October 29, 2024, "the parties agreed to further brief issues with respect to RFP[ Nos.] 16 [and] 17[.]" ECF No. 118.  However, Plaintiffs only discuss RFP No. 16 in a footnote in their Motion and Spartan and GEO fail to mention RFP No. 16 at all, focusing solely on RFP No. 17.  ECF No. 120, Mot. at 1 n.1 (arguing that RFP No. 16 "is temporally limited to before the instant lawsuit was filed" and therefore, does not raise the same issues of joint defense or common interest); see generally ECF No. 124, Opp'n.  Thus, because GEO and Spartan fail to make an argument regarding RFP No. 16, Plaintiffs' Motion is granted as to RFP No. 16.  See Finjan, Inc. v. Juniper Network, Inc., No. 17-cv-05659-WHA (TSH), 2019 WL 2749577, at *2 (N.D. Cal. July 1, 2019) (ruling that "Finjan asserted other objections in its RFP responses but does not argue any of them in the letter brief. Accordingly, the Court considers those objections waived."); Sherwin-Williams Co. v. Earl Scheib of California, Inc., No. 12CV2646-JAH(JMA), 2013 WL 12073836, at *2, n.1 (S.D. Cal. Mar. 4, 2013) (noting that when the party objecting to the production of discovery raised objections in response to the subpoena duces tecum but did not argue or address them in the opposition brief, the court deemed them to be The Court, therefore, deems all objections not addressed in connection with the pending motion and opposition thereto to be "moot or waived").

### B.   The Documents Sought in RFP No. 17 Are Relevant.

Through RFP No. 17, Plaintiffs seek documents exchanged between GEO and Spartan concerning HDQ Neutral.  See ECF No. 120, Mot. at 1.  Communications and documents exchanged between the manufacturer and user of the chemical that is allegedly responsible for Plaintiffs' injuries could clearly "bear[] on, or [] reasonably could lead to other matters that could bear on, any issue that is or may be in the case[,]" even if such an exchange occurs between counsel. Nguyen, 2019 WL 3064479 at *1.  Thus, the documents sought in RFP No. 17 are relevant under Rule 26(b)(1).

### C.   GEO and Spartan Have an Adversarial Relationship Concerning the Proper Dilution of and Training Regarding HDQ Neutral.

First, the Court acknowledges the existence of a valid, written JDA between Spartan and GEO.  With the consent of GEO and Spartan, the Court conducted an in camera review of the

JDA.  See ECF No. 111.  However, for the reasons stated below, the Court finds that the proper dilution of HDQ Neutral and the adequacy of Spartan's training on HDQ Neutral use are issues not covered by the JDA.

As GEO and Spartan admit in their Opposition, they have an "adversarial relationship concerning [GEO's] indemnification and negligence claims[.]"  ECF No. 124, Opp'n at 4.  In its third-party negligence claim against Spartan, GEO alleges that Spartan "fail[ed] to ensure that the ratio of HDQ Neutral dispensed at the Adelanto Facility was proper and appropriate[,]" and "fail[ed] to provide training with regard to HDQ Neutral that was proper and appropriate for the Adelanto Facility."  ECF No. 35, TPC at 6.  In its equitable indemnity claim against Spartan, GEO alleges that "the improper dilution of HDQ Neutral and/or improper training at the Adelanto Facility was caused, in whole or in part, by [Spartan.]"  Id. at 8.  Thus, the admitted "adversarial relationship concerning [GEO's] indemnification and negligence claims" is, more specifically, an adversarial relationship concerning the adequacy of Spartan's training and dilution of HDQ Neutral.  ECF No. 124, Opp'n at 4.  GEO's counsel admitted that materials concerning dilution and training were not covered by the JDA and could be produced during the October 16, 2024 discovery hearing in the following exchange with the Court:

> MR. PADILLA:  Well, there's an underlying privilege.  Spartan and GEO -- the third party complaint is-- is narrowly tailored.  It is specific to training and chemical dilution issues.  With -- other than that, though, Spartan and GEO share a common legal interest in establishing that HDQ was safe to use during the Pandemic and that it did not cause Plaintiffs' injuries.  So, there are common interests in defending against the liability and damages aspects of this case.
> . . .
> THE COURT: So, in that sense, if it relates to training and dilution, there's not going to be a JDA applicable, correct?
> MR. PADILLA:  Correct.
> THE COURT:  Okay.  So, at least with respect to that narrow subset of material, training and dilution, that can be produced?
> MR. PADILLA:  Yes.  I mean, to the extent there are any, but there are none.

ECF No. 112 at 31-33 (emphasis added).  Thus, GEO and Spartan have acknowledged several times that they have an adversarial relationship regarding the adequacy of Spartans' training of GEO's staff and the dilution of HDQ Neutral.

Now, in their Opposition, GEO and Spartan claim they have a common legal interest "in jointly establishing that the: (1) dilution of HDQ Neutral as dispensed from dispensers at the Adelanto Facility was proper; and (2) training provided at the Adelanto Facility was adequate." ECF No. 124, Opp'n at 2. But if Plaintiffs prevail at trial, GEO will argue against the very position it now claims to jointly take with Spartan.  See ECF No. 35, TPC at 5-9 (alleging that Spartan's training and dilution were improper).  Thus, there is no "joint legal strategy" with a "common goal" regarding dilution and training because GEO and Spartan's legal interests become directly adverse if Plaintiffs prevail on their claims.  Crosby v. California Physicians' Serv., No. 8:17-cv-01970-CJC-JDE, 2020 WL 2510651, at *4 (C.D. Cal. Feb. 26, 2020).  The fact that "GEO's [TPC] against Spartan is conditional and seeks to hold Spartan liable only if GEO is found liable to Plaintiffs[,]" ECF No. 124, Opp'n at 4 (emphasis in original), only reinforces that analysis.  See Crosby, 2020 WL 2510651, at *4 (finding that a common interest

---

does not exist, in part, because "[d]epending on the outcome of this case," the relationship between the entities that allegedly possess a common interest "may become adversarial in nature" if one later seeks reimbursement from the other); Lennar Mare Island, LLC v. Steadfast Ins. Co., No. 2:12-cv-2182 KJM KJN, 2014 WL 1366252, at *7 (E.D. Cal. Apr. 7, 2014) (same).

Accordingly, the Court finds that GEO and Spartan do not have a common interest regarding: (1) the dilution of the HDQ Neutral used at the Adelanto Facility; or (2) the training of GEO's staff regarding HDQ Neutral. As such, GEO and Spartan waived both the attorney-client and work product privileges when they exchanged documents related to those topics. Thus, the Court **GRANTS** Plaintiffs' Motion as to documents covered by RFP No. 17 concerning the two issues mentioned above.

The Court acknowledges that in their Opposition, and in the above-quoted portion of the October 16, 2024 discovery hearing transcript, GEO and Spartan claim that "no materials relating to the narrow subsets of training and dilution have been exchanged between GEO and Spartan." ECF No. 124, Opp'n at 2. The Court cannot compel GEO and Spartan to produce documents they claim do not exist. See Acosta v. JY Harvesting, Inc., No. 17-CV-1225-CAB-WVG, 2017 WL 3437654, at *3-4 (S.D. Cal. Aug. 10, 2017) ("[T]he Court cannot compel that which a party asserts it does not possess."). However, if GEO and Spartan still have not exchanged documents related to training and dilution, Plaintiffs deserve a response stating as much and GEO and Spartan are probably aware of the consequences of this choice. That is, they will be limited to such a response at trial. See N.W. v. City of Long Beach, No. EDCV 14-1569-VAP (SPx), 2016 WL 9021966, at *4 (C.D. Cal. June 7, 2016) (precluding defendants from "introducing evidence at trial that was not produced in response to plaintiff's discovery requests").

D.    **GEO and Spartan Share a Common Legal Interest in Defeating Class Certification, Disproving Causation, and Limiting Damages.**

Despite having an adverse relationship on dilution and training, GEO and Spartan may have a common interest on other issues. See United States v. Gonzalez, 669 F.3d 974, 980-981 (9th Cir. 2012) ("If their mutual interest is defined more narrowly in this way, then it is possible that their other adverse positions did not undermine their joint defense privilege on this specific issue."); see also Hunydee v. United States, 355 F.2d 183, 185 (9th Cir. 1965) (holding that the common interest doctrine applies to statements exchanged between attorneys representing clients with a common legal interest "to the extent that they concern common issues" (emphasis added)). Indeed, as discussed below, GEO and Spartan share a common interest in disproving causation, limiting damages, and defeating class certification.

First, GEO and Spartan have a common interest in establishing that Plaintiffs' alleged injuries could not have been caused by HDQ Neutral, no matter what the dilution ratio of the HDQ Neutral was or how it was used. Whether HDQ Neutral could ever cause Plaintiffs' alleged injuries is an issue only relevant to Plaintiffs' claims and not to the TPC. But if, on the other hand, GEO and Spartan argue that under a particular dilution ratio or according to a specific use, HDQ Neutral cannot cause Plaintiffs' alleged injuries, the common interest doctrine does not apply because, as explained above, the proper dilution ratio and use of HDQ Neutral are issues on which Spartan and GEO are actual adversaries in the TPC. Thus, GEO and Spartan

share a common legal interest in disproving causation by establishing that HDQ Neutral is incapable, under any circumstance or dilution ratio, of causing Plaintiffs' alleged injuries.

Second, Plaintiffs acknowledge that GEO and Spartan "are not diametrically opposed" on the issue of limiting Plaintiffs' damages but argue that nevertheless, GEO and Spartan "fail to demonstrate a common legal interest." ECF No. 126, Reply at 2. The Court disagrees. A joint attempt to limit damages may involve communications or work product exchanged "in pursuit of a joint strategy in accordance with [the JDA.]" In re Pac. Pictures Corp., 679 F.3d 1121, 1129 (9th Cir. 2012). Thus, GEO and Spartan share a legal interest in limiting Plaintiffs' damages.

Third and finally, defeating Plaintiffs' class certification would only limit GEO and Spartan's liability in equal proportion and does not bear on the substantive issues in the TPC. A joint attempt to defeat class certification may involve communications or work product exchanged "in pursuit of a joint strategy in accordance with [the JDA]." In re Pac. Pictures Corp., 679 F.3d at 1129. Thus, GEO and Spartan share a legal interest in defeating class certification.

/ / /

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs' Motion is **GRANTED IN PART AND DENIED IN PART**. Specifically, Plaintiffs' Motion is **GRANTED** as to documents and communications related to the dilution of the HDQ Neutral used at the Adelanto Facility and the training of GEO's employees on how to properly use HDQ Neutral. Plaintiffs' Motion is **DENIED** as to documents and communications related to: (1) HDQ Neutral's ability to cause any or some of the injuries alleged by Plaintiffs, regardless of how it is used or diluted; (2) otherwise limiting damages; and (3) defeating class certification.

**IT IS SO ORDERED.**