UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **5:23-cv-00481-JGB-SHK** | Date: | February 20, 2025 |
|---|---|---|---|

Title: ***Ligaya Ronduen, et al. v. The GEO Group Inc., et al.***

Present: The Honorable    Shashi H. Kewalramani, United States Magistrate Judge

| D. Castellanos | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings (IN CHAMBERS):    ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION [ECF Nos. 134 and 138]**

Before the Court is Plaintiffs' Ligaya Ronduen, Carlos Castillo, Miriam Jeannette Scheetz, Wilfredo Gonzalez Mena, Somboon Phaymany, and Yolanda Mendoza's (collectively, "Plaintiffs") Letter Brief ("Motion" or "Mot.") to compel Defendant The GEO Group Inc. ("GEO") "to use the search terms and custodians [proposed by Plaintiffs] to search all custodial [electronically stored information ("ESI") when responding to Plaintiffs' disputed Requests for Production ("RFPs") and Interrogatories ("ROGs")] and to comply with its independent duty to search for responsive documents among relevant paper files."  Electronic Case Filing Number ("ECF No.") 134, Mot. at 1.

After reviewing the parties' arguments and for the reasons set forth in this Order, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion.

## I.    BACKGROUND

On March 20, 2023, Plaintiffs filed a class action complaint ("Complaint" or "Compl.") alleging that GEO's "improper use of a toxic chemical at Adelanto [Detention Center ("Adelanto" or "the Facility")] from February 2020 to April 2021" caused Plaintiffs to be "systematically poisoned, ignored, and left to suffer" by GEO and that in response to "eerily similar reports of concerning symptoms," GEO "den[ied] and misrepresent[ed] the use and effects of the toxic chemical to people detained and regulators alike."  ECF No. 1, Compl. at 4.

Plaintiffs allege that in response to the COVID-19 pandemic, GEO's staff began "widely and indiscriminately spraying a powerful aerosol chemical called HDQ Neutral . . . into the air

---

and onto all surfaces [in Adelanto], including food contact surfaces, telephones, rails, door handles, bathrooms, showers and sinks." Id. at 5. Plaintiffs further allege that GEO's staff sprayed HDQ Neutral "when people were eating, and the chemical mist would fall on their food[,]" "at night on or around the bunk beds and cells where people slept[,]" and "on at least one occasion, [GEO's] staff sprayed individuals as a disciplinary measure." Id. "Due to their incessant, months-long exposure to HDQ Neutral, Plaintiffs and others detained at Adelanto experienced acute symptoms, including but not limited to persistent cough, irritation of the throat and nasal passages, skin irritation and rashes, and headaches[,]" "had nosebleeds or found blood in their mouth and saliva[,]" "had debilitating headaches or felt dizzy and lightheaded[,]" "suffered anxiety during the months in which the chemical was sprayed at Adelanto[,]" and experienced other individualized symptoms. Id. In response to complaints about GEO's use of HDQ Neutral and its effects on Plaintiffs, GEO's staff reassured Plaintiffs and other detained individuals that HDQ Neutral "was a necessary and safe protective measure against COVID-19." Id. at 6. GEO's medical staff "failed to provide accurate information to Plaintiffs about the cause of their suffering" and "failed to identify any potential medical risks related to such a significant exposure to HDQ Neutral." Id.

As a result, Plaintiffs asserted the following six causes of actions against GEO: (1) negligence under Cal. Civ. Code § 1714(a); (2) battery; (3) premises liability under § 1714(a); (4) concealment under Cal. Civ. Code § 1710(3); (5) intentional misrepresentation under Cal. Civ. Code §1710(1); and (6) negligent misrepresentation under Civ. Code § 1710(2). Id. at 43-51. Plaintiffs "seek compensatory and special damages[,]" "payment of medical monitoring and expenses for the next five years[,]" and "exemplary damages sufficient to punish and deter GEO from such misconduct in the future." Id. at 6-7. On July 20, 2023, GEO filed an Answer ("Answer") to Plaintiffs' Complaint. ECF No. 34, Answer.

Also on July 20, 2023, GEO filed a Third Party Complaint ("TPC") against Spartan Chemical Company, Inc. ("Spartan"), alleging that Spartan "executed a Statement of Work Agreement effective December 1, 2019 through November 30, 2022," which included the installation of "dispensing equipment for HDQ Neutral at various locations at [GEO's] Adelanto facility," ECF No. 35, TPC at 2, 3. Spartan, therefore, "owed GEO both a contractual duty and a duty of care to ensure the ratio of HDQ Neutral dispensed, and the training provided with regard to HDQ Neutral, were appropriate for the Adelanto Facility." Id. at 4. Accordingly, "should Plaintiffs' allegations [against GEO] prevail, [] Spartan and ROES 1-10 breached their duties of care to GEO and detainees." Id. at 5. Based on these allegations, GEO brought six causes of action against Spartan, which the Court does not summarize here because they are not relevant to the instant Motion. Id. at 5-9. On October 13, 2023, Spartan filed an Answer to GEO's TPC ("TPC Answer"), denying the allegations in GEO's TPC and asserting various affirmative defenses. ECF No. 48, TPC Answer.

On October 16, 2024, at the request of the parties, the Court held a hearing to address ongoing discovery disputes between the parties. ECF No. 111. In relevant part, the parties agreed to exchange proposals regarding search terms and custodians as applied to certain discovery requests by October 22, 2024 and October 25, 2024. Id. The Court also set a further hearing date with respect to these ESI issues for October 29, 2024, id., which the Court held on that date and therein set a further hearing for November 13, 2024, ECF No. 118.

On November 13, 2024, the Court held a continued discovery hearing, where the parties agreed to brief their positions on the proper custodians and search terms as applied to certain discovery requests. ECF No. 129. On November 22, 2024, Plaintiffs filed the instant Motion. ECF No. 134, Mot. On December 10, 2024, GEO and Spartan filed a Letter Brief opposing Plaintiffs' Motion ("Opposition" or "Opp'n") and declarations of Gabriel J. Padilla, Paul Richards, and James Janecka. ECF No. 138, Opp'n; ECF No. 139, Declaration of Gabriel J. Padilla ("Padilla Decl."); ECF No. 140, Declaration of Paul Richards ("Richards Decl."); ECF No. 141, Declaration of James Janecka ("Janecka Decl.").

On January 6, 2025, Plaintiffs filed the operative First Amended Complaint ("FAC"), which adds Spartan as a Defendant to Plaintiffs' pre-existing negligence cause of action against GEO and asserts three new causes of action against Spartan. ECF No. 152, FAC at 59-62. On January 30, 2025, GEO filed an answer to Plaintiffs' FAC ("GEO's FAC Answer") and on February 6, 2025, Spartan filed its answer ("Spartan Answer") to Plaintiffs' FAC. ECF No. 176, GEO's FAC Answer; ECF No. 179, Spartan Answer.

### A.  The Parties' Arguments

#### 1.  Custodians

Plaintiffs propose using the following custodians for all search terms:

**Adelanto-based employees**: James Janecka*, Joanne Crowder, Donald Dutcher, Elizabeth Harbert*, Joshua Johnson, Lucia Meza*, Monica Parr, Alicia Walker, Mary Wise-McCormack*, and Linda Woelke.* [Employees with an asterisk were identified in GEO's initial disclosures; GEO has identified all as relevant custodians for ROG No. 6 and RFP No. 9]

**Corporate employees**: Philip Dugger (HQ), Charles Leeper (HQ), Pablo Paez (HQ), Elijah Kimble (Western), James Black (Central), Paul Laird (Western, then Eastern), John Oliver (Eastern), Kevin Reilly (HQ). [GEO has identified all as relevant custodians other than Kevin Reilly]

ECF No. 134, Mot. at 2 (emphasis omitted).

#### a.  Plaintiffs' Motion

Plaintiffs' proposed Adelanto-based custodians are "necessary" because they "were involved in the local implementation of GEO's HDQ Neutral policy, the use of HDQ Neutral, and the training regarding HDQ Neutral, among other relevant topics. They also communicated with or assisted with communications with Spartan and the EPA and provided information to GEO's corporate employees regarding on-the-ground conditions." ECF No. 134, Mot. at 2

The corporate custodians proposed by Plaintiffs' "are necessary to capture whether any responsive complaints were communicated to corporate and are relevant to GEO's corporate knowledge of the conditions at Adelanto, its intent to defraud the public, and the reasonableness

of GEO's conduct at Adelanto." Id.  "To avoid potentially unresponsive hits, Plaintiffs propose a search term limitation for the corporate custodians to target responsive complaints: ("AND (Adelanto OR California)")." Id.

### b.    GEO's Opposition

GEO proposes using only Adelanto-based custodians for ROG No. 6 and RFP No. 9, the discovery requests concerning Adelanto detainees' medical complaints, and only corporate custodians for the rest of the disputed discovery requests.  ECF No. 138, Opp'n at 8-9.

Only Adelanto-based custodians should be used for ROG No. 6 and RFP No.9 because "[a]ny communication regarding grievances by detainees at Adelanto is likely to be limited to Adelanto personnel." Id. at 7.  Further, applying Plaintiffs' proposal for ROG No. 6 and RFP No. 9 to corporate custodians produced 13,174 total hits with families, which is unduly burdensome given the minimal relevance of "documents from GEO's other facilities[.]" Id. at 6-7.

Only corporate custodians should be used for all disputed discovery requests other than ROG No. 6 and RFP No. 9 because "GEO has already run 'HDQ' as a search term for all [Plaintiffs' proposed] Adelanto custodians," and thus, "there is no need for Adelanto custodians to be searched for [these discovery requests]." Id. at 9.  Further, the Neutral Statement limits the issue to be decided for these discovery requests to be "GEO's knowledge regarding HDQ Neutral beyond Adelanto." Id. at 8-9 (emphasis in original).

### 2.    ROG No. 11 and RFP Nos. 3, 21, 23, 44, and 45

Plaintiffs provide the following summary and propose the following search terms for ROG No. 11 and RFP Nos. 3, 21, 23, 44, and 45:

**At Issue**: Documents and information regarding HDQ Neutral and GEO's policies, practices, and knowledge related to HDQ Neutral.  Parties dispute whether GEO must produce documents related to facilities beyond Adelanto.

**Search Terms**: HDQ OR (clean* w/5 spray*)

ECF No. 134, Mot. at 3.

### a.    Plaintiffs' Motion

"GEO has proposed the term 'HDQ,' but because documents regarding HDQ Neutral may not refer to the chemical by name, the term 'HDQ' is insufficient.  Plaintiffs propose [the] additional search string [of (clean* w/5 spray*)] to capture a common way of describing HDQ Neutral, e.g., 'cleaning spray' or 'spray cleaner.'" Id.

### b.    GEO's Opposition

Plaintiffs' proposed search term (clean* w/5 spray*) is "not limited to HDQ Neutral, much less any cleaning product[]" and "will result in hits on, at a minimum, every other product or liquid (like water) that was sprayed for cleaning purposes, as well as unrelated activities (e.g., cleaning a shirt)."  ECF No. 138, Opp'n at 4 (emphasis in original).

### 3.    RFP Nos. 14 and 52

Plaintiffs provide the following summary and proposed search terms for RFP Nos. 14 and 52:

> **At Issue**: GEO's public statements regarding the use of HDQ Neutral or other disinfectants, as well as documents GEO produced in any litigation, arbitration, investigation, or enforcement action related to GEO's sanitation, cleaning, and housekeeping at its facilities related to GEO's response to COVID-19.  Parties dispute whether GEO must produce documents related to facilities beyond Adelanto.
>
> **Search Terms**: HDQ OR (clean* w/5 spray*)

ECF No. 134, Mot. at 3.

### a.    Plaintiffs' Motion

Again, "Plaintiffs propose [the] additional search string [of (clean* w/5 spray*)] to capture a common way of describing HDQ Neutral, e.g., 'cleaning spray' or 'spray cleaner.'"  Id. "Plaintiffs' proposal [for RFP Nos. 14 and 52] also includes five search strings meant to capture responsive documents concerning GEO's cleaning, sanitation, housekeeping, and use of cleaning products other than HDQ Neutral in response to COVID-19."  Id. at 3-4.  However, Plaintiffs will omit these five search strings from their proposal if "GEO conduct[s] a targeted collection of documents that are likely stored in central repositories—i.e., by interviewing someone in GEO's legal department and public relations department to identify responsive documents—rather than running search terms across emails."  Id. at 4.

### b.    GEO's Opposition

Plaintiffs' proposed search terms for RFP Nos. 14 and 52 "seek irrelevant information and stray beyond the instant dispute" because the issue in this case "is not GEO's use of 'other disinfectants' or 'GEO's cleaning, sanitation, housekeeping, and use of cleaning products other than HDQ Neutral in response to COVID-19' as Plaintiffs suggest."  ECF No. 138, Opp'n at 4-5. "GEO eventually agreed to produce such documents in its supplemental responses to certain requests that, as drafted, effectively sought every possible document relating to GEO's response to the pandemic[]" at the Adelanto Facility, but GEO maintains its objection to producing "such documents relating to other facilities."  Id. at 5 (emphasis omitted).  Further, "GEO does not

maintain a corporate central repository of electronic or hardcopy documents for legal matters[.]" Id. at 5, n.8.

### 4.      RFP Nos. 10, 16, and 17

Plaintiffs summarize RFP Nos. 10, 16, and 17 as follows and propose using the following search terms for the requests:

> **At Issue**: Manufacturer information GEO received related to HDQ Neutral, documents exchanged between GEO and Spartan, and communications between GEO and Spartan relating to or referencing HDQ Neutral.  Parties dispute whether GEO must produce documents related to facilities beyond Adelanto. . . .
>
> **Search Terms**: HDQ OR SPARTAN OR @spartanchemical.com

ECF No. 134, Mot. at 4.

### a.      Plaintiffs' Motion

"In addition to GEO's proposed terms (HDQ and Spartan), Plaintiffs have proposed adding the domain name for Spartan employee emails (@spartanchemical.com) to capture communications between GEO and Spartan."  Id.

### b.      GEO's Opposition

"[T]he term 'Spartan' necessarily will capture all emails to/from Spartan."  ECF No. 138, Opp'n at 5, n.9.

### 5.      RFP Nos. 51 and 53

Plaintiffs summarize RFP Nos. 51 and 53 as follows and propose the following search for the requests:

> **At Issue**: Documents produced in and court records related to any litigation, arbitration, investigation, or enforcement action against GEO related to a quaternary ammonium compound, including but not limited to HDQ Neutral. Parties dispute whether GEO must produce documents related to facilities beyond Adelanto. . . .
>
> **Search Terms**: HDQ
>
> quat OR quats OR quaternary OR ammonium OR QAC* OR "cleaning product*"

ECF No. 134, Mot. at 4.

### a.   Plaintiffs' Motion

"The term 'HDQ' is not adequate for these RFPs.  Responsive documents relate to any quaternary ammonium compound ("QACs"), which is a class of chemicals used in disinfectants, sanitizers, and cleaning products including HDQ Neutral."  Id. at 5.  "Plaintiffs propose that GEO conduct a targeted collection of documents that are likely stored in central repositories— i.e., by interviewing someone in GEO's legal department to identify responsive documents— rather than running [the above] search terms across emails to be more efficient and reduce GEO's burden."  Id.

### b.   GEO's Opposition

"The search terms quat OR quats OR quaternary OR ammonium OR QAC* OR "cleaning product*'" (Plaintiffs' proposal for RFP Nos. 51 and 53) [] seek information about GEO's use of other disinfectants at facilities beyond Adelanto and, therefore, are not tailored to the instant dispute."  ECF No. 138, Opp'n at 5.  Again, "GEO does not maintain a corporate central repository of electronic or hardcopy documents for legal matters[.]"  Id. at 5 n.8.

### 6.   RFP No. 18

Plaintiffs summarize RFP No. 18 as follows and propose the following search terms for the request:

> **At Issue**: All documents exchanged between GEO and the EPA between 2013 and 2023 relating to or referencing HDQ Neutral.  Parties dispute whether GEO must produce documents related to facilities beyond Adelanto. . . .
>
> **Search Terms**: EPA OR "ENVIRONMENTAL PROTECTION AGENCY" OR @epa.gov

ECF No. 134, Mot. at 5.

### a.   Plaintiffs' Motion

"Plaintiffs propose adding the domain name for EPA employee emails (@epa.gov) to capture communications between GEO and EPA even where they do not explicitly contain the terms 'EPA' or 'Environmental Protection Agency.'"  Id. at 5.

### b.   GEO's Opposition

GEO's proposed search term "EPA" will necessarily capture all communication to and from the EPA.  ECF No. 138, Opp'n at 5, n.9.

/ / /

/ / /

7.      **RFP No. 13**

Plaintiffs summarize RFP No. 13 as follows and propose using the following search terms for the request:

> **At Issue**: Documents and communications relating to GEO's testimony before Congress in 2020 and 2021 regarding COVID-19 or cleaning measures at GEO's facilities.  Parties dispute whether GEO must produce documents related to facilities beyond Adelanto. . . .

> **Search Terms**: "Homeland Security Committee" OR "Homeland Security Subcommittee" OR "Committee on Homeland Security"

> "House of Representatives" AND (testimon* OR testif* OR investig*)

> (testimon* OR testif* OR investigat* OR Congress* OR EPA) W/50 (Janecka OR Zoley OR covid OR (corona w/3 virus) OR coronavirus OR Adelanto OR California)

ECF No. 134, Mot. at 5.

a.      **Plaintiffs' Motion**

Plaintiffs' proposed "terms and search strings narrowly target documents related to GEO [Chief Operating Officer ("CEO")] George Zoley's testimony to Congress's Committee on Homeland Security, which concerned GEO's response to the COVID-19 pandemic and its use of HDQ Neutral at Adelanto and is part of the basis for Plaintiffs' fraud claim."  Id. at 5-6.

"GEO's proposed terms are deficient for at least two reasons[:]" (1) "GEO omits obviously relevant search terms: variations of the name of the House of Representative Committee GEO testified to and documents related to testimony or investigations concerning the Adelanto facility, its Facility Administrator (Janecka), and [CEO George] Zoley"; and (2) "GEO's search terms exclude documents hitting on the term 'Covid Clinic[,]'" but "[b]ecause GEO's testimony directly related to COVID-19 and GEO's response to the pandemic, any limitation that excludes COVID-19 related terms will almost certainly exclude relevant documents."  Id. at 6.

b.      **GEO's Opposition**

"While GEO might be agreeable to terms like 'Homeland Security Committee' for the period February 1, 2020 to January 1, 2022, it cannot reasonably agree to '(testimon* OR testif* OR investigat* OR Congress* OR EPA) W/50 (Janecka OR Zoley OR covid OR (corona w/3 virus) OR coronavirus OR Adelanto OR California)[]'" because this search string is "not limited to HDQ Neutral," nor is it "limited to cleaning and sanitation practices at Adelanto[.]"  ECF No. 138, Opp'n at 5.  Instead, this search string "seeks any document relating to testimony regarding

GEO's response to any aspect of the pandemic[]" and "any investigation by EPA (or otherwise) into GEO's response to any aspect of the pandemic, which is beyond the express language of RFP No. 13." Id.  GEO notes that just the last search string – (testimon* OR testif* OR investigat* OR Congress* OR EPA) W/50 (Janecka OR Zoley OR covid OR (corona w/3 virus) OR coronavirus OR Adelanto OR California) – generates "7,826 unique hits . . . and 15, 357 documents with families[.]" Id.

### 8.    ROG No. 6 and RFP No. 9

Plaintiffs summarize ROG No. 6 and RFP No. 9 as follows and proposes using the following search terms for each request:

> **At Issue**: Detainee complaints of skin, hair, throat, chest, eye, or respiratory ailments, nose bleeds, nausea, or head pain from February 1, 2020, to May 1, 2021.  Parties dispute whether GEO must produce documents related to full scope of ailments requested even if the complaint does not mention HDQ Neutral. . . .

> **Search Terms**: (skin w/5 (irrit* OR rash* OR itch* OR red* OR burn* OR sting* OR swell* OR blister* OR discomfort OR spray*)) AND detaine*

> rash* AND detaine*

> itch* AND detaine*

> ((hair* OR lash*) w/5 (loss OR lose* OR losing OR fall* OR brittle OR thin* OR loos* OR come out OR shed* OR break* OR patch* OR spray*)) AND detaine*

> (throat w/5 (sore OR irrit* OR pain* OR itch* OR red OR cough* OR dry* OR ach* OR scratch* OR burn* OR sting* OR bleed* OR blood* OR discomfort OR spray*)) AND detaine*

> (chest w/5 (pain* OR tight* OR cough* OR hurt* OR ach* OR burn* OR discomfort)) AND detaine* AND NOT ("Fit Test" OR (heart w/5 attack*))

> (breath* w/5 (difficult* OR hard OR hurt* OR pain* OR discomfort OR short* OR spray*)) AND detaine*

> cough* AND detaine*

> ((eye* OR ocular OR optic*) w/5 (pain OR irrit* OR injur* OR spray OR dry* OR hurt* OR ach* OR itch* OR scratch* OR burn* OR sting* OR water* OR discomfort OR spray*)) AND detaine*

> (respirat* w/5 (distress* OR infect* OR cough* OR pain* OR irrit* OR discomfort OR injur* OR dry* OR hurt* OR ach* OR spray*)) AND detaine*

lung AND detaine*

nosebleed AND detaine*

((nose OR nasal) w/5 (bleed* OR blood* OR run* OR pain* OR ach* OR irrit*)) AND detaine*

(nause* OR vomit* OR "throw up") AND detaine*

(blood w/5 (cough OR mouth)) AND detaine*

(head w/5 (pain OR hurt* OR ach* OR irrit* OR discomfort OR sore OR throb* OR tension OR pound* OR sick* OR squeez* OR tight*)) AND detaine*

headache AND detaine*

migraine AND detaine*

For corporate custodians, include the following limitation: AND (Adelanto OR California)

ECF No. 134, Mot. at 6-7.

### a.        Plaintiffs' Motion

Plaintiffs' proposal "include[s] additional terms that could be used to describe the responsive ailments." Id. at 7.  "GEO should use a broad set of descriptive terms because the parties do not prospectively know how detained people described responsive ailments." Id. Further, "GEO's proposed search strings included the limitation 'NOT W/75 ("covid" OR "corona")' which will exclude responsive, highly relevant complaints." Id.

### b.        GEO's Opposition

First, unlike Plaintiffs' proposal, GEO's proposed search terms "are narrowly tailored to . . . the body parts and medical conditions specified in [ROG] No. 6 and RFP No. 9[.]"  ECF No. 138, Opp'n at 9.  Second, ROG No. 6 and RFP No. 9 "by their express terms, are limited to complaints or grievances by detainees at Adelanto." Id. at 6 (citation omitted).  Thus, "[c]ommunications regarding grievances by detainees beyond Adelanto are nonresponsive to these requests." Id.  Third, without GEO's proposed search limitation of NOT W/75 ("covid" OR "corona"), there would be "an extreme number of false hits, as one would expect, regarding private medical information during the pandemic[.]" Id.  As a result, "GEO's proposal results in

a total of 3,323 documents that would need to be reviewed compared to the 29,118 documents under Plaintiffs' proposal[.]" Id. at 9

### 9. GEO's Objections to Plaintiffs' Discovery Requests

#### a. Plaintiffs' Motion

"Plaintiffs ask that the Court specify that . . . GEO's geographic, temporal, and scope objections as to the disputed discovery requests are overruled." ECF No. 134, Mot. at 10.

#### b. GEO's Opposition

GEO "expressly does not waive [its] objections [to Plaintiffs' disputed discovery requests] by submitting this letter brief regarding ESI search terms and custodians. Plaintiffs' request is improper and far beyond the scope of issues presented in the September 24 Neutral Statement and the Court's November 13 Order." ECF No. 138, Opp'n at 9.

Nevertheless, GEO defends its geographic scope objection to the disputed discovery requests on the ground that "information in GEO's possession regarding HDQ Neutral beyond the Adelanto Facility, including other facilities in the Western Region, much less from the Central and Eastern regions, is far beyond the scope of the allegations in Plaintiffs' Complaint and their proposed Class of individuals detained at Adelanto." Id. at 9. "Documents from GEO's other facilities are not likely to generate information relevant to Plaintiffs' claims and allegations regarding conditions at the Adelanto Facility" because "[e]ach facility . . . is responsible for establishing its own operational sanitation procedures and/or housekeeping plan in accordance with GEO's policy and procedures[.]" Id. Indeed, "not all GEO facilities use HDQ Neutral." Id. at 8 (citation omitted).

GEO also maintains its privacy objections to the disputed discovery requests. Id. at 10. GEO argues that "when the disclosure of information involves particularly sensitive information, such as disclosing personal medical history, current medical condition, or details regarding financial information, [as here,] there is a heightened expectation of privacy warranting additional protection." Id. (citations and internal quotation marks omitted).

However, if the Court is inclined to overrule GEO's objections, as requested by Plaintiffs, "GEO requests the Court allow further substantive briefing on this issue." Id.

### II. LEGAL STANDARD

#### A. General Legal Standards Regarding Discovery

Federal Rule of Civil Procedure ("Rule") 26(b)(1) governs the scope of permissible discovery and provides:

> Unless otherwise limited by court order, the scope of discovery is as follows:
> Parties may obtain discovery regarding any nonprivileged matter that is relevant
> to any party's claim or defense and proportional to the needs of the case,

considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Relevancy, for purposes of discovery, "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Nguyen v. Lotus by Johnny Dung Inc., No. 8:17-cv-01317-JVS-JDE, 2019 WL 3064479, at *1 (C.D. Cal. June 5, 2019) (internal citations and quotation marks omitted). "Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." Duran v. Cisco Sys., Inc., 258 F.R.D. 375, 378 (C.D. Cal. 2009) (internal citations and quotation marks omitted).

Because discovery must be both relevant and proportional, the right to discovery, even plainly relevant discovery, is not limitless. See Fed. R. Civ. P. 26(b)(1); Nguyen, 2019 WL 3064479, at *1. Discovery may be denied where: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). The party opposing discovery then has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." Bryant v. Ochoa, No. 07-cv-200 JM (PCL), 2009 WL 1390794 at * 1 (S.D. Cal. May 14, 2009). "The party opposing discovery is 'required to carry a heavy burden of showing' why discovery should be denied." Reece v. Basi, No. 2:11-cv-2712 TLN AC P, 2014 WL 2565986, at *2 (E.D. Cal. June 6, 2014), aff'd, 704 F. App'x 685 (9th Cir. 2017) (quoting Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir.1975)).

"The district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." United States ex rel. Brown v. Celgene Corp., No. CV 10-3165 GHK (SS), 2015 WL 12731923, at *2 (C.D. Cal. July 24, 2015) (internal citations and quotation marks omitted).

### III.    DISCUSSION

After careful review of the briefing and relevant law, the Court **GRANTS IN PARTS AND DENIES IN PART** Plaintiffs' Motion and orders GEO to use the search terms and custodians the Court finds appropriate, as discussed below.

### A.    The Court's Order Is Not Limited to the Neutral Statement.

Throughout its Opposition, GEO argues that Plaintiffs' Motion goes beyond the limits of the following two issues as defined in the September 24, 2024 Neutral Statement: (1) "whether GEO must produce documents and information regarding use of HDQ Neutral facilities beyond Adelanto"; and (2) "whether GEO must produce documents and information regarding complaints in 2020 and 2021 by detainees at Adelanto regarding certain medical issues and/or symptoms regardless of whether such complaints relate to HDQ Neutral."  ECF No. 138, Opp'n at 2.  GEO's understanding was that this briefing "was to be in the context of [those two issues], not as a 'free for all' where Plaintiffs effectively get to belatedly apply search terms on GEO's entire document review."  Id. at 8.

However, as the Court stated in the November 13, 2024 discovery hearing which ordered the instant briefing, this "ESI order . . . is going to be for all ESI. . . . [The Court is] not going to do it in piecemeal because [the Court] think[s] it's much more inefficient.  This is going to be an order for all ESI."  ECF No. 132 at 26.  The Court will not order more briefing on ESI-related issues.

### B.    GEO's Objections to the Disputed Discovery Requests Are Waived or Overruled.

In their Motion, Plaintiffs request that the Court overrule "GEO's geographic, temporal, and scope objections as to the disputed discovery requests[.]"  ECF No. 134, Mot. at 10.  GEO objects to Plaintiffs' request because it is "far beyond the scope of issues presented in the September 24 Neutral Statement and the Court's November 13 Order."  ECF No. 138, Opp'n at 9.  Again, the Court intended, as communicated during the hearing, that the instant briefing was the opportunity to resolve ESI issues related to these discovery requests and explicitly declined to consider issues "in piecemeal" because the Court finds that approach "much more inefficient."  ECF No. 132 at 26.  Thus, to the extent GEO fails to argue its objections to the disputed discovery requests in its Opposition, the Court considers those objections waived.  See Finjan, Inc. v. Juniper Network, Inc., No. 17-cv-05659-WHA (TSH), 2019 WL 2749577, at *2 (N.D. Cal. July 1, 2019) (ruling that "Finjan asserted other objections in its RFP responses but does not argue any of them in the letter brief. Accordingly, the Court considers those objections waived."); Sherwin-Williams Co. v. Earl Scheib of California, Inc., No. 12CV2646-JAH(JMA), 2013 WL 12073836, at *2, n.1 (S.D. Cal. Mar. 4, 2013) (noting that when the party objecting to the production of discovery raised objections in response to the subpoena duces tecum but did not argue or address them in the opposition brief, the court deemed them to be "moot or waived").

However, GEO appears to defend two of its objections to the disputed discovery requests – geographic scope and privacy – near the end of its Opposition.

First, GEO argues that "company-wide discovery" is "improper" because Plaintiffs' claims are limited to the Adelanto facility and therefore, "[d]ocuments from GEO's other facilities are not likely to generate information relevant to Plaintiffs' claims[.]"  ECF No. 138, Opp'n at 7, 9-10.  However, not all of Plaintiffs' claims are limited to what occurred inside the

Adelanto facility.  As part of Plaintiffs' intentional and negligent misrepresentation claims, Plaintiffs allege that corporate employees of GEO "made false and misleading statements to government and regulatory entities about its use of HDQ Neutral[.]"  ECF No. 152, FAC at 22-23.  Further, discovery about company sanitation policy and procedure could bear on the reasonableness of GEO's HDQ Neutral use at Adelanto.  See ECF No. 134, Mot. at 2.  Thus, contrary to GEO's claim, Plaintiffs do raise issues in the FAC concerning GEO's conduct beyond Adelanto and Plaintiffs are entitled to discovery that "bears on, or that reasonably could lead to other matters that could bear on," those issues.  Nguyen, 2019 WL 3064479, at *1 (internal citations and quotation marks omitted).  Accordingly, the Court finds that GEO must produce documents related to facilities beyond Adelanto for ROG No. 11 and RFP Nos. 3, 10, 13-14, 16-18, 21, 23, 44-45, and 51-53.

Second, GEO argues that "Plaintiffs' Requests raise serious third-party privacy issues." ECF No. 138, Opp'n at 10.  GEO does not specify which of the disputed discovery requests raise privacy issues and without such information, the Court cannot find that GEO carried its "heavy burden of showing why discovery should be denied."  Reece, 2014 WL 2565986, at *2 (citation and internal quotation marks omitted).  Further, the Court has issued an Amended Protective Order ("APO") in this case, ECF No. 166, APO, which minimizes the risk to third-party privacy. GEO may also redact sensitive information from the discovery it produces pursuant to the APO. See ECF No. 166, APO at 29-30.  Thus, the Court finds the need for the discovery sought in the disputed requests to outweigh the risk to third party privacy.

Accordingly, the Court **OVERRULES** GEO's geographic scope and privacy objections to the disputed discovery requests and considers all other objections not raised in GEO's Opposition to be waived.

### C.    **Plaintiffs' Proposed Custodians Are Appropriate.**

Plaintiffs propose using ten Adelanto-based custodians and eight corporate custodians for all disputed discovery requests.  ECF No. 134, Mot. at 2.  GEO, on the other hand, proposes using only Adelanto-based custodians for ROG No. 6 and RFP No. 9 and only corporate custodians for the rest of the disputed discovery requests.  ECF No. 138, Opp'n at 8-9.

First, the Court agrees with Plaintiffs that Adelanto-based custodians should be used for all disputed discovery requests, not just for ROG No. 6 and RFP No. 9 as proposed by GEO.  See ECF No. 134, Mot. at 2.  As Plaintiffs note, "Adelanto employees were involved in the local implementation of GEO's HDQ Neutral policy, the use of HDQ Neutral, and the training regarding HDQ Neutral, among other relevant topics[]" and therefore, are likely to possess ESI relevant to the issues in this case.  ECF No. 134, Mot. at 2.  GEO argues that Adelanto-based custodians are not necessary because "GEO has already run 'HDQ' as a search term for all local Adelanto custodians[.]"  ECF No. 138, Opp'n at 9.  However, as decided below, "HDQ" is not the only search term GEO must use for the disputed discovery requests and if GEO has no further ESI to produce for that specific search term, it may say so in its discovery responses.

Thus, the Court finds the use of Adelanto-based custodians for the disputed discovery requests to be appropriate.

Second, the Court agrees with Plaintiffs that corporate custodians should be used for ROG No. 6 and RFP No. 9, the discovery requests related to Adelanto detainees' medical complaints. See ECF No. 134, Mot. at 2. GEO objects to using corporate custodians for these requests because "[a]ny communication regarding grievances by detainees at Adelanto is likely to be limited to Adelanto personnel." ECF No. 138, Opp'n at 7. However, GEO also claims that applying Plaintiffs' proposal for ROG No. 6 and RFP No. 9 to corporate custodians produced 13,174 total hits with families. Id. at 6. GEO does not explain this apparent inconsistency. Further, to address GEO's concern, Plaintiffs' proposal adds the search limitation ("AND (Adelanto OR California)") for the corporate custodians "[t]o avoid potentially unresponsive hits[.]" ECF No. 134, Mot. at 7. Such a limitation sufficiently targets the relevant ESI sought in ROG No. 6 and RFP No. 9. Thus, the Court finds Plaintiffs' proposal to use corporate custodians for ROG No. 6 and RFP No. 9 to be appropriate.

Accordingly, the Court **GRANTS** Plaintiffs' Motion as to Plaintiffs' proposal to use the Adelanto-based and corporate custodians they identified for all disputed discovery requests.

### D. **Plaintiffs' Proposed Search String for ROG No. 11 and RFP Nos. 3, 21, 23, 44, and 45 Is Appropriate.**

For ROG No. 11 and RFP Nos. 3, 21, 23, 44, and 45, the parties disagree about whether the search term (clean* w/5 spray*) should be added to the agreed upon search term "HDQ" for a proposed search string of: HDQ OR (clean* w/5 spray*). ECF No. 134, Mot. at 3. The Court agrees with Plaintiffs that the search terms used for this group of discovery requests should include another way of referring to HDQ Neutral because GEO employees may not have used HDQ Neutral's proper name when referring to the disinfectant. While using (clean* w/5 spray*) may produce some unresponsive hits, 'cleaning spray' or 'spray cleaner' are sufficiently tailored to target other names for HDQ Neutral. Further, the use of (clean* w/5 spray*) "results in at most 801 unique hits[,]" which the Court does not find to be unduly burdensome. ECF No. 134, Mot. at 3. Thus, when weighed against the relevance of the requested information, and the sufficiently tailored search terms, Plaintiffs' proposal is not overly burdensome.

Accordingly, the Court **GRANTS** Plaintiffs' Motion as to Plaintiff's proposed search terms for ROG No. 11 and RFP Nos. 3, 21, 23, 44, and 45.

### E. **The Court Grants in Part and Denies in Part Plaintiffs' Motion Regarding RFP Nos. 14 and 52.**

Plaintiffs again propose using (clean* w/5 spray*) as an additional search term for RFP Nos. 14 and 52. ECF No. 134, Mot. at 3. For the reasons stated above, and because GEO makes no argument against using (clean* w/5 spray*) specifically for RFP Nos. 14 and 52, the Court

---

**GRANTS** Plaintiffs' Motion as at to the inclusion of the search term (clean* w/5 spray*) to RFP Nos. 14 and 52.

Plaintiffs' proposal for RFP Nos. 14 and 52 also includes five search strings "meant to capture responsive documents concerning GEO's cleaning, sanitation, housekeeping, and use of cleaning products other than HDQ Neutral in response to COVID-19." Id. at 3-4. GEO has apparently agreed to produce documents responsive to these search strings if they relate to the Adelanto facility; the Court will not disturb that agreement. See ECF No. 138, Opp'n at 5. However, GEO objects to these five proposed search strings as applied to facilities other than Adelanto. Id. The Court agrees with GEO that as applied to facilities other than Adelanto, Plaintiffs' five proposed search strings, which are not limited to HDQ Neutral, corporate knowledge of HDQ Neutral use, or even GEO sanitation policies, are not sufficiently tailored to the issues in this case. See id. at 3, n.3 (as an example, one possible hit result in Plaintiffs' third proposed search string is "clean wipe"). Plaintiffs fail to explain how their proposed search strings are relevant and therefore, fail to carry their Rule 26(b)(1) burden. Bryant, 2009 WL 1390794 at * 1.

Accordingly, the Court **GRANTS** Plaintiff's proposed inclusion of (clean* w/5 spray*) as an additional search term for RFP Nos. 14 and 52 without limitation on the geographic scope of that search term. However, the Court **DENIES** Plaintiffs' Motion as to Plaintiffs' proposed five search strings to the extent, they seek information regarding GEO facilities other than Adelanto.

> **F.** **Plaintiffs' Proposed Search Terms for RFP Nos. 10, 16, and 17 Are Appropriate.**

GEO argues that adding "@spartanchemical.com" to the already agreed upon search terms "HDQ" and "SPARTAN" is unnecessary because "the term 'Spartan' necessarily will capture all emails to/from Spartan." ECF No. 138, Opp'n at 5, n.9. However, according to Plaintiffs, adding "@spartanchemical.com" generates 75 unique hits. ECF No. 134, Mot. at 4. Regardless, even if GEO's argument is correct, adding "@spartanchemical.com" will impose no additional burden. Thus, the relevance of documents potentially generated by using "@spartanchemical.com" outweighs the additional burden, if any, imposed on GEO.

However, the Court finds Plaintiffs' proposed search string to be overbroad as written. Specifically, Plaintiffs' proposed search string reads as follows: "HDQ OR SPARTAN OR @spartanchemical.com[.]" ECF No. 134, Mot. at 4. This search string, as drafted, would hit on every document containing just the term "HDQ", which is far beyond the scope of RFP Nos. 10, 16, and 17. The Court assumes that the search string was intended to read: HDQ AND (SPARTAN OR @spartanchemical.com). This string is appropriately limited to the scope of RFP Nos. 10, 16, and 17 which cover communications between GEO and Spartan regarding HDQ Neutral.

Accordingly, the Court **GRANTS** Plaintiffs' Motion as to the inclusion of "@spartanchemical.com" in the search string to be used for RFP Nos. 10, 16, and 17 but orders

---

**CIVIL MINUTES—GENERAL**     Initials of Deputy Clerk DC

the search string to be rewritten as follows: "HDQ AND (SPARTAN OR @spartanchemical.com)[.]"

### G.    Plaintiffs' Proposed Search Terms for RFP Nos. 51 and 53 Are Appropriate.

For RFP Nos. 51 and 53, Plaintiffs propose using the following search string, in addition to the already agreed upon search term "HDQ": "quat OR quats OR quaternary OR ammonium OR QAC* OR "cleaning product*[.]"  ECF No. 134, Mot. at 4.  GEO argues that Plaintiffs' proposed search string "seek[s] information about GEO's use of other disinfectants at facilities beyond Adelanto and, therefore, [is] not tailored to the instant dispute."  ECF No. 138, Opp'n at 5.  However, because it narrowly targets a family of chemical disinfectants to which HDQ Neutral belongs, Plaintiffs' proposed search string is reasonable and relevant to RFP Nos. 51 and 53, which concern the same.  Further, GEO does not argue the burdensomeness of RFP Nos. 51 and 53 in particular, and therefore, fails to carry its "heavy burden" of opposing these requests. See Reece, 2014 WL 2565986, at *2 (citation and internal quotation marks omitted).

Accordingly, the Court **GRANTS** Plaintiffs' Motion as to the search string to be used for RFP Nos. 51 and 53.

### H.    Plaintiffs' Proposed Search String for RFP No. 18 is Appropriate.

GEO argues that adding "@epa.gov" to the already agreed upon search terms of "EPA OR 'ENVIRONMENTAL PROTECTION AGENCY'" is unnecessary because "EPA" will capture all communications between GEO and the EPA.  ECF No. 138, Opp'n at 5, n.9.  If GEO is correct and no new documents are identified by the addition of @epa.gov, then no burden is added by including the search term.  Thus, the relevance of documents potentially identified by using "@epa.gov" outweighs the additional burden, if any, imposed on GEO.

Accordingly, the Court **GRANTS** Plaintiffs' Motion as to including "@epa.gov" in the search string to be used for RFP No. 18.

### I.    Plaintiffs' Proposal Regarding RFP No. 13 Is Granted in Part and Denied in Part.

GEO apparently agrees to use Plaintiffs' proposed search string ("Homeland Security Committee" OR "Homeland Security Subcommittee" OR "Committee on Homeland Security") for RFP No. 13.  ECF No. 138, Opp'n at 5.  Thus, the Court **GRANTS** Plaintiff's Motion as to the inclusion of that search string for RFP No. 13.

As for the other two search strings in Plaintiffs' proposal for RFP No. 13 – (1) "House of Representatives" AND (testimon* OR testif* OR investig*); and (2) (testimon* OR testif* OR investigat* OR Congress* OR EPA) W/50 (Janecka OR Zoley OR covid OR (corona w/3 virus) OR coronavirus OR Adelanto OR California) – the Court agrees with GEO that these search strings "are not narrowly tailored."  ECF No. 138, Opp'n at 5.  The first search string, for example, would include any testimony or investigation, related to the House of Representatives, regarding anything, not limited to HDQ Neutral, QACs, cleaning sprays, or even COVID-19.

See ECF No. 134, Mot. at 5.  The second search string would capture any document referencing the EPA and California or any investigation into Adelanto.  Id.  Search strings producing those results are not narrowly tailored to the issues in this case.  And as GEO notes, these two search strings impose a significant burden which outweighs any relevance they may have.  See ECF No. 138, Opp'n at 5.  Thus, the Court finds such search strings improper.

Also at issue is GEO's exclusion of any documents containing the term "Covid Clinic" in their response to RFP No. 13.  ECF No. 134, Mot. at 6.  GEO offers no defense of this limitation.  Through RFP No. 13, Plaintiffs seek documents related to GEO's congressional testimony about its response to COVID-19.  See ECF No. 134-5 at 35.  Thus, a search limitation which excludes documents referencing COVID-related terms impermissibly narrows RFP No. 13.

Accordingly, the Court **GRANTS** Plaintiffs' Motion as to the removal of GEO's proposed search limitation of "Covid Clinic" on RFP No. 13.  However, the Court **DENIES** Plaintiffs' Motion as to the following two search strings proposed by Plaintiffs for RFP No. 13: (1) "House of Representatives" AND (testimon* OR testif* OR investig*); and (2) (testimon* OR testif* OR investigat* OR Congress* OR EPA) W/50 (Janecka OR Zoley OR covid OR (corona w/3 virus) OR coronavirus OR Adelanto OR California).

### J.        Plaintiffs' Proposed Search Strings for ROG No. 6 and RFP No. 9 Are Appropriate and GEO's Search Limitation Is Unreasonably Limiting.

Plaintiffs' proposal for ROG No. 6 and RFP No. 9 contains two parts: (1) "includ[e] additional terms that could be used to describe the responsive ailments . . . because the parties do not prospectively know how detained people described responsive ailments[]"; and (2) omit GEO's search limitation "NOT W/75 ("covid" OR "corona")" "which will exclude responsive, highly relevant complaints."  ECF No. 134, Mot. at 7.

First, it is likely, if not certain, that detainees will use several different words to describe "the body parts and medical conditions specified in [ROG] No. 6 and RFP No. 9[.]"  ECF No. 138, Opp'n at 9.  Thus, complete search strings must include several variations of the conditions and body parts specified in ROG No. 6 and RFP No. 9.  For example, GEO proposes the search string (nause* AND detaine*) but because detainees may not use the word "nausea" to describe that symptom, Plaintiffs propose the following search string: "(nause* OR vomit* OR "throw up") AND detaine*[.]"  ECF No. 134, Mot. at 7.  Plaintiffs' proposed additions, such as this one, are narrowly tailored to identify documents directly relevant to the medical conditions at issue in this case.  While Plaintiffs' proposal results in 29,118 identified documents, the Court finds that added burden to be outweighed by the relevance of the information sought, which goes directly to the heart of this case.  See ECF No. 138, Opp'n at 9.  Thus, Plaintiffs' proposed search strings are proper.

Second, GEO claims that its "NOT W/75 ("covid" OR "corona")" limitation is necessary because without such a limitation, there would be "an extreme number of false hits, as one would expect, regarding private medical information during the pandemic[.]"  ECF No. 138, Opp'n at 6.  The Court disagrees that such a limitation is necessary.  Some documents responsive to ROG No. 6 and RFP No. 9 will undoubtedly mention COVID or Corona given that the temporal scope

---

of these requests covers the height of COVID-19.  For example, Plaintiffs cite to one complaint document that states, "Detainee alleges the spraying of disinfectant we are using during the Covid-19 is harmful. It is causing him to have a nose bleed and his lungs hurt."  ECF No. 134, Mot. at 7.  Any search limitation that would exclude such an obviously responsive document narrows the discovery requests too much.  Thus, the Court finds GEO's proposed search limitation to be improper.

Accordingly, the Court **GRANTS** Plaintiffs' Motion as to the use of its proposed search strings for ROG No. 6 and RFP No. 9, including the omission of GEO's proposed search limitation "NOT W/75 ("covid" OR "corona")" from those search strings.

### IV.    CONCLUSION

For the reasons set forth above, Plaintiffs' Motion is **GRANTED IN PART AND DENIED IN PART**.  Specifically, the Court **GRANTS** Plaintiffs' Motion as to Plaintiffs' proposed custodians and search terms for ROG No. 11 and RFP Nos. 3, 21, 23, 44, and 45, RFP Nos. 14 and 52 (but not to the five search strings as applied to GEO facilities other than Adelanto), RFP Nos. 10, 16, and 17, RFP Nos. 51 and 53, RFP No. 18, and RFP No. 13 (as to the first search string only).  The Court **DENIES** Plaintiffs' Motion as to Plaintiffs' five proposed search strings for RFP Nos. 14 and 52 insofar as they apply to GEO facilities other than Adelanto, and the second and third search strings in Plaintiffs' proposal for RFP No. 13.  The Court also **OVERRULES** GEO's geographic scope and privacy objections to all discovery requests and considers **WAIVED** any other of GEO's objections not raised in its Opposition.

**IT IS SO ORDERED.**