SOCIAL JUSTICE LEGAL FOUNDATION
Sara Haji (SBN 330834)
shaji@socialjusticelaw.org
Hannah Comstock (SBN 311680)
hcomstock@socialjusticelaw.org
Ashley Artmann (SBN 319374)
aartmann@socialjusticelaw.org
523 West 6th Street, Suite 450
Los Angeles, California 90014
Telephone: (213) 542-5241

HUESTON HENNIGAN LLP
John C. Hueston (SBN 164921)
jhueston@hueston.com
Robert N. Klieger (SBN 192962)
rklieger@hueston.com
Emily Michael Munson (SBN 338433)
emunson@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:   (213) 788-4340

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIGAYA RONDUEN, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> THE GEO GROUP, INC., a Florida corporation, and SPARTAN CHEMICAL COMPANY, INC., an Ohio corporation, <br><br> Defendants. <br><br> ───────────────── <br><br> THE GEO GROUP, INC., a Florida corporation, <br><br> Third-Party Plaintiff, <br><br> vs. <br><br> SPARTAN CHEMICAL COMPANY, INC. and ROES 1-10, <br><br> Third-Party Defendants. | Case No. 23-cv-00481-JGB (SHK) <br><br> [CLASS ACTION] <br><br> **NOTICE OF LODGING OF [PROPOSED] FINAL PRETRIAL CONFERENCE ORDER** <br><br> Complaint Filed: March 20, 2023 <br> FAC Filed:        January 6, 2025 <br> Trial Date:        January 20, 2026 |

---

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

Plaintiffs Ligaya Ronduen, et al. ("Plaintiffs"), Defendant The GEO Group, Inc. ("GEO") and Defendant Spartan Chemical Company ("Spartan") jointly submit this Proposed Final Pretrial Conference Order pursuant to Federal Rule of Civil Procedure 16, C.D. Cal. Local Rule 16-7, Appendix A to the Local Rules, and Your Honor's Procedures.  A clean version of the below is also attached and lodged as **Exhibit A** and a word copy will be transmitted to Your Honor's chambers.

***

Following pretrial proceedings, pursuant to Fed. R. Civ. P. 16 and L.R. 16, **IT IS ORDERED**:

## NATURE OF THE ACTION

1.      The parties are: Plaintiffs Ligaya Ronduen, Carlos Castillo, Miriam Jeannette Scheetz, Wilfredo Gonzalez Mena, Somboon Phaymany, Yolanda Mendoza (collectively, "Plaintiffs"); Defendant and Third-Party Plaintiff The GEO Group, Inc. ("GEO"); and Defendant and Third-Party Defendant Spartan Chemical Company, Inc. ("Spartan").

        a)      Each of these parties has been served and has appeared.  There were no other parties named in the pleadings.

        b)      The pleadings that raise the issues are: ECF 35 (GEO's Third-Party Complaint); ECF 48 (Spartan's Answer to GEO's Third-Party Complaint); ECF 152 (First Amended Complaint); ECF 176 (GEO's Answer to First Amended Complaint); ECF 179 (Spartan's Answer to First Amended Complaint).

2.      Federal jurisdiction is invoked upon the ground of diversity jurisdiction because the parties are diverse (Plaintiffs are citizens of California; GEO is a Florida corporation; Spartan is an Ohio corporation), and the amount in controversy exceeds $75,000 (28 U.S.C. § 1332).  Venue is proper because a substantial portion of the alleged events or omissions giving rise to this action occurred in this District (*see* 28 U.S.C. § 1391(b)(2)); and, in any event, any challenges to venue have now been

- 1 -
[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

waived (*see Costlow v. Weeks*, 790 F.2d 1486, 1488 (9th Cir. 1986) ("A defendant must object to venue by motion or in his answer to the complaint or else his objection is waived."); *Concession Consultants, Inc. v. Mirisch*, 355 F.2d 369, 371 (2d Cir. 1966) (district court cannot *sua sponte* challenge venue where the parties have already waived challenges to venue))

      a)    Plaintiffs contend that no party is challenging subject matter jurisdiction or venue and that any pre-trial challenge to venue under the PREP Act is untimely pleaded. It is Spartan's position that venue is improper in this district, as the PREP Act grants exclusive jurisdiction over claims related to covered countermeasures to the U.S. District Court for the District of Columbia, a challenge it maintains is jurisdictional and not subject to waiver. Both Spartan and GEO have filed motions for summary judgment based on PREP Act immunity.

3.    Plaintiffs estimate the trial will take 12 trial days. It is Spartan's position that a single, consolidated trial on the merits trial will require 25 trial days, due to the extensive number of witnesses, exhibits and expert testimony needed.

      a)    The trial will be timed. Plaintiffs propose 30 hours for Plaintiffs and 30 hours for Defendants, including opening statements and presentation of evidence, but not including time for closing argument. Plaintiffs have asserted, and will have to prove, six claims against GEO and four claims against Spartan in that time. Defendants should have an equal amount of time to defend those ten claims as Plaintiff has to prove them.

      b)    Defendants propose, for a non-bifurcated trial, 30 hours for Plaintiff, 30 hours for GEO and 30 hours for Spartan. The issues in this case are not the same for all parties and lumping defendants together will prejudice their ability to defend the

respective claims against them, as GEO has separate claims against Spartan and Plainitffs have separate claims against each Defendant.  This requires, for other than damages, separate witnesses and experts.

4.    The trial is to be a jury trial on non-equitable claims and issues to which either party has a right to a jury. Spartan does not concede that trial will proceed as a single, consolidated trial on the merits; it maintains that its pending Motion to Bifurcate (ECF 401) should be granted and that a phased trial structure is necessary to promote convenience, avoid prejudice, and economize the proceedings. GEO has proposed that any punitive phase be bifurcated.  For all such non-equitable claims and issues, the parties have filed and served:

a)    Proposed jury instructions (ECF 475 (Plaintiffs' and Spartan's agreed-upon); ECF 476 (Plaintiffs' and Spartan's disputed));

b)    Proposed jury verdict forms (ECF 472 (Plaintiffs' proposed verdict form); ECF __ (GEO's proposed verdict form); ECF __ (Spartan's proposed verdict form)); and

c)    Questions requested to be asked on voir dire (ECF 473 (Plaintiffs' proposal)).

5.    The following facts are admitted by the Parties and require no proof:

a)    The Adelanto ICE Processing Center is located in Adelanto, California.

b)    The GEO Group, Inc. has managed and operated the Adelanto ICE Processing Center from 2011 to the present.

c)    The GEO Group, Inc.'s headquarters are located in Florida.

d)    Spartan Chemical Company, Inc.'s headquarters are located in Ohio.

e)    Spartan Chemical Company, Inc. manufactured HDQ Neutral in 2020.

- 3 -
[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

## CLAIMS AND DEFENSES

6.   This section identifies the asserted claims and defenses in this case.  In accordance with Fed. R. Civ. P. 16(c), parties will be precluded from presenting claims or defenses not set forth in this order, in the manner required by this order, unless the order is modified to prevent manifest injustice.

7.   Plaintiffs plan to pursue the following claims: (a) negligence; (b); battery; (c) premises liability; (d) concealment; (e) intentional misrepresentation; (f) negligent misrepresentation; (g) design defect—strict liability; (h) failure to warn—strict liability; and (i) failure to warn—negligence.  The elements required to establish Plaintiffs claims are:

(a)   Negligence (alleged against GEO)

(1)   Whether GEO owed Plaintiffs a duty to use reasonable care to prevent Plaintiffs from being injured by the foreseeable risks associated with the misuse of HDQ Neutral;

(2)   Whether GEO was negligent when it failed to act as a reasonably careful corporation would in the same situation;

(3)   Whether GEO's negligence was a substantial factor in causing Plaintiffs' harm; and

(4)   Whether Plaintiffs suffered actual damages.

Negligence (alleged against Spartan)

(1)   Whether Spartan, as the manufacturer and supplier of HDQ Neutral, owed a duty of care to Plaintiffs, as the known end users of its product, to prevent the foreseeable harms associated with the misuse and overconcentration of HDQ Neutral;

(2)   Whether Spartan was negligent when it failed to act as a reasonably careful manufacturer and supplier would in the same situation;

- 4 -
[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

(3) Whether Spartan's negligence was a substantial factor in causing Plaintiffs' harm; and

(4) Plaintiffs suffered actual damages.

(b) Battery

(1) Whether GEO caused Plaintiffs to be touched with the intent to harm Plaintiffs;

(2) Whether Plaintiffs did not consent to the touching;

(3) Whether Plaintiffs were harmed by GEO's conduct.

(c) Premises Liability

(1) Whether GEO owned, leased, occupied, or controlled Adelanto and owed a special duty to use reasonable care to discover any unsafe conditions and to repair, replace, or give adequate warning of anything that could be reasonably expected to harm Plaintiffs;

(2) Whether GEO was negligent in the maintenance of Adelanto because it knew or should have known about the unreasonable risk of harm associated with the misuse of HDQ Neutral and it failed to correct its spray policies, protect against harm, or give Plaintiffs adequate warning about HDQ Neutral;

(3) Whether GEO's negligence was a substantial factor in causing Plaintiffs' harm; and

(4) Whether Plaintiffs suffered actual damages.

(d) Concealment

(1) Whether GEO was responsible for the custody, care and well-being of Plaintiffs;

(2) Whether GEO intentionally failed to disclose certain facts to Plaintiffs;

(3)   Whether Plaintiffs did not know of the concealed facts;

(4)   Whether GEO intended to deceive Plaintiffs by intentionally concealing the facts;

(5)   Whether Plaintiffs reasonably would have behaved differently, had the omitted information been disclosed;

(6)   Whether Plaintiffs were harmed; and

(7)   Whether GEO's concealment was a substantial factor in causing Plaintiffs' harm.

(e)   Intentional Misrepresentation

(1)   Whether GEO represented to Plaintiffs that a fact was true;

(2)   Whether GEO's representation was false;

(3)   Whether GEO knew that the representation was false when it made it, or GEO made the representation recklessly and without regard for its truth;

(4)   Whether GEO intended that Plaintiffs rely on the representation;

(5)   Whether Plaintiffs reasonably relied on the representation;

(6)   Whether Plaintiffs were harmed; and

(7)   Whether Plaintiffs' reliance on GEO's representation was a substantial factor in causing their harm.

(f)   Negligent Misrepresentation

(1)   Whether GEO represented to Plaintiffs that a fact was true;

(2)   Whether GEO's representation was not true;

(3)   Whether GEO had no reasonable grounds for believing the representation was true when GEO made it, even though it may have honestly believed that the representation was true;

(4)   Whether GEO intended that Plaintiffs rely on its

- 6 -

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

representation;

    (5)    Whether Plaintiffs reasonably relied on GEO's representation;

    (6)    Whether Plaintiffs were harmed; and

    (7)    Whether Plaintiffs' reliance on GEO's representation was a substantial factor in causing their harm.

(g)    Design Defect - Strict Liability (Plaintiffs' position)

    (1)    Whether Spartan manufactured, sold, or distributed the HDQ Neutral dispensing system used at Adelanto;

    (2)    Whether Plaintiffs were harmed; and

    (3)    Whether the design of the HDQ Neutral dispensing system to include a nozzle that dispensed an overconcentration of HDQ Neutral was a substantial factor in causing harm to Plaintiffs.

    (4)    If the above elements are true, then Spartan is strictly liable for defectively designing unless it proves that the benefits of the design of the system outweigh the risks of design, in light of the following factors:

        a. The gravity of the potential harm resulting from the use of the HDQ Neutral dispensing system with the provided nozzle;

        b. The likelihood that this harm would occur;

        c. The feasibility of using an alternative safer design at the time;

        d. The cost of an alternative design; and

        e. The disadvantages of an alternative design.

(h)    Design Defect – Strict Liability (Spartan's position)

    (1)    Whether Spartan manufactured, sold, or distributed the

HDQ Neutral dispensing system used at Adelanto;

(2)    Whether Plaintiffs were harmed;

(3)    Whether Plaintiffs' harm occurred while the dispensing system was being used in an intended or reasonably foreseeable manner[1];

(4)    Whether the dispensing system's design was a substantial factor in causing Plaintiffs' harm.

(5)    If the above elements are true, then Spartan is strictly liable for defectively designing unless it proves that the benefits of the design of the system outweigh the risks of design, in light of the following factors:

1. The gravity of the potential harm resulting from the use of the dispensing system;

2. The likelihood that this harm would occur;

3. The feasibility of an alternative safer design at the time of manufacture;

4. The cost of an alternative design; and

5. The disadvantages of an alternative design.

(i)    Failure to Warn—Strict Liability (Plaintiffs' position)

(1)    Whether Spartan manufactured, sold, or distributed HDQ Neutral;

(2)    Whether HDQ Neutral had potential risks and side effects that were known or knowable in light of the scientific or medical knowledge that was generally accepted at the time

---

[1] Spartan will seek an instruction consistent with the Sources and Authority/Directions for Use for CACI 1200, 1204 indicating: "To make a prima facie case under strict liability for design defect, each plaintiff must produce evidence that the injury occurred while the product was being used in an intended or reasonably foreseeable manner." (Sources for Use, CACI 1200; Directions for Use, CACI 1204 citing *Soule v. GM Corp.* (1994) 8 Cal.4th 548, 560.

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

of manufacture, distribution, or sale;

(3)    Whether the potential risks and side effects presented a substantial danger when HDQ Neutral is used or misused in an intended or reasonably foreseeable way;

(4)    Whether ordinary detained individuals similarly situated to Plaintiffs would not have known how to safely use HDQ Neutral or recognized the potential risks and side effects of HDQ Neutral;

(5)    Whether Spartan failed to adequately warn or instruct Plaintiffs of the safe use, potential risks, and side effects;

(6)    Whether Plaintiffs were harmed while using HDQ Neutral in a reasonably foreseeable way; and

(7)    Whether the lack of sufficient instructions or warnings was a substantial factor in causing Plaintiffs' harm.

(j)    Failure to Warn – Strict Liability (Spartan's position)

(1)    Whether Spartan manufactured, sold, or distributed HDQ Neutral;

(2)    Whether HDQ Neutral had potential risks and side effects that were known or knowable in light of the scientific and medical knowledge that was generally accepted in the scientific community at the time of manufacture, distribution, or sale;

(3)    Whether the potential risks and side effects presented a substantial danger when HDQ Neutral is used or misused in an intended or reasonably foreseeable way;

(4)    Whether ordinary consumers would not have recognized the potential risks and side effects of HDQ Neutral;

(5)    Whether Spartan failed to adequately warn of the potential

- 9 -
[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

risks and side effects;

 (6) Whether Plaintiffs were harmed while using HDQ Neutral in a reasonably foreseeable way; and

 (7) Whether the lack of sufficient warnings was a substantial factor in causing Plaintiffs' harm.

(k) Failure to Warn—Negligence (Plaintiffs' position)

 (1) Whether Spartan manufactured, distributed, or sold HDQ Neutral;

 (2) Whether Spartan knew or reasonably should have known that HDQ Neutral was dangerous or was likely to be dangerous when used or misused in a reasonably foreseeable manner;

 (3) Whether Spartan knew or reasonably should have known that users would not realize the danger;

 (4) Whether Spartan failed to adequately warn of the danger or instruct on the safe use of HDQ Neutral;

 (5) Whether a reasonable manufacturer, distributor, or seller under the same or similar circumstances would have warned of the danger or instructed on the safe use of HDQ Neutral;

 (6) Whether Plaintiffs were harmed; and

 (7) Whether Spartan's failure to warn or instruct was a substantial factor in causing Plaintiffs' harm.

(l) Failure to Warn – Negligence (Spartan's position)

 (1) Whether Spartan manufactured, distributed, or sold HDQ Neutral;

 (2) Whether Spartan knew or reasonably should have known that HDQ Neutral was dangerous or was likely to be

dangerous when used or misused in a reasonably foreseeable manner;

    (3)    Whether Spartan knew or reasonably should have known that users would not realize the danger;

    (4)    Whether Spartan failed to adequately warn of the danger;

    (5)    Whether a reasonable manufacturer, distributor, or seller under the same or similar circumstances would have warned of the danger;

    (6)    Whether Plaintiffs were harmed; and

    (7)    Whether Spartan's failure to warn was a substantial factor in causing Plaintiffs' harm.

8.    The following affirmative defenses are asserted by Spartan. The elements required to establish these affirmative defenses are:

    (a)    Statute of Limitations (Asserted by Spartan)

        (1)    That Plaintiffs' claimed harm occurred before January 6, 2023; and

        (2)    If Spartan proves that Plaintiffs' claimed harm occurred before January 6, 2023, Plaintiffs' lawsuit was still filed on time if Plaintiffs prove that before that date, Plaintiffs did not discover, and did not know of facts that would have caused a reasonable person to suspect that they had suffered harm that was caused by someone's wrongful conduct.

        (3)    Plaintiffs' position: The trigger date for Plaintiffs' claims against Spartan is November 4, 2022—two years before Plaintiffs moved to amend their Complaint to add claims against Spartan.  The inquiry, under CACI 455, is whether before that date Plaintiffs did not discover, and a

reasonable and diligent investigation would not have disclosed, that Spartan's misconduct contributed to Plaintiffs' harm.

(4) Spartan's position: The two-year statute of limitations is measured from the date the First Amended Complaint naming Spartan as a defendant was filed on January 6, 2025, not the date Plaintiffs moved for leave to amend. Therefore, the critical date for the statute of limitations is January 6, 2023. This is based on CACI 454, 455, and specifically CACI Verdict Form VF-410, which states, "The date to be inserted throughout is the applicable limitation period before the filing date. For example, if the limitation period is two years and the filing date is August 31, 2007, the date is August 31, 2005." The calculation is not based on the date a motion to amend is filed.

(d) Spartan's PREP Act Immunity Defense (Subject to Pending Motion to Amend)[2]

(1) That Spartan is a "covered person" under the PREP Act as a manufacturer and distributor of a covered countermeasure;

(2) That HDQ Neutral is a "covered countermeasure" under the PREP Act because, as an EPA-registered disinfectant on List N used to mitigate COVID-19, it qualifies as an "antiviral" under the HHS Secretary's Declaration;

(3) That Plaintiffs' claims against Spartan were "caused by, arising out of, relating to, or resulting from" the

---

[2] Plaintiffs continue to oppose GEO's and Spartan's motions for leave to amend their pleadings to add a PREP Act defense as untimely and prejudicial. (*See* ECF 334.)

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

administration or use of HDQ Neutral.

(e)  Spartan's Affirmative Defense - Superseding Cause

(1)  A third party's conduct occurred after Spartan's conduct;

(2)  A reasonable person would consider the third party's conduct as a highly unusual or an extraordinary response to the situation;

(3)  Spartan did not know and had no reason to expect that the third party would act in a negligent or wrongful manner; and

(4)  The kind of harm resulting from the third party's conduct was different from the kind of harm that could have been reasonably expected from Spartan's conduct.

(f)  Spartan's Affirmative Defense - Apportionment of Responsibility/Proposition 51

(1)  One or more parties, including Defendants, or non-parties, were negligent or at fault; and

(2)  The negligence or fault of each such person or entity was a substantial factor in causing Plaintiffs' non-economic injuries.

(g)  Spartan's Affirmative Defense - Product Misuse

(1)  The HDQ Neutral and/or its dispensing system was misused or modified after it left Spartan's possession; and

(2)  The misuse or modification was so highly extraordinary that it was not reasonably foreseeable to Spartan, and therefore should be considered as the sole cause of Plaintiffs' harm.

(h)  Spartan's Affirmative Defense - Sophisticated Intermediary

(1)  Spartan provided adequate warnings to GEO, the

- 13 -

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

intermediary, and reasonably relied on GEO to convey the warnings to end-users; or

    (2)    GEO, the intermediary, knew or should have known of the specific dangers of the product and was therefore in a position to warn end-users.

    (i)    Spartan's Affirmative Defense - FIFRA Preemption

        (1)    Plaintiffs' state law claim is a requirement "for labeling or packaging"; and

        (2)    The state law requirement is "in addition to or different from" those required under FIFRA. 7 U.S.C. § 136v(b).

9.    The following affirmative defenses are asserted by GEO. The elements required to establish these affirmative defenses are:

    (a)    Statute of Limitations (Asserted by GEO)

        (1)    That Plaintiffs' claimed harm occurred before March 21, 2021: and

        (2)    Plaintiffs contend that if GEO proves that Plaintiffs' claimed harm occurred before March 21, 2021, Plaintiffs' lawsuit was still filed on time if Plaintiffs prove that before that date, Plaintiffs did not discover, and did not know of facts that would have caused a reasonable person to suspect that they had suffered harm that was caused by someone's wrongful conduct.

    (b) Necessity

        (1)    GEO claims that it is not responsible for any Plaintiff's harm, if any, because its conduct with respect to the use of HDQ was necessary, or reasonably appeared to GEO to be necessary, to use HDQ Neutral in the manner that it did to prevent serious harm to a person.

- 14 -
[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

(c) State of Emergency

(1)    There was a sudden and unexpected emergency in which someone was in actual or apparent danger of immediate injury;

(2)    That GEO did not cause the emergency;

(3)    That GEO acted as a reasonably careful person would have acted in similar circumstances, even if it appears later that a different course of action would have been safer .

10.    GEO plans to pursue the following claims against Spartan: breach of contract, equitable indemnity/contribution and implied indemnity.  The elements required to establish these claims are:

(a)    Breach of Contract

(1)    Whether GEO and Spartan entered into a contract;

(2)    Whether GEO did all or substantially all of the significant things that the contract required it to do;

(3)    Whether all conditions required for Spartan performance had occurred;

(4)    Whether Spartan failed to do something that the contract required it to do; and

(5)    Whether GEO was harmed by Spartan's breach of contract; and

(6)    Whether Spartan's breach of contract was a substantial factor in causing GEO's harm.

(b)    Equitable Indemnity/Contribution

(1)    That Spartan was negligent as it related to the provision of and, installation of servicing of the dispensers of HDQ Neutral;

(2)    That Spartan's negligence contributed as a substantial

- 15 -

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

factor in causing any Plaintiff's harm;

(c) Implied Indemnity

 (1) That Spartan failed to use reasonable care in performing the services detailed in the contract Spartan and GEO;

 (2) That Spartan's conduct was a substantial factor in causing any Plaintiff's harm;

11. Plaintiffs object to GEO's piecemeal trial of only three of its five claims against Spartan. On July 20, 2023, GEO asserted five claims against Spartan: breach of contract, negligence, implied indemnity, equitable indemnity, and contribution. ECF No. 35. No notice of settlement or dismissal has been filed, and GEO has given no indication that it is abandoning its claims. Those claims must therefore be tried as part of this case unless GEO has abandoned them. GEO's position is that the negligence claim is subsumed by the equitable indemnity and contribution claims, which require a showing of negligence to prevail.

12. Spartan plans to pursue the following affirmative defenses against GEO. The elements required to establish these affirmative defenses are:

(a) Waiver

 (1) Whether GEO knew Spartan was required to provide training and other support under the contract; and

 (2) Whether GEO freely and knowingly gave up its right to have Spartan perform these obligations.

(b) Novation

 (1) Whether GEO and Spartan agreed, by words or conduct, to cancel the original contract and to substitute a new contract in its place.

(c) Substantial Performance

 (1) Whether Spartan made a good faith effort to comply with the contract; and

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

(2) Whether any defects or omissions in Spartan's performance were so minor or trivial that they did not substantially affect the benefit that GEO reasonably expected to receive under the contract.

(d) Mitigation of Damages

(1) Whether Spartan can prove GEO could have avoided harm with reasonable efforts or expenditures.

(e) Defenses to Equitable Indemnity/Contribution/Implied Indemnity

(1) That Spartan's conduct was not active, but at most passive, such that it cannot be liable for indemnity.

(2) That GEO's claims for indemnity are barred or reduced by its own negligence, willful misconduct, and/or other culpable conduct.

13. In view of the admitted facts and the elements required to establish the claims and affirmative defenses, the legal elements listed in paragraphs 7, 8, and 9 remain to be tried.

14. Plaintiffs listed examples of categories of evidence they intend to use in support of their claims and defenses in their Memorandum of Contentions of Law and Fact, filed on December 1, 2025. (*See* ECF 442 (Plaintiffs' Contentions).)

15. All discovery is complete.

16. All disclosures under Fed. R. Civ. P. 26(a)(3) have been made.

17. The parties and their attorneys participated in a mediation on November 12, 2025, with Judge Shashi Kewalramani (Retired). The parties did not reach a settlement and do not believe a settlement is possible at this time.

**EXHIBIT LIST**

18. The joint exhibit list of the Parties has been filed under separate cover as required by L.R. 16-6.1. (*See* ECF 443.) The Parties intend to file an amended exhibit list in advance of the Final Pre-Trial Conference.

(a)   Plaintiffs' exhibits begin at X-1.  GEO's exhibits begin at X-10001.  Spartan's exhibits begin at X-1.  A party's inclusion of an exhibit as a joint exhibit or on their section of the exhibit list in no way waives any objection to the other party's introduction of such exhibit.

(b)   Counsel shall meet no later than 10 calendar days before trial to stipulate to the extent possible to foundation, waiver of the best evidence rule, and which exhibits may be received into evidence at the start of trial. The exhibits to be received will be noted on the extra copies of the exhibit lists.

(c)   Daily Exhibit Disclosure and Rulings. To streamline trial and avoid jury downtime: by 7:00 p.m. each trial day, each party will email the other parties with a list of the exhibits it reasonably anticipates using the next trial day for direct examination. Objections will be exchanged by 10:00 p.m. with short bases, or the parties will hold a telephonic meet and confer to try to address objections. This procedure does not apply to exhibits used on cross-examination. To the extent possible, the parties will ask the Court to resolve disputes before the jury is brought in or at the next break. Otherwise, exhibits will be presented during trial testimony and objections preserved.  Exhibits admitted on this process may then be used with any competent witness, subject to the Court's ruling.

(d)   Preservation of Objections. Objections listed in the parties' joint exhibit list are preserved. Failure to object to authenticity or foundation under the above stipulation does not waive objections under FRE 402, 403, 404, 801–805, or other applicable rules.

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

Objections not raised by the deadlines may be deemed waived except for FRE 402/403 good-cause exceptions.

**WITNESS LIST AND TESTIMONY**

15.     Plaintiffs' witness list was filed by the December 1 deadline in the Court's pre-trial order (ECF 333, ECF 410).  Defendants timely exchanged its witness list with Plaintiffs on the agreed mutual exchange date of November 10, 2025 (ECF 405-15) and will file their final witness lists by December 12, 2025.  All parties reserve all objections to any party's witness list.

a)     Only the witnesses identified in the filed witness lists will be permitted to testify (other than solely for authentication, foundation, impeachment, or rebuttal upon reasonable notice to the opposing party).[3]  No party shall be required to present testimony from any witness on its list of witnesses.

b)     Should a party call a witness on the other party's witness list as part of their case in chief, the other party may examine that witness beyond the scope of the direct examination so as not to re-call the witness multiple times at trial.

c)     Each party shall provide a preliminary list of witnesses expected to be called on a given trial day by 7:00 p.m. PT two calendar days prior.

d)     The parties will disclose the order in which they intend to call live witnesses by 7:00 pm PT the night before the witness will be called.  This will allow both sides to make their witnesses

---

[3] Plaintiffs object to Sonia Botello, Donald Dutcher, and Kevin Reveteriano on GEO's witness list, as well as certain non-retained experts who were de-designated: Maribel Placensio; Bessie Rosana Blanco; Rachel V. Riley; Tamer Fathy; Pamela Bryant; Dr. Micheline Ghurabi; Dr. Patel Mukeschandra; Dr. Mark Huang; and Dr. Shel.  Plaintiffs object to Pete Schendrick and the same former non-retained experts on Spartan's witness list.  GEO objects to Mark Ferretiz, as detailed in Motion in Limine No. 4.

- 19 -
[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

available and avoid the scheduling problems (and attendant wasted time for the jury and Court) that inevitably arise when witnesses and counsel do not know the order of the trial proceedings.

16.    Each party intending to present evidence by way of deposition testimony will mark such depositions in accordance with L.R. 16-2.7.  For this purpose, the depositions listed in the Parties' witness lists—along with designations, counter-designations, and all related objections—will be lodged with the Clerk by the time and in the format required by L.R. 32-1.  The parties reserve their rights to submit designations for any witness that a party indicates it will call live but who does not appear or is withdrawn as a live witness.

a)    The Parties may offer some or all of the designated deposition testimony set forth in the attachments hereto at trial, subject to objections to admissibility and any other objections.  A party's decision not to introduce some or all of the deposition testimony of a witness designated herein shall not be commented upon at trial.

b)    A party intending to offer a witness by deposition shall provide the other party with a list of final deposition designations (from the previously designated testimony, including counter-designations) it intends to introduce by 7:00 p.m. PT two calendar days before the deposition testimony is expected to be read or played in Court.  The Parties will meet and confer on any objections by 10:00 p.m. PT the same day.

c)    Disputed designations shall be submitted to the Court by the party offering the testimony by 8:00 a.m. PT on the day before such deposition testimony is expected to be read or played in Court, except disputed designations expected to be read or played in

- 20 -
[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

Court on the first day of trial shall be submitted that day. The submissions of disputed designations to the Court shall include highlighted copies of the disputed materials and an itemized list of the remaining objections.

d) The party offering the deposition testimony will provide a final video to be played, if applicable, by 10:00 p.m. the night before it is expected to be played in Court. Regardless of whether deposition testimony is read or played by video, the time available for each party's trial presentation shall be reduced by the length of its own designations, counter-designations, and rebuttal designations.

e) The Parties will meet and confer to remove irrelevant and redundant material such as objections and colloquy between counsel when the deposition is read or viewed at trial to the extent feasible.

f) Any party may use as a counter designation deposition testimony that was previously designated by another party (subject to any objection of the designating party), to the same effect as if it had initially designated the testimony as its own.

g) Prior to playing any deposition testimony, the party offering the testimony shall provide the court reporter with an excerpt of the relevant transcript with the relevant designations highlighted.

h) Any deposition testimony may be used at trial for the purpose of impeachment, regardless of whether a party identified that testimony on its list of deposition designations, if the testimony is otherwise competent for such purpose.

i) In order to reduce the number of duplicative exhibits, where a deposition excerpt refers to a document by exhibit number and

- 21 -
[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

that identical document, including any redactions, was also marked as a different exhibit number, a party may substitute one exhibit for another.

## DEMONSTRATIVES

17. The Parties have agreed to a procedure with respect to demonstrative exhibits that does not require demonstrative exhibits to be included on the trial exhibit lists.

    a)    Demonstratives are to be used for illustrative purposes only and will not be entered into evidence. Following the conclusion of trial, demonstratives shown to the jury may be lodged with the Court. The Parties do not waive any objection to the admissibility of evidence cited or referenced in any demonstrative exhibit.

    b)    For purposes of disclosure of demonstratives to be used during direct examination to the other party, a party shall provide by 7:00 p.m. PT the day before the party intends to use the demonstrative either: (1) a color PDF or PowerPoint copy of the demonstrative exhibit it is intending to use; or (2) for videos or animations, a digital interactive format, including, as applicable, flash format, PPT format, MPEG or other video format, of demonstrative video or animation it is intending to use. Further, to the extent necessary, the Parties will confer to the extent they are unable to provide a demonstrative in the specified format. For irregularly sized physical demonstrative exhibits, the party seeking to use it shall provide a color representation in 8.5" x 11" PDF format.

    c)    For each demonstrative exhibit that is based in whole or in part on an admissible trial exhibit, the party intending to use the

- 22 -
[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

demonstrative exhibit will disclose, either on the face of the demonstrative exhibit or in an accompanying writing provided at the time the demonstrative exhibit is disclosed to the opposing party, all trial exhibits that form the basis of the demonstrative exhibit.

d) The provisions regarding the exchange of demonstrative exhibits do not apply to demonstrative exhibits created during testimony, demonstrative exhibits to be used for cross examination, or demonstrative exhibits to be used in closing statements, none of which need to be provided to the other side in advance of their use. The Parties further agree that notice of a party's intended use of enlargements of trial exhibits and/or deposition testimony and of ballooning, excerption, highlighting, jumping-to-a-page, or other emphasis of the particular trial exhibit and/or deposition testimony, need not be provided to the other side in advance of their use, subject to the Parties' evidentiary objections and compliance with the provisions of this Pretrial Order governing the use of trial exhibits and/or deposition testimony.

## ORDER OF PRESENTATION OF EVIDENCE

18. Unless the Court specifies otherwise, the order of presentation of evidence will generally follow the burden of proof, as stated below:

(a) Opening statements (Plaintiffs' opening statement first, followed by GEO's opening statement, and then by Spartan's opening statement);

(b) Plaintiffs' presentation of evidence for issues for which Plaintiffs bear the burden of proof (Plaintiffs' case-in-chief);

(c) GEO's presentation of evidence rebutting Plaintiffs' presentation of evidence in support of GEO's case-in-chief (GEO's rebuttal),

and GEO's presentation of evidence for issues for which GEO bears the burden of proof, including affirmative defenses or its claims against Spartan (GEO's case-in-chief);

(d)   Spartan's presentation of evidence rebutting Plaintiffs' presentation of evidence in support of Spartan's case-in-chief (Spartan's rebuttal), and Spartan's presentation of evidence for issues for which Spartan bears the burden of proof (Spartan's case-in-chief);

(e)   Plaintiffs' presentation of evidence rebutting Defendants' presentation of evidence in support of Defendants' cases-in-chief (Plaintiffs' rebuttal); and

(f)   Closing arguments (Plaintiffs first, followed by GEO, then by Spartan, then GEO's rebuttal to its claims against Spartan, and ending with Plaintiffs' rebuttal).

GEO's Alternative Order of Presentation If GEO's Motion to Bifurcate Punitive Damages is Granted:  The trial will recommence regarding the amount of the punitive damages, as follows.  This assumes the jury has rendered its verdict in Plaintiffs favor and that it finds that punitive damages were proper:

(a)   Opening statements (Plaintiffs' opening statement first, followed by GEO's opening statement);

(b)   Plaintiffs' presentation of evidence for issues for which Plaintiffs bear the burden of proof (Plaintiffs' case-in-chief);

(c)   GEO's presentation of evidence rebutting Plaintiffs' presentation of evidence in support of GEO's case-in-chief (GEO's rebuttal);

(d)   Plaintiffs' presentation of evidence rebutting Defendants' presentation of evidence in support of Defendants' cases-in-chief (Plaintiffs' rebuttal); and

- 24 -

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

> (e)    Closing arguments (Plaintiffs first, followed by GEO and ending with Plaintiffs' rebuttal).

Spartan's Alternative Order of Presentation If Spartan's Motion to Bifurcate is Granted (ECF 401):

a) **Phase One:** A threshold, limited-scope jury trial on the statute of limitations and related accrual issues for each named plaintiff. This shorter trial will be confined solely to SOL issues (when each plaintiff's complaint was filed, when their claimed harm occurred, and when they knew or should have known their harm was caused by alleged wrongdoing). The trial will include delayed discovery with plaintiff testimony limited to these issues.

b) **Phase Two:** If any plaintiff's claims survive Phase One, a classwide trial of the certified Rule 23(c)(4) general-causation issue, confined to the question certified by the Court "what, if any, symptoms can result from exposure to specific levels of HDQ Neutral"—which is separable from specific causation, exposure histories, fault standards, reliance, or damages.

c) **Phase Three:** If necessary, separate trials under Rule 42(b) for each surviving named plaintiff on individual liability issues (including negligence, product defect, and failure-to-warn), specific causation, compensatory damages, and GEO's breach of contract claim against Spartan.

d) **Phase Four:** If applicable for any plaintiff, a separate punitive-damages phase following any liability and compensatory damages determination.

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

## PENDING MOTIONS AND DISPUTES

19.    The following law and motion matters and motions in limine, and no others, are pending or contemplated:

a)    Plaintiffs' Motion for Order for Plaintiffs' Motion to Approve Class Notice Plan and Form of Notice (ECF 369);

b)    Plaintiffs' Motion to Exclude Testimony of Spartan's Expert Dr. Michael Lumpkin and GEO's Expert Dr. David Dodge (ECF 370);

c)    Plaintiffs' Motion to Exclude Testimony of Spartan's Expert James Messina (ECF 372);

d)    Plaintiffs' Motion to Exclude Testimony of GEO's Expert Dr. Daniel Halperin (ECF 373);

e)    Plaintiffs' Motion to Exclude Testimony of Spartan's Expert Dr. Julia Diebol (ECF 374)

f)    Spartan's Motion to Exclude Testimony of Plaintiffs' Expert Dr. Noah Malmstadt (ECF 375)

g)    Spartan's Motion to Exclude Testimony of Plaintiffs' Rebuttal Expert Dr. Brown (ECF 376)

h)    Plaintiffs' Motion to Exclude Testimony of GEO's Expert Travis Kline (ECF 377)

i)    GEO's Motion to Exclude Testimony of Plaintiffs' Expert Dr. Peter DeLong (ECF 378)

j)    Plaintiffs' Motion to Exclude Testimony of GEO and Spartan's Expert Dr. Hung Cheung (ECF 379)

k)    Plaintiffs' Ex Parte Application to file Document in Support of Plaintiffs' Motion to Exclude Testimony of GEO and Spartan's Expert Dr. Hung Cheung (ECF 380)

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

l)    Plaintiffs' Motion to Exclude Testimony of Spartan's Expert Dr. Bill Davies (ECF 383)

m)    GEO's Motion to Exclude Testimony of Plaintiffs' Expert Dr. Stuart Batterman (ECF 386)

n)    GEO's Motion to Exclude Testimony of Plaintiffs' Expert Dr. Cyrus Rangan (ECF 388)

o)    Plaintiffs' Motion in Limine No. 1 to Exclude Mention of Criminal History (ECF 394)

p)    Plaintiffs' Motion in Limine No. 2 to Exclude Evidence and Argument of EPA Label Approval (ECF 396)

q)    Plaintiffs' Motion to Strike Defendants' Undisclosed Witnesses (ECF 405)

r)    Plaintiffs' Motion for a Juror Questionnaire (ECF 395)

s)    GEO's Motion in Limine No. 1 (ECF 409)

t)    GEO's Motion in Limine No. 1 to Exclude Injury Claims Inconsistent with 5/2/2025 Court Order Limiting Plaintiffs' Injury Claims (ECF 409)

u)    GEO's Motion in Limine No. 2 to Exclude Evidence of EPA Investigation and Allegations (ECF 406)

v)    GEO's Motion in Limine No. 3 to Exclude Evidence of Congressional Interactions (ECF 404)

w)    GEO's Motion in Limine No. 4 to Exclude Testimony of Mark Ferretiz (ECF 400)

x)    GEO's Motion in Limine No. 5 to Exclude Evidence of the Preliminary Injunction from *Hernandez Roman, et al. v. Alejandro Mayorkas*, et al.; Case No. 5:20-CV-00768-TJH-PVC (ECF 407)

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

y)   Spartan's Motion in Limine No. 1 to Exclude Hearsay Statements that Dispensers were set to "2 Ounces Per Gallon" (ECF 397)

z)   Spartan's Motion in Limine No. 2 to Preclude Improper Lay Opinions on Technical Subjects (ECF 403)

aa)  Spartan's Motion in Limine No. 3 to Require Accurate Regulatory Terminology (ECF 398)

bb)  Spartan's Motion in Limine No. 4 to Exclude Label Defect Arguments (ECF 399)

cc)  Spartan's Motion in Limine No. 5 to Exclude Failure to Warn Evidence (ECF 402)

dd)  Spartan's Motion to Bifurcate Trial (ECF 401)

## OTHER ISSUES

20.   Pursuant to Federal Rule of Evidence 615, the Parties request that the Court prevent fact witnesses, other than witnesses who have already testified and been excused because they are not expected to be further called, from hearing the testimony of other witnesses. The Parties further request that expert witnesses disclosed under Federal Rule of Civil Procedure 26(a)(2)(B) not be excluded for either fact or expert testimony.

21.   The operative Protective Order governing confidentiality (ECF 166), insofar as it restricts the dissemination and use of "Protected Information" (documents marked "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL"), shall not apply to any documents, evidence, or argument presented in open court. If either party wishes for the courtroom to be sealed for the presentation of any documents, evidence, or argument, they must file a motion in advance of the introduction of that subject matter to request such sealing.

22.   The Parties disagree about whether this trial should be bifurcated. Spartan has moved to bifurcate the trial into a four-phase structure (ECF 401). Plaintiffs oppose this structure (ECF 427). GEO seeks to bifurcate any punitive

damage phase, however, contrary to Plaintiffs opposition, GEO does not seek to have a jury hear the bifurcated portion of the trial as to financial condition, if such a phase is required.

23.    Two Plaintiffs (Ligaya Ronduen and Carlos Castillo) have been removed from the United States and will be testifying remotely.  The Parties agree that these two Plaintiffs may be sworn in by a domestic oath officer as though their testimony were taking place within the United States.  GEO's agreement is contingent on Plaintiffs bearing any risk regarding technical problems that may arise.

24.    Certain Plaintiffs will require certified Spanish-language interpreters for their testimony. Plaintiffs will secure the interpreters before trial.

25.    Plaintiffs seek to serve trial subpoenas on certain GEO officers who reside in Florida but whom Plaintiffs believe "regularly transact[] business in person" in California.  GEO has asserted, without providing any reason, that these individuals are not within this Court's trial subpoena power.  Fed. R. Civ. P. 45(c)(1)(B). GEO contends that they do not regularly transact business in California as that term is defined in the FRCP.

26.    Plaintiffs seek to subpoena Tarren Wethington, a Spartan employee, to testify in person for trial.  Mr. Wethington lives in Arizona but manages the Western Region of the United States, and Plaintiffs believe he regularly transacts business in person within 100 miles of the Court.  Fed. R. Civ. P. 45(c)(1)(A).  Alternatively, given Mr. Wethington's relevance to the case and his proximity to California, Plaintiffs would subpoena him under Fed. R. Civ. P. 45(c)(1)(B)(ii).  Spartan disputes Plaintiffs' assertion that Mr. Wethington regularly transacts business within 100 miles of the Court and objects that he is beyond the Court's subpoena power.

27.    The parties dispute whether Defendants should be permitted to amend their pleadings to add an affirmative defense under the Public Readiness and Emergency Preparedness Act ("PREP Act"). Plaintiffs oppose the motion as untimely and prejudicial, but agree that if the defense is permitted, its applicability is

a question of law for the Court. It is Spartan's position that its motion to amend should be granted, that the PREP Act provides immunity, and that the PREP Act strips this Court of subject matter jurisdiction, vesting exclusive jurisdiction in the U.S. District Court for the District of Columbia.

28. Spartan asserts that Plaintiffs' failure-to-warn claims are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) as a matter of law. Spartan maintains that these claims, however framed, would impose labeling or warning requirements that are different from or in addition to those approved by the EPA, and are therefore barred. The Parties agree that this defense is a question of law for the Court.

29. GEO contends that because Plaintiffs are seeking punitive damages based on concealment and misrepresentation, Plaintiffs are required to prove their intentional tort claims (misrepresentation and concealment) to a clear and convincing evidence standard as required by California Code of Civil Procedure section 3294(a). GEO also contends that Plaintiffs are required to prove punitive damages by clear and convincing evidence, rather than a preponderance of evidence. Plaintiffs disagree that their tort claims must be proven to a clear and convincing evidence standard but do not disagree that punitive damages must be proven by clear and convincing evidence, and have proposed jury instructions to that effect.

## CONCLUSION

30. The foregoing admissions having been made by the Parties, and the Parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

/ / /

/ / /

/ / /

/ / /

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

/ / /

/ / /

Dated: December 8, 2025          Respectfully submitted,

                                 SOCIAL JUSTICE LEGAL FOUNDATION

                                 By: */s/ Sara Haji*
                                     Sara Haji

                                 *Attorneys for Plaintiffs*

Dated: December 8, 2025          HUESTON HENNIGAN LLP

                                 By: */s/ Robert N. Klieger*
                                     Robert N. Klieger
                                     Emily Michael Munson

                                 *Attorneys for Plaintiffs*

Dated: December 8, 2025          PIERSON FERDINAND LLP

                                 By: */s/ David D. Mesa*
                                     Matthew H. Weiner
                                     David D. Mesa

                                 *Attorneys for Defendant and Third-Party Defendant Spartan Chemical Company, Inc.*

                                 EDLIN GALLAGHER HUIE + BLUM

Dated: December 8, 2025

                                 By:  */s/ Fred M. Blum*
                                      Fred M. Blum
                                      Michael E. Gallagher
                                      Daniel Trowbridge

                                 *Attorneys for Defendant and Third-Party Plaintiff The GEO Group, Inc.*

- 31 -
[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER