UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 23-0481 JGB (SHKx)** | Date | December 16, 2025 |
| Title | *Ligaya Ronduen, et al. v. The Geo Group, Inc., et al.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING-IN-PART, DENYING-IN-PART, and DEFERING-IN-PART Defendants' Motions for Summary Judgment (Dkt. Nos. 317, 320); and (2) VACATING the December 22, 2025, Hearing, December 22, 2025, Pretrial Conference, and January 20, 2026, Jury Trial (IN CHAMBERS)

Before the Court are Defendants the Geo Group, Inc.'s ("GEO") and Spartan Chemical Company, Inc.'s ("Spartan") (together, "Defendants") motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). ("GEO MSJ," Dkt. No. 320; "Spartan MSJ," Dkt. No. 317.) The Court finds these matters appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the matters, the Court **GRANTS-IN-PART**, **DENIES-IN-PART**, and **DEFERS-IN-PART** the GEO MSJ and Spartan MSJ.

The GEO MSJ is **GRANTED** as to Plaintiffs' claim for battery. The GEO MSJ and Spartan MSJ are **DENIED** as to their contentions that Plaintiffs' remaining claims are barred by the statute of limitations, which the Court finds are questions of fact for the jury. The Court **ORDERS** that the jury trial in this case be bifurcated, with the first phase covering only the issue of delayed discovery and the statute of limitations for the remaining claims. The parties are **ORDERED** to meet and confer and propose a new pretrial conference date and jury trial date for the first phase trial. The remaining pending motions and issues in the MSJ are **DEFERRED** until conclusion of the first phase trial.

The December 22, 2025, hearing; December 22, 2025, pretrial conference; and January 20, 2026, trial are **VACATED**.

# I. BACKGROUND

On March 20, 2023, Plaintiffs Wilfredo Gonzalez Mena, Carlos Castillo, Somboon Phaymany, Yolanda Mendoza, Ligaya Ronduen, Miriam Scheetz, and Cesar Hernandez Carrillo filed a putative class action complaint against Defendant the Geo Group, Inc. ("GEO"). ("Complaint," Dkt. No. 1.) The Complaint asserted six causes of action on behalf of Plaintiffs and the putative class: (1) negligence, pursuant to Cal. Civ. Code § 1714(a); (2) battery; (3) premises liability, pursuant to Cal. Civ. Code § 1714(a); (4) concealment, pursuant to Cal. Civ. Code § 1710(3); (5) intentional misrepresentation, pursuant to Cal. Civ. Code § 1710(1); and (6) negligent misrepresentation, pursuant to Cal. Civ. Code § 1710(2). (See id.)

On May 12, 2023, GEO filed a Motion to Dismiss. ("MTD," Dkt. No. 23.) The Court denied the MTD on July 6, 2023. (Dkt. No. 32.) On July 20, 2023, GEO filed a third-party complaint against third-party defendant Spartan Chemical Company, Inc. ("Spartan") and Roes 1-10. ("TPC," Dkt. No. 35.) The TPC asserted six causes of action: (1) breach of contract; (2) negligence; (3) implied indemnity; (4) equitable indemnity; (5) contribution; and (6) declaratory relief. (See TPC.)

On June 28, 2024, GEO and Spartan (together, "Defendants") filed a motion to continue the trial and related pretrial deadlines. ("Motion to Continue," Dkt. No. 95.) On August 26, 2024, the Court granted the Motion to Continue and set November 4, 2024, as the deadline for filing a motion to amend pleadings or add new parties and March 28, 2025, as the all discovery cut-off (including hearing of discovery motions) deadline. (Dkt. No. 104.) On October 15, 2024, the parties jointly stipulated to dismiss Plaintiff Ceasar Hernandez Carillo. (Dkt. No. 108.)

On January 6, 2025, Plaintiffs filed their First Amended Complaint. ("FAC," Dkt. No 152.) The FAC added Spartan as a defendant. (See FAC.) On June 30, 2025, Defendants filed a motion for leave to amend their answers Plaintiffs' FAC. (Dkt. No. 250.) On July 1, 2025, Defendants initially filed motions for summary judgment and motions for leave to amend their answers. (Dkt. Nos. 248-251.) The same day, Plaintiffs filed a motion for class certification. (Dkt. No. 252.) On July 21, 2025, the Court struck the summary judgment motion, motion for leave to file an amended answer to the FAC, and motion for class certification for the parties' failure to comply with the Court's standing order. (Dkt. No. 305.) Plaintiffs refiled their motion for class certification on August 25, 2025, which the Court granted-in-part and denied-in-part on September 26, 2025. (Dkt. Nos. 318, 365.)

Also on August 25, 2025, Defendants refiled their motions for summary judgment and motions to amend their answers. (GEO MSJ, Spartan MSJ, GEO MTA, Spartan MTA.)

The GEO MSJ is accompanied by:

- GEO's Statement of Undisputed Facts ("GEO SUF," Dkt. No. 320-1)
- GEO's Request for Judicial Notice and Exhibits A-F ("GEO RJN," Dkt. No. 320-2)
- Declaration of Fred M. Blum and Exhibits A-O ("Blum Decl.," Dkt. No. 320-3)

- Declaration of Hung K. Cheung and Exhibit A ("Cheung Decl.," Dkt. No. 32-4)
- Declaration of James Janecka ("Janecka Decl.," Dkt. No. 320-5)
- Declaration of William J. Schalitz and Exhibits A-D ("GEO Schalitz Decl.," Dkt. No. 320-6)

The GEO MSJ is also accompanied by an ex parte application to file various documents under seal. (Dkt. No. 323.) The application is **GRANTED**.

The Spartan MSJ is accompanied by:

- Declaration of David Mesa and Exhibits A-S ("Mesa Decl.," Dkt. Nos. 317-1-4)
- Spartan's Statement of Undisputed Facts ("Spartan SUF," Dkt. No. 317-5)
- Spartan's Request for Judicial Notice and Exhibits 1-8 ("Spartan RJN," Dkt. No. 317-6)
- Declaration of William J. Schalitz and Exhibits A-D ("Spartan Schalitz Decl.," Dkt. No. 317-7)
- Declaration of John E. Schauff ("Schauff Decl.," Dkt. No. 317-8)
- Declaration of James Messina and Exhibit A ("Messina Decl.," Dkt. No. 317-9)

The Spartan MSJ is also accompanied by an ex parte application to file various documents under seal. (Dkt. Nos. 321, 325.) The application is **GRANTED**.

On September 8, 2025, Plaintiffs filed their oppositions to the GEO MSJ and Spartan MSJ. ("GEO MSJ Opposition," Dkt. No. 337; "Spartan MSJ Opposition," Dkt. No. 338.) The GEO MSJ Opposition is accompanied by:

- Plaintiffs' Statement of Disputes of Fact ("Pl. GEO SDF," Dkt. No. 337-1)
- Plaintiffs' Objections to GEO's Evidence ("Pl. GEO Evid. Obj.," Dkt. No. 337-2)
- Plaintiffs' Opposition to the GEO JRN ("GEO RJN Opp'n," Dkt. No. 337-3)

The GEO MSJ Opposition is also accompanied by Plaintiffs' ex parte application to file documents relating to the GEO MSJ and Spartan MSJ under seal. (Dkt. No. 335.) The application is **GRANTED**.

The Spartan MSJ Opposition is accompanied by:

- Plaintiffs' Statement of Disputes of Fact ("Pl. Spartan SDF," Dkt. No. 338-1)
- Plaintiffs' Objections to Spartan's Evidence ("Pl. Spartan Evid. Obj.," Dkt. No. 338-2)

In support of both the GEO MSJ Opposition and Spartan MSJ Opposition, Plaintiffs also filed:

- Declaration of Ashley Artmann and Exhibits 1-128 ("Artmann Decl.," Dkt. No. 340)
- Declaration of Carlos Castillo ("Castillo Decl.," Dkt. No. 342)

- Declaration of Wilfredo Gonzalez Mena ("Gonzalez Mena Decl.," Dkt. No. 344)
- Declaration of Yolanda Mendoza ("Mendoza Decl.," Dkt. No. 346)
- Declaration of Somboon Phaymany ("Phaymany Decl.," Dkt. No. 348)
- Declaration of Ligaya Ronduen ("Ronduen Decl.," Dkt. No. 350)
- Declaration of Miriam Scheetz ("Scheetz Decl.," Dkt. No. 352)

On September 15, 2025, Defendants filed their replies to their motions for summary judgment. ("GEO MSJ Reply," Dkt. No. 360; "Spartan MSJ Reply," Dkt. No. 363.)

## II. FACTS

### A. Evidentiary Objections

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002); see Fed. R. Civ. P. 56(e). For summary judgment, courts consider evidence with *content* that would be admissible at trial, even if the *form* of the evidence would not be admissible at trial. See, e.g., Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003). The Court considers the parties' objections only where necessary.[1] All other objections are **OVERRULED AS MOOT**.

### B. Undisputed Facts

The following material facts are sufficiently supported by admissible evidence and are uncontroverted, except as noted. They are "admitted to exist without controversy" for purposes of the GEO MSJ and Spartan MSJ. See Fed. R. Civ. P. 56(e)(2); L.R. 56-3. The Court addresses only the facts relevant to its consideration of the statute of limitations and delayed discovery issues.

On February 3, 2020, the United States Department of Health and Human Services declared COVID-19 a public health crisis. (FAC ¶¶ 4, 54.) In order to address the threat of COVID-19, the United States Department of Immigration and Customs Enforcement ("ICE") required GEO to abide by ICE's COVID-19 Pandemic Response Requirement, which, among other things, set the baseline requirements in immigration detention facilities. (Id. at ¶¶ 33-34.)

Guidelines published by the Centers for Disease Control ("CDC") on March 23, 2020, stated that facilities were to, "[s]everal times per day, clean and disinfect surfaces and objects that are frequently touched, especially in common areas." (Artmann Decl., Ex. 12 ("CDC

---

[1] "[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself" and are therefore "redundant" and unnecessary to consider here. Burch v. Regents of Univ. of California, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted.").

Guidelines").) HDQ Neutral is a chemical that was approved for some uses to prevent COVID-19. (Spartan Schalitz Decl. ¶¶ 5-6.) HDQ Neutral is an Environmental Protection Agency ("EPA") supplemental registration of the basic EPA product registration Maquat 128-HDQ. (Messina Decl. ¶ 6; Schalitz Spartan Decl. ¶ 4-6.) Under GEO's approach to disinfection at GEO's Adelanto ICE Processing Center ("Adelanto") at the time, "officers would spray the high touch surfaces every 30 minutes on their rounds" with HDQ Neutral. (Blum Decl., Ex. I ("Janecka Depo.") at 85:21-87:6.)

Spartan began manufacturing HDQ Neutral in 1992. (Schalitz Spartan Decl. ¶ 3.) Prior to 2020, Spartan's sales and shipments of HDQ Neutral to Adelanto were to address the needs of standard facility hygiene. (Id. ¶ 12.) Between March 2020 and September 2020, GEO placed increased orders with Spartan for HDQ Neutral to use at Adelanto. (Id. ¶ 13.) During that period, Spartan's authorized distributor shipped 5-gallon pails of HDQ Neutral with EPA-approved labels to Adelanto. (Id. ¶ 14.) Spartan did not manufacture nor design the chemical dispensing equipment nor the metering tips that were installed at Adelanto in 2020.[2] (Schauff Decl. ¶ 3-11.) The only EPA-approved use for HDQ Neutral as a general use disinfectant/virucide is at 1:128 dilution. (Messina Decl. ¶¶ 19, 34.)

Plaintiff Ronduen was at Adelanto from December 2018 to November 2023. (Blum Decl., Ex. A ("Ronduen Depo. A") at 19:23; FAC ¶ 24.) In April 2020, she was represented by immigration counsel. (Ronduen Depo. A at 8:22-9:10.) Ronduen was first exposed to what she later learned was HDQ Neutral at some point while she was housed in C dorm between June 2019 and July 2020. (Id. at 226:21-24; Blum Decl., Ex. J ("Ronduen Rogs.") at 6; Artmann Decl., Ex. 85 ("Ronduen Depo. B") at 31:20-25.) Ronduen experienced negative effects like watery eyes that she attributed to being sprayed with HDQ Neutral. (Ronduen Depo. A at 33:19-25.) She connected her symptoms to HDQ Neutral in July 2020. (Id. at 34:16-24.) Ronduen would wipe down tables before she put her arms on them to alleviate symptoms like her rash that she linked to HDQ Neutral. (Id. at 75:20-76:17.) Ronduen heard officers tell people not to put their arms on tables that had been sprayed with HDQ Neutral until it had been wiped off. (Id. at 42:22-43:8.) Ronduen asked officers to stop spraying near her. (Id. at 35:24-36:7.) This included asking officers not to spray near her while she was eating, though their practices of spraying did not change. (Id. at 56:10-57:1.) Ronduen repeatedly made complaints to GEO staff about the spraying, and in response she was told that GEO staff were ordered to spray in such a manner and frequency because it was required to kill the COVID-19 virus. (Ronduen Rogs. at 15.)

---

[2] Plaintiffs inadequately dispute this fact. (See "Standing Order," Dkt. No. 14, at 7 ("If a party fails to dispute a fact properly by offering evidence that does not contradict the proffered fact, the Court will deem the fact undisputed . . . .").) Plaintiffs contend that it is "[d]isputed that Spartan had no role in the design of the chemical dispensing equipment," but that is not what Spartan stated in its facts. (Pl. Spartan SDF ¶ 66.) Rather, Spartan stated that it did not manufacture or design the dispensing equipment. (Id.) That Spartan may have had some involvement in the development of the equipment does not necessarily make Spartan its designer. As such, this fact is deemed undisputed.

Plaintiff Phaymany was at Adelanto between April 2018 and April 2020. (FAC ¶ 28.) Phaymany had legal counsel for some purpose in 2020. (Blum Decl., Ex. B ("Phaymany Depo. A") at 34:11-18.) In February 2020, Phaymany noticed a change in the manner of spraying chemicals at Adelanto. (Id. at 92:2-18.) Around the same time, he noticed symptoms from "certain order or chemical scents" affecting him, including congestion, nausea, and feeling like he couldn't breathe.[3] Phaymany specifically linked getting the spray in his eyes and a burning sensation, along with the need to go rinse out his eyes. (Id. ¶ 104:18-105:23.) Phaymany would ask about the spraying on behalf of other detainees who would say, "Do they need to spray this much? Can someone go talk to them?" (Id. at 110:20-23.) According to Phaymany, "GEO staff misrepresented the need to use HDQ Neutral for COVID-19 prevention" and that "the spray was not effective if it was wiped down off of surfaces." (Blum Decl., Ex. K ("Phaymany Rogs") at 12-13, 17.)

Plaintiff Castillo was detained at Adelanto from July 2019 until September 2024. (FAC ¶ 25.) Castillo was represented by immigration counsel in 2019 and 2020. (Blum Decl., Ex. C ("Castillo Depo.") at 67:6-17.) By April of 2020, Castillo knew that the disinfectant spray being used in the facility was HDQ. (Id. at 41:14-15, 60:9-16.) Castillo experienced dry skin, dry nostrils, and nose bleeds, among other symptoms, from using HDQ. (Id. at 46:16-47:1.) Near the end of 2020, Castillo saw news on television and in newspapers from which he learned the technical name for the chemical was HDQ Neutral. (Id. at 63:4-16.) Castillo "repeatedly made verbal complaints to GEO staff, including, but not limited to, guards, captains, and lieutenants, regarding where and how HDQ Neutral was sprayed by GEO staff." (Blum Decl., Ex. L ("Castillo Rogs.") at 14.) When Castillo complained about the spraying, he was told that "the use of HDQ Neutral to prevent the spread of COVID-19 was an approved action that would continue." (Id. at 15.)

Plaintiff Gonzalez Mena was at Adelanto from November 2019 to September 15, 2020. (Blum Decl., Ex. D ("Gonzalez Mena Depo.") at 10:11-17.) Gonzalez Mena was represented by counsel hired by his wife to "defend" him starting at some point between June 1, 2019. (Id. ¶ 174:19-175:16.) After the spraying at Adelanto increased, Gonzalez Mena began to experience symptoms including redness and rashes on his eyelids, worsening eyesight, dry skin, body pain, a burning sensation on parts of his body, headaches, and respiratory issues. (Id. 121:1-4; FAC ¶ 221.) By May 6, 2020, he believed that exposure to the disinfectant could be detrimental to his health. (Gonzalez Mena Depo. at 121:1-4.) Gonzalez Mena "made verbal complaints to GEO

---

[3] Plaintiffs inadequately dispute this fact. (See "Standing Order," Dkt. No. 14, at 7 ("If a party fails to dispute a fact properly by offering evidence that does not contradict the proffered fact, the Court will deem the fact undisputed . . . .").) GEO's SUF states that "Phaymany's observation of increase in the spraying of disinfectant coincided with multiple physical symptoms." (SUF ¶ 52.) Plaintiff's object that "Phaymany did not make a connection between all of his symptoms and the increased spraying of HDQ Neutral at the time of the spraying, rather than having the realization later." Yet GEO does not state as much—it merely states that the two events temporally coincided, not that Phaymany linked the two at the time. Plaintiffs have failed to properly dispute this fact.

staff. . . regarding where and how HDQ Neutral was sprayed by GEO staff." (Blum Decl., Ex. M ("Gonzalez Mena Rogs.") at 15.) He was told "the spraying was necessary and required to prevent COVID-19. (Id.)

Plaintiff Mendoza was at Adelanto from September 2019 to October 2020. (Blum Decl., Ex. F ("Mendoza Decl.") at 17:14-21.) Mendoza spoke to her sister on the phone and complained to her about the spraying. (Id. at 44:1-24, 46:2-5.) Mendoza "repeatedly made verbal complaints to GEO staff, including guards that worked in the dormitory block(s), regarding where and how the chemical (HDQ Neutral) was sprayed by GEO staff." (Blum Decl., Ex. N ("Mendoza Rogs.") at 14.) She continued to make inquiries about the chemical until her release from the facility, including requesting that it not be sprayed near her bed or during meals. (Id.) Mendoza heard another detainee tell the guards to stop spraying because it was making their noses bleed. (Mendoza Decl. at 34:17-35:5.) According to Mendoza, GEO staff "repeatedly misrepresented to Plaintiff Mendoza that the chemical being sprayed from February 2020 until October 23, 2020 (HDQ Neutral) was necessary to prevent the spread of COVID-19." (Mendoza Rogs. at 16.)

Plaintiff Scheetz was at Adelanto from March 19, 2019 to August 30, 2020. (Blum Decl., Ex. E ("Scheetz Depo.") at 10:5-10.) Scheetz had an immigration lawyer in 2020. (Id. at 46:9-16.) Before the increase in spraying, Scheetz was anxious, cold, and shaking, and wanted to see a psychologist because she thought the "strong smell that was there to clean" was causing her anxiety. (Id. at 24:13-25:12, 27:15-20.) The smell got worse in February 2020. (Id. at 27:15-23.) When the smell became stronger, it caused her to vomit and get headaches. (Id. at 27:15-23, 28:22-29:4.) She had trouble sleeping in part because of the spraying. (Id. at 38:8-39:5.) Scheetz told guards that her exposure to the chemicals was causing problems. (Id. at 29:15-19.) Scheetz "repeatedly made verbal complaints to GEO staff, including, but not limited to, guards and captains, regarding where and how the chemical (HD[Q] Neutral) was sprayed by GEO staff" up until her release from Adelanto. (Blum Decl., Ex. O ("Scheetz Rogs.") at 15.) In response to her complaints, "GEO staff informed Plaintiff Scheetz that they were ordered to spray in such a manner and frequency because it was required to kill the COVID-19 virus." (Id.)

### III. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying the portions of the pleadings and record that it believes demonstrate the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the nonmoving party's case. Id. at 325. Instead, the moving party need only prove there is an absence of evidence to support the nonmoving party's case. Id.; In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

If the moving party has sustained its burden, the nonmoving party must then show that there is a genuine issue of material fact that must be resolved at trial. Celotex, 477 U.S. at 324. The nonmoving party must make an affirmative showing on all matters placed at issue by the motion as to which it has the burden of proof at trial. Id. at 322; Anderson, 477 U.S. at 252. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. "This burden is not a light one. The nonmoving party must show more than the mere existence of a scintilla of evidence." In re Oracle, 627 F.3d at 387 (citing Anderson, 477 U.S. at 252).

When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmoving party. Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991). Thus, summary judgment for the moving party is proper when a "rational trier of fact" would not be able to find for the nonmoving party based on the record taken as a whole. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV. DISCUSSION

Defendants argue that each of Plaintiffs' claims is barred by the statute of limitations. Plaintiffs do not dispute that a two-year statute of limitations defense applies to their claims against GEO. (GEO MSJ Opp'n at 15.) Plaintiffs do not address the statute of limitations they believe applies as to the claims against Spartan, but Spartan argues that it is two years. (Spartan MSJ Opp'n 19-21; Spartan MSJ at 11-12.) The Court therefore accepts that the applicable statute of limitations for all claims is two years.

The statute of limitations provides that:

> In any civil action for injury or illness based upon exposure to a hazardous material or toxic substance, the time for commencement of the action shall be no later than either two years from the date of injury, or two years after the plaintiff becomes aware of, or reasonably should have become aware of, (1) an injury, (2) the physical cause of the injury, and (3) sufficient facts to put a reasonable person on inquiry notice that the injury was caused or contributed to by the wrongful act of another, whichever occurs later.

Cal. Code Civ. Proc. § 340.8. The undisputed facts in this case demonstrate that Plaintiffs were aware of their injuries in 2020, more than two years before they filed their Complaint and FAC. (See, e.g., Ronduen Depo. A at 33:19-25, 34:16-24; Phaymany Depo. A at 104:18-105:23; Castillo Depo. at 46:16-47:1; Gonzalez Mena Depo. at 121:1-4; Mendoza Depo. at 34:17-35:5; Scheetz Depo. at 27:15-23, 28:22-29:4.) Plaintiffs were also aware that the cause of their injuries was the spray being used at Adelanto. (See, e.g., Ronduen Depo. A at 34:16-24; Phaymany Depo. A at 104:18-105:23; Castillo Depo. at 46:16-47:1; Gonzalez Mena Depo. at 121:1-4; Mendoza Rogs. at 14; Scheetz Depo. at 29:15-19.) The real dispute as to the statute of limitations is when Plaintiffs knew, or were on inquiry notice, that Defendants' conduct related to spraying was *wrongful*.

"[T]he common law rule [is] that an action accrues on the date of injury," and is modified only by the "discovery rule." Jolly v. Eli Lilly & Co., 751 P.2d 923, 926 (1988). These two timelines for the statute of limitations were codified by California Code of Civil Procedure § 340.8, where the later of the two dates dictates the filing deadline. Under Jolly's progeny—and subsequent to the Legislature's codification of these rules—when it is apparent on the face of the complaint that a plaintiff's claim is time-barred, it is a plaintiff's burden to show that the discovery rule applies. Specifically, a plaintiff must "show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." Fox v. Ethicon Endo-Surgery, Inc., 110 P.3d 914, 920–21 (2005).

Plaintiffs were indisputably injured in 2020. Under the common law rule, on the face of the Complaint and FAC their actions are time-barred, having been first filed in 2023 (as to GEO) and 2025 (as to Spartan). The discovery rule therefore must apply for their claims to be eligible for consideration. "Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." Jolly, 751 P.2d at 927. "Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." Id. at 928.

Plaintiffs argue that the statute of limitations began to run as to the claims against GEO at the earliest on March 22, 2021, when the EPA released its report (the "EPA Report") on an investigation into use of HDQ Neutral at Adelanto. (GEO MSJ Opp'n at 16.) Yet each of Plaintiffs' declarations indicate that they did not know about the EPA Report in 2021. (Ronduen Decl. ¶ 5; Phaymany Decl. ¶ 5; Castillo Decl. ¶ 5; Gonzalez Mena Decl. ¶ 5; Mendoza Decl. ¶ 5; Scheetz Decl. ¶ 5.) It is therefore unpersuasive that March 22, 2021, is a relevant date for determining when the statute of limitations began to run. It may be sooner or it may be later, but that date appears to be of little assistance in reaching a conclusion. GEO, on the other hand, asserts that Plaintiffs knew, or were on inquiry notice, in 2020 that the spraying was wrongful. They base this on Plaintiffs' repeated requests that GEO staff stop or alter their spraying, which were apparently disregarded. (GEO MSJ at 1.)

Plaintiffs argue that the statute of limitations did not begin to run as to Spartan until Spartan's first document production in June 2024. (Spartan MSJ Opp'n at 19.) Spartan contends that, because under California law the statute of limitations can run before a plaintiff knows the name or manufacturer of the product that allegedly harmed her, the statute of limitations began to run in 2020 because Plaintiffs knew at that time that they were harmed by HDQ Neutral, even if they didn't know about Spartan's alleged role in the harm. (Spartan MSJ at 13.)

Plaintiffs each raise nine claims that must be evaluated individually as to each of them: (1) negligence, (2) battery, (3) premises liability, (4) concealment, (5) intentional misrepresentation, (6) negligent misrepresentation, (7) design defect—strict liability, (8) failure to warn—strict liability, and (9) failure to warn—negligence. (See FAC.) As discussed in more detail below, the

Court finds that the undisputed facts conclusively demonstrate that Plaintiffs had the requisite information in 2020 to know, or be on inquiry notice, that the tort of battery had been committed against them. As such, the statute of limitations has run, and the claim must be dismissed as to all Plaintiffs. For the remaining claims, the undisputed facts demonstrate that Plaintiffs knew, or had inquiry notice, that they were injured and that Defendants were the cause of their harm. There is insufficient undisputed evidence, however, that Plaintiffs knew, or suspected, that Defendants' conduct was *wrongful* in 2020. The Court is thus unable to decide in a motion for summary judgment whether the discovery rule has been satisfied. Knowledge or inquiry notice of the date at which Plaintiffs knew Defendants' conduct was wrongful is a question for the jury, and the burden rests with Plaintiffs.

### A. Battery Claim

The elements of battery under California law are that "(1) defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff." Brown v. Ransweiler, 171 Cal. App. 4th 516, 526-27, 89 Cal. Rptr. 3d 801, 811 (2009). The undisputed facts show that Plaintiffs knew in 2020 that GEO's officers were intentionally spraying HDQ Neutral in a matter that resulted in harmful conduct to them, and that they were injured by the spraying. (See, e.g., Ronduen Depo. A at 34:16-24; Phaymany Depo. A at 104:18-105:23; Castillo Depo. at 46:16-47:1; Gonzalez Mena Depo. at 121:1-4; Mendoza Rogs. at 14; Scheetz Depo. at 29:15-19.) The facts also show that Plaintiffs and others repeatedly asked GEO officers to stop spraying them, or to change the manner of their spraying, so as to reduce exposure and harm. (See, e.g., Ronduen Depo. A at 35:24-36:7; Phaymany Depo. A at 110:20-23; Castillo Rogs. at 14; Gonzalez Mena Rogs. at 15; Mendoza Rogs. at 14; Scheetz Rogs. at 15.) Plaintiffs' requests and directives not to spray them when Plaintiffs found contact with the spray harmful and were injured by the spraying demonstrate that they did not consent to being sprayed. Because GEO officers continued to spray, they caused harm and injury without consent. This was known to Plaintiffs each and every time they asked for the spraying to stop and change, and GEO officers did not stop or change their spraying. Plaintiffs therefore knew, or were on inquiry notice, at the time they were allegedly battered—in 2020—that this tort had been committed against them. There is no basis for tolling the statute of limitations for battery, because all facts necessary to allege the tort of battery were known to Plaintiffs in 2020. This claim is time-barred, and is therefore **DISMISSED**.

### B. Remaining Claims

#### 1. Negligence

Negligence under California Civil Code § 1714(a) involves "(1) the defendant's legal duty of care toward the plaintiff; (2) the defendant's breach of duty—the negligent act or omission; (3) injury to the plaintiff as a result of the breach—proximate or legal cause; and (4) damage to the plaintiff." Leyva v. Garcia, 20 Cal. App. 5th 1095, 1103 (2018). The point at which Plaintiffs knew or had inquiry notice of facts supporting the second element remains at issue.

### 2. Premises Liability

Premises liability under California Civil Code § 1714(a) also involves "(1) the defendant's legal duty of care toward the plaintiff; (2) the defendant's breach of duty—the negligent act or omission; (3) injury to the plaintiff as a result of the breach—proximate or legal cause; and (4) damage to the plaintiff." Id. The second element remains at issue.

### 3. Concealment

Concealment under California Civil Code § 1710(3) involves "[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact." Cal. Civ. Code § 1710(3). The elements of the claim are that "(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." Boschma v. Home Loan Ctr., Inc., 198 Cal. App. 4th 230, 248 (Cal. Ct. App. 2011) (internal citations omitted). The third element represents the "wrongful" conduct whose discovery point remains at issue here.

### 4. Intentional Misrepresentation

Intentional misrepresentation under California Civil Code § 1710(1) involves "[t]he suggestion, as a fact, of that which is not true, by one who does not believe it to be true." Cal. Civ. Code § 1710(1). The elements of intentional misrepresentation are "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." Engalla v. Permanente Med. Grp., Inc., 938 P.2d 903, 917 (Cal. 1997). The timing at which Plaintiffs had the facts necessary to know that elements (b) and (c) had occurred remains at issue.

### 5. Negligent Misrepresentation

Negligent misrepresentation under California Civil Code § 1710(2) involves "[t]he assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true." Cal. Civ. Code § 1710(2). The elements of negligent misrepresentation are "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." Borman v. Brown, 59 Cal. App. 5th 1048, 1060 (Cal. Ct. App. 2021) (internal quotations omitted). The timing at which Plaintiffs knew facts supporting the third element remains at issue.

//
//
//

### 6. Product Liability Claims

Plaintiffs' products liability claims against Spartan also raise fact issues regarding the statute of limitations that must be determined by a jury. Strict liability on a design defect or failure to warn theory under California law involves "a defect in the manufacture or design of the product or a failure to warn, causation, and injury." Nelson v. Superior Court, 144 Cal. App. 4th 689, 695 (Cal. Ct. App. 2006) (internal citations omitted). To show negligent failure to warn, Plaintiffs must show "breach of duty, causation, and damages." Berberian v. Ethicon Inc., 2025 WL 1421905, at *2 (C.D. Cal. Jan. 28, 2025). Plaintiffs allege that they did not know the facts necessary to raise their strict liability claims until Spartan's first document production in 2024. (Spartan MSJ Opp'n at 19.) Spartan, on the other hand, contends that the March 2021 EPA Report detailed Spartan's role in calibrating and maintaining the HDQ Neutral dispensing systems, which provided the requisite notice or inquiry notice to start the statute of limitations clock at that time. (Spartan MSJ Reply at 5-9.) Because Plaintiffs' injuries occurred in 2020 and they sued Spartan in January 2025, the burden is on Plaintiffs to show that the discovery rule applies. Because the record lacks sufficient facts to resolve this dispute on summary judgment, this is an issue for the jury.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS-IN-PART**, **DENIES-IN-PART**, and **DEFERS-IN-PART** Defendants' Motions for Summary Judgment. Plaintiffs' battery claims are **DISMISSED**. The parties are ordered to meet and confer and provide the Court with revised dates for a Pretrial Conference and Jury Trial on only the issues of delayed discovery and statute of limitations as to the remaining claims. That submission is due on or before **December 29, 2025**. The December 22, 2025, hearing; December 22, 2025, pretrial conference; and January 20, 2026, trial are **VACATED**.

**IT IS SO ORDERED.**