SOCIAL JUSTICE LEGAL FOUNDATION
Sara Haji (SBN 330834)
shaji@socialjusticelaw.org
Marjorie J. Menza (SBN 321512)
mmenza@socialjusticelaw.org
Ashley Artmann (SBN 319374)
aartmann@socialjusticelaw.org
523 West 6th Street, Suite 450
Los Angeles, California 90014
Telephone: (213) 542-5241

HUESTON HENNIGAN LLP
Robert N. Klieger (SBN 192962)
rklieger@hueston.com
Emily Michael Munson (SBN 338433)
emunson@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:  (213) 788-4340

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIGAYA RONDUEN, et al.,<br><br>        Plaintiffs,<br><br>    vs.<br><br>THE GEO GROUP, INC., a Florida corporation, and SPARTAN CHEMICAL COMPANY, INC., an Ohio corporation,<br><br>        Defendants.<br><hr>THE GEO GROUP, INC., a Florida corporation,<br><br>        Third-Party Plaintiff,<br><br>    vs.<br><br>SPARTAN CHEMICAL COMPANY, INC. and ROES 1-10,<br><br>        Third-Party Defendants. | Case No. 23-cv-00481-JGB (ACCVx)<br><br>[CLASS ACTION]<br><br>**NOTICE OF LODGING OF [PROPOSED] FINAL PRETRIAL CONFERENCE ORDER FOR PHASE ONE TRIAL**<br><br>Complaint Filed: March 20, 2023<br>FAC Filed:     January 6, 2025<br>Phase One Trial Date: March 10, 2026 |

Plaintiffs Ligaya Ronduen, et al. ("Plaintiffs"), Defendant The GEO Group, Inc. ("GEO"), and Defendant Spartan Chemical Company, Inc. ("Spartan") jointly submit this Proposed Final Pretrial Conference Order pursuant to Federal Rule of Civil Procedure 16, C.D. Cal. Local Rule 16-7, Appendix A to the Local Rules, and Your Honor's Procedures.  A clean version of the below is also attached and lodged as **Exhibit A** and a word copy will be transmitted to Your Honor's chambers.

***

Following pretrial proceedings, pursuant to Fed. R. Civ. P. 16 and L.R. 16, **IT IS ORDERED**:

## NATURE OF THE ACTION

1.    The parties are: Plaintiffs Ligaya Ronduen, Carlos Castillo, Miriam Jeannette Scheetz, Wilfredo Gonzalez Mena, Somboon Phaymany, Yolanda Mendoza (collectively, "Plaintiffs"); Defendant and Third-Party Plaintiff The GEO Group, Inc. ("GEO"); and Defendant and Third-Party Defendant Spartan Chemical Company, Inc. ("Spartan").

a)    Each of these parties has been served and has appeared.  There were no other parties named in the pleadings.

b)    The pleadings that raise the issues are: ECF 1 (Complaint); ECF 35 (GEO's Third-Party Complaint); ECF 48 (Spartan's Answer to GEO's Third-Party Complaint); ECF 152 (First Amended Complaint); ECF 176 (GEO's Answer to First Amended Complaint); ECF 179 (Spartan's Answer to First Amended Complaint).

2.    Federal jurisdiction is invoked upon the ground of diversity jurisdiction because the parties are diverse (Plaintiffs are citizens of California, El Salvador, and The Philippines; GEO is a Florida corporation; Spartan is an Ohio corporation), and the amount in controversy exceeds $75,000 (28 U.S.C. § 1332).  It is Defendants' position that venue is improper in this district, as the PREP Act grants exclusive

- 1 -

jurisdiction over claims related to covered countermeasures to the U.S. District Court for the District of Columbia, a challenge it maintains is jurisdictional and not subject to waiver. Both Spartan and GEO have filed motions for summary judgment based on PREP Act immunity. Plaintiffs maintain venue is proper because a substantial portion of the alleged events or omissions giving rise to this action occurred in this District (*see* 28 U.S.C. § 1391(b)(2)); and, in any event, any challenges to venue have now been waived (*see Costlow v. Weeks*, 790 F.2d 1486, 1488 (9th Cir. 1986) ("A defendant must object to venue by motion or in his answer to the complaint or else his objection is waived."); *Concession Consultants, Inc. v. Mirisch*, 355 F.2d 369, 371 (2d Cir. 1966) (district court cannot *sua sponte* challenge venue where the parties have already waived challenges to venue).  The Court has deferred ruling on Defendants' motions for leave to amend their Answers and motions for summary judgment related to the PREP Act until after Phase One (ECF 491 at 1).  Thus it is Plaintiffs' position that there are no challenges to subject matter jurisdiction or venue before the Court for Phase One.

   3.  The Parties estimate the Phase One trial will take 4–5 trial days.

     a)  The trial will be timed.  Plaintiffs propose 12 hours for Plaintiffs and 12 hours for Defendants, including opening statements and presentation of evidence, but not including time for closing argument. As the dates that pertain to when the statute of limitations began to run are different for each Defendant, Defendants GEO and Spartan propose that the Defendants each have 8 hours, including opening statements and presentation of evidence, but not including time for closing argument. Plaintiffs disagree: Plaintiffs will have to split their trial time among the two Defendants; Defendants should have the same amount of time, in combination, to defend the case as Plaintiffs have to prove it. Defendants' proposal also risks the trial extending past 5

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

days.

4.     The Phase One trial is to be a jury trial on Defendants' statute of limitations defenses and Plaintiffs' assertion of delayed discovery as to all claims pleaded in Plaintiffs' FAC except for battery. (ECF 491.)  Defendants' position is that the only issue is Plaintiffs' assertion of delayed discovery as Plaintiffs do not contest that the claims were filed more than 2 years after their claimed injuries.

For the Phase One issues, the parties have filed and served:

    a)     Proposed jury instructions (ECF 511 (agreed-upon); ECF 512 (disputed));

    b)     Proposed jury verdict forms (ECF 513 (Plaintiffs' proposed verdict form); GEO's proposed verdict form; Spartan's proposed verdict form); and

    c)     Questions requested to be asked on voir dire (ECF 510 (Plaintiffs' proposal)).

    d)     Joint List of Pending Motions for Decision Before Phase One Trial (ECF 496).

5.     The following facts are admitted by the Parties and require no proof:

    a)     The Adelanto facility is located in Adelanto, California.

    b)     The GEO Group, Inc. has managed and operated the Adelanto facility from 2011 to the present.

    c)     The GEO Group, Inc.'s headquarters are located in Florida.

    d)     Spartan Chemical Company, Inc.'s headquarters are located in Ohio.

    e)     Spartan Chemical Company, Inc. manufactured HDQ Neutral in 2020.

    f)     Plaintiffs filed this lawsuit against The GEO Group on March 20, 2023.

## CLAIMS AND DEFENSES

6.      This section identifies the asserted claims and defenses at issue in the Phase One trial.  In accordance with Fed. R. Civ. P. 16(c), parties will be precluded from presenting claims or defenses not set forth in this order during the Phase One trial, in the manner required by this order, unless the order is modified to prevent manifest injustice.

7.      As the Court ruled in its Order on Summary Judgment, "only the issues of delayed discovery and statute of limitations as to the remaining claims" are at issue in this Phase One trial.  (ECF 491 at 12.)  Defendants have asserted the statute of limitations defense to all of Plaintiffs' remaining claims: (a) negligence; (b) premises liability; (c) concealment; (d) intentional misrepresentation; (e) negligent misrepresentation; (f) design defect—strict liability; (g) failure to warn—strict liability; and (h) failure to warn—negligence.  The Parties agree that because Plaintiffs' injuries began to accrue before the two-year limitations period expired, the jury need only decide the issue of delayed discovery at Phase One.

8.      **Spartan's Position on Its Statute of Limitations Defense.** The elements required to establish Spartan's affirmative statute of limitations defense are:

(a) That Plaintiffs' claimed harm occurred before January 6, 2023; and

(b) As Plaintiffs do not dispute that at least some part of their injuries occurred before January 6, 2023, each plaintiff must prove that before that date, he/she did not discover, and did not know of facts that would have caused a reasonable person to suspect that they had suffered harm that was caused by someone's wrongful conduct, and if that is true, whether a reasonable and diligent investigation before that date would not have disclosed, that Spartan's misconduct contributed to each plaintiff's harm.

Plaintiffs do not dispute that at least some part of their injuries occurred before January 6, 2023, although the full extent of those injuries was yet known.  The issue

- 4 -

at this trial is thus only subpart (b) with the assumption that Spartan has satisfied subpart (a).

Spartan's position is that the trigger date for Plaintiffs' claims against Spartan is January 6, 2023.  The two-year statute of limitations is measured from the date the First Amended Complaint naming Spartan as a defendant was filed on January 6, 2025, not the date Plaintiffs moved for leave to amend. Therefore, the critical date for the statute of limitations is January 6, 2023.

A motion to amend is not a "filing date" for limitations purposes because only a filed pleading asserts a claim and commences litigation; under the Rules, a civil action is commenced by filing a complaint, and motions are not pleadings, so time is measured to the date the amended complaint naming the defendant is actually filed unless Rule 15(c) relation back applies. *See* Fed. R. Civ. P. 3 (commencement by filing a complaint) and Rule 7(a) (exhaustive list of pleadings)—both reflected and operationalized in the Central District's rules requiring that case-initiating documents be filed to commence an action and that any amended pleading be filed as a separate document after leave is granted, not upon the filing of a motion. L.R. 3-2; L.R. 15-1 to 15-3 (amended pleading must be filed after leave and is then deemed served). The Supreme Court's Rule 15(c) decisions confirm that relation back is the sole mechanism to use an earlier date; absent relation back, timeliness is assessed by the amended complaint's filing date, not the motion date. *See Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541–42, 548, 552–54 (2010). CACI points the same direction: the "date to be inserted" for the statute of limitations is the applicable period before "the filing date," i.e., the filing of the operative pleading asserting the claim against the defendant. CACI No. 454, Directions for Use; CACI No. 455, Directions for Use; CACI Verdict Form VF-410; Directions for Use, which states, "The date to be inserted throughout is the applicable limitation period before the filing date. For example, if the limitation period is two years and the filing date is August 31, 2007, the date is August 31, 2005."

- 5 -
[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

Accordingly, Plaintiffs' November 2022 motion to amend cannot serve as the operative "filing date"; the cutoff is two years before the January 6, 2025 First Amended Complaint that first named Spartan, and any contrary theory impermissibly treats a motion as a pleading in contravention of Rules 3, 7(a), and 15(c) and the Local Rules' filing requirements. L.R. 3-2; L.R. 15-1 to 15-3; CACI 454, 455, VF-410.

9.      **Plaintiffs' Position on Spartan's Statute of Limitations Defense**.

The trigger date for Plaintiffs' claims against Spartan is November 4, 2022—two years before Plaintiffs moved to amend their Complaint to add claims against Spartan.  The January 6, 2025 date to which Spartan refers is only the date by which the Court ordered Plaintiffs to file a clean copy of their First Amended Complaint; it is not the relevant date for a statute-of-limitations inquiry.  *See e.g., Bolbol v. City of Daly City*, 2011 WL 3156866, at *3 (N.D. Cal. July 26, 2011) (applying California law and holding that the date of the filing of the motion to amend the complaint constitutes the date the action was commenced for statute of limitations purposes); *Rothman v. Gregor*, 220 F.3d 81, 96 (2d Cir. 2000) ("When a plaintiff seeks to add a new defendant in an existing action, the date of the filing of the motion to amend constitutes the date the action was commenced for statute of limitations purposes."); *accord Heidari-Mojaz v. Doe*, 2021 WL 9700737, at *5 (C.D. Cal. Nov. 23, 2021). None of Spartan's sources speak to the determination of the filing date of an amended complaint adding a new defendant that was attached to a motion to amend where relation back is not at issue.  Moreover, to accept Spartan's (unsupported) argument would mean "that a plaintiff who timely files a motion to amend the complaint could be out of time simply because hearing and ruling was deferred or delayed through no fault of her own." *Bolbol*, 2011 WL 3156866, at *3.

Because Plaintiffs do not dispute that at least some part of their injuries manifested before the November 4, 2022 limitations date (although their full extent was yet unknown), the issue in this trial is limited to the following inquiries:

(a) Whether before November 4, 2022, Plaintiffs discovered or had knowledge of facts that would have caused a reasonable person to suspect that the harm they suffered was caused by Spartan's wrongful conduct; and, if so,

(b) Whether a reasonable and diligent investigation would have disclosed before November 4, 2022 the pertinent facts underlying Plaintiffs' design defect, negligence, and failure to warn claims against Spartan.

10. **GEO's Position On Statute of Limitations Defense.** There is no dispute that at least some of each Plaintiffs' injuries occurred before March 20, 2021. As such, pursuant to Code of Civil Procedure, § 340.8, Plaintiffs must each prove that they did not have "sufficient facts to put a reasonable person on inquiry notice that the injury was caused or contributed to by the wrongful act of another . . . ." Whether a reasonable and diligent investigation before that date would not have disclosed, that GEO's misconduct contributed to Plaintiffs' harm is irrelevant as § 340.8 does not include such language.

The general statute of limitations includes additional language tolling the statue where a reasonable and diligent investigation before that date would not have disclosed that that the defendant's misconduct contributed to plaintiffs' harm. However, that language was left out of as § 340.8. Since § 340.8 specifically applies to toxic tort claims such as the ones claimed herein, its language is the one that applies here. CODE OF CIV. PRO. § 1859 (Westlaw 2026)( "In the construction of a statute the intention of the Legislature, and in the construction of the instrument the intention of the parties, is to be pursued, if possible; and when a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it."), CIV. CODE § 3534 (Westlaw 2026) ("Particular expressions qualify those which are general.")

As to the application of the delayed discovery rule, GEO contends that

- 7 -

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

Plaintiffs must show when and how they discovered the facts relative to wrongful conduct at issue, which is determined relative to each claim. *See* Cal. Code Civ. Proc. § 340.8; *Fox v. Ethicon Endo-Surgery*, 35 Cal.4th 797, 814–15 (2005); CACI 455 (2026 Version).

11. **Plaintiffs' Position on GEO's Statute of Limitations Defense.** The elements required to establish GEO's affirmative statute of limitations defense are:

(a) That Plaintiffs' claimed harm occurred before March 20, 2021; and

(b) If GEO proves that Plaintiffs' claimed harm occurred before March 20, 2021, Plaintiffs' lawsuit was still filed on time if Plaintiffs prove that before that date, he/she did not discover, and did not know of facts that would have caused a reasonable person to suspect that they had suffered harm that was caused or contributed by GEO's wrongful conduct and if that is true, whether a reasonable and diligent investigation before that date would not have disclosed, that GEO's misconduct contributed to Plaintiffs' harm.

As with Spartan's affirmative defense, Plaintiffs do not dispute that at least some part of their injuries occurred before March 20, 2021, although the full extent of those injuries was yet known. The issue at this trial is thus only subpart (b).

Subpart (b) accurately reflects California law on the delayed discovery rule as expressed in CACI 455 and CACI VF-410; this inquiry includes whether a reasonable and diligent investigation before the statute of limitations trigger date would have disclosed that a defendant's misconduct contributed to a plaintiff's harm. While California Code of Civil Procedure § 340.8 sets the statute of limitations for any civil action for injury based upon exposure to a hazardous material or toxic substance as two years, it does not modify the delayed discovery rule. *See Alexander v. Exxon Mobil*, 219 Cal. App. 4th 1236, 1251 (2013) (applying the standard "two-part analysis is used to assess when a claim has accrued under the discovery rule" to claims subject to CCP § 340.8); *Rosas v. BASF Corp.*, 236 Cal. App. 4th 1378,

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

1394–99 (2015) (applying CCP § 340.8 and the delayed discovery rule, including the reasonable investigation inquiry).

As to the application of the delayed discovery rule, Plaintiffs must show when they discovered the facts underlying the wrongful conduct at issue, which is determined relative to each claim. *See* Cal. Code Civ. Proc. § 340.8; *Fox v. Ethicon Endo-Surgery*, 35 Cal.4th 797, 814–15 (2005); CACI 455 (2026 Version). Plaintiffs need not show "how" they discovered the pertinent facts, as GEO suggests above without any supporting citation. *See* CACI 455 (no instruction to determine or even consider "how" a plaintiff discovered the pertinent facts).

Because the wrongful conduct at issue is determined relative to each claim, Plaintiffs also include the elements of each remaining claim below:

    (a) Negligence (alleged against GEO)

        (1)    Whether GEO was negligent;

        (2)    Whether GEO's negligence was a substantial factor in causing Plaintiffs' harm; and

        (3)    Whether Plaintiffs suffered actual damages.

    Negligence (alleged against Spartan)

        (1)    Whether Spartan was negligent;

        (2)    Whether Spartan's negligence was a substantial factor in causing Plaintiffs' harm; and

        (3)    Plaintiffs suffered actual damages.

    (b)    Premises Liability

        (1)    Whether GEO owned, leased, occupied, or controlled Adelanto;

        (2)    Whether GEO was negligent in the use or maintenance of Adelanto;

        (3)    Whether GEO's negligence was a substantial factor in causing Plaintiffs' harm; and

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

(4)     Whether Plaintiffs suffered actual damages.

(c)     <u>Concealment</u>

(1)     Whether GEO intentionally failed to disclose certain facts that were known only to GEO and that Plaintiffs could not have discovered;[1]

(2)     Whether Plaintiffs did not know of the concealed facts;

(3)     Whether GEO intended to deceive Plaintiffs by concealing the facts;

(4)     Whether Plaintiffs reasonably would have behaved differently, had the omitted information been disclosed;

(5)     Whether Plaintiffs were harmed; and

(6)     Whether GEO's concealment was a substantial factor in causing Plaintiffs' harm.

(d)     <u>Intentional Misrepresentation</u>

(1)     Whether GEO represented to Plaintiffs that a fact was true;

(2)     Whether GEO's representation was false;

(3)     Whether GEO knew that the representation was false when it made it, or GEO made the representation recklessly and without regard for its truth;

(4)     Whether GEO intended that Plaintiffs rely on the

---

[1] It is GEO's position that this is section b for the initial choice for the concealment instruction (CACI 1901). As there is an and between a and b, a must be included. However, a requires the existence of a fiduciary relationship which does not exist. Plaintiffs' position is that concealment does not require a fiduciary relationship, as stated in the Directions for Use in CACI 1901. In any event, Plaintiffs are not proving their claim in Phase One but are only proving that they did not suspect GEO's wrongdoing caused or contributed to their harm and that a reasonable and diligent investigation would not have revealed GEO's wrongful conduct before the statute of limitations cut-off. Whether a fiduciary relationship existed is not an element of wrongful conduct, and thus is not relevant to Phase One.

- 10 -

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

representation;

  (5) Whether Plaintiffs reasonably relied on the representation;

  (6) Whether Plaintiffs were harmed; and

  (7) Whether Plaintiffs' reliance on GEO's representation was a substantial factor in causing their harm.

 (e) <u>Negligent Misrepresentation</u>

  (1) Whether GEO represented to Plaintiffs that a fact was true;

  (2) Whether GEO's representation was not true;

  (3) Whether GEO had no reasonable grounds for believing the representation was true when GEO made it, even though it may have honestly believed that the representation was true;

  (4) Whether GEO intended that Plaintiffs rely on its representation;

  (5) Whether Plaintiffs reasonably relied on GEO's representation;

  (6) Whether Plaintiffs were harmed; and

  (7) Whether Plaintiffs' reliance on GEO's representation was a substantial factor in causing their harm.

 (f) <u>Design Defect - Strict Liability (Plaintiffs' position)</u>

  (1) Whether Spartan manufactured, sold, or distributed the HDQ Neutral dispensing system used at Adelanto;

  (2) Whether Plaintiffs were harmed; and

  (3) Whether the design of the HDQ Neutral dispensing system to include a nozzle that dispensed an overconcentration of HDQ Neutral was a substantial factor in causing harm to Plaintiffs.

Design Defect – Strict Liability (Spartan's position)

(1) Whether Spartan manufactured, sold, or distributed the HDQ Neutral dispensing system used at Adelanto;

(2) Whether Plaintiffs were harmed;

(3) Whether Plaintiffs' harm occurred while the dispensing system was being used in an intended or reasonably foreseeable manner;

(4) Whether the dispensing system's design was a substantial factor in causing Plaintiffs' harm.

(g)    Failure to Warn—Strict Liability (Plaintiffs' position)

(1)    Whether Spartan manufactured, sold, or distributed HDQ Neutral;

(2)    Whether HDQ Neutral had potential risks and side effects that were known or knowable in light of the scientific or medical knowledge that was generally accepted at the time of manufacture, distribution, or sale;

(3)    Whether the potential risks and side effects presented a substantial danger when HDQ Neutral is used or misused in an intended or reasonably foreseeable way;

(4)    Whether ordinary detained individuals similarly situated to Plaintiffs would not have known how to safely use HDQ Neutral or recognized the potential risks and side effects of HDQ Neutral;

(5)    Whether Spartan failed to adequately warn or instruct GEO, Plaintiffs, or both of the safe use, potential risks, and side effects;

(6)    Whether Plaintiffs were harmed while using HDQ Neutral in a reasonably foreseeable way; and

(7)    Whether the lack of sufficient instructions or warnings to

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

GEO, Plaintiffs, or both was a substantial factor in causing Plaintiffs' harm.

<u>Failure to Warn – Strict Liability (Spartan's position)</u>

(1) Whether Spartan manufactured, sold, or distributed HDQ Neutral;

(2) Whether HDQ Neutral had potential risks and side effects that were known or knowable in light of the scientific and medical knowledge that was generally accepted in the scientific community at the time of manufacture, distribution, or sale;

(3) Whether the potential risks and side effects presented a substantial danger when HDQ Neutral is used or misused in an intended or reasonably foreseeable way;

(4) Whether ordinary consumers would not have recognized the potential risks and side effects of HDQ Neutral;

(5) Whether Spartan failed to adequately warn of the potential risks and side effects;

(6) Whether Plaintiffs were harmed while using HDQ Neutral in a reasonably foreseeable way; and

(7) Whether the lack of sufficient warnings was a substantial factor in causing Plaintiffs' harm.

(h)  <u>Failure to Warn—Negligence (Plaintiffs' position)</u>

(1)  Whether Spartan manufactured, distributed, or sold HDQ Neutral;

(2)  Whether Spartan knew or reasonably should have known that HDQ Neutral was dangerous or was likely to be dangerous when used or misused in a reasonably foreseeable manner;

(3)  Whether Spartan knew or reasonably should have known that users would not realize the danger;

- 13 -
[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

(4)   Whether Spartan failed to adequately warn GEO, Plaintiffs, or both of the danger or instruct on the safe use of HDQ Neutral;

(5)   Whether a reasonable manufacturer, distributor, or seller under the same or similar circumstances would have warned of the danger or instructed on the safe use of HDQ Neutral;

(6)   Whether Plaintiffs were harmed; and

(7)   Whether Spartan's failure to warn or instruct GEO, Plaintiffs, or both was a substantial factor in causing Plaintiffs' harm.

Failure to Warn – Negligence (Spartan's position)

(1) Whether Spartan manufactured, distributed, or sold HDQ Neutral;

(2) Whether Spartan knew or reasonably should have known that HDQ Neutral was dangerous or was likely to be dangerous when used or misused in a reasonably foreseeable manner;

(3) Whether Spartan knew or reasonably should have known that users would not realize the danger;

(4) Whether Spartan failed to adequately warn of the danger;

(5) Whether a reasonable manufacturer, distributor, or seller under the same or similar circumstances would have warned of the danger;

(6) Whether Plaintiffs were harmed; and

(7) Whether Spartan's failure to warn was a substantial factor in causing Plaintiffs' harm.

12.   In view of the admitted facts and the elements required to establish the affirmative defenses at issue in the Phase One trial, only the legal elements listed in paragraphs 8, 9, 10, and 11 remain to be tried.

13. Plaintiffs listed examples of categories of evidence they intend to use in support of their claims and defenses in their Memorandum of Contentions of Law and Fact, filed on January 26, 2026. (*See* ECF 505 (Plaintiffs' Contentions).)

14. Defendant GEO listed examples of categories of evidence they intend to use in support of their claims and defenses in their Memorandum of Contentions of Law and Fact, filed on January 26, 2026. (*See* ECF 502 (GEO's Contentions).)

15. Defendant Spartan listed examples of categories of evidence it intends to use in support of its statute of limitations affirmative defense in its Memorandum of Contentions of Law and Fact, filed on January 26, 2026. (*See* ECF 508 (Spartan's Contentions).)

16. All discovery is complete.

17. All disclosures under Fed. R. Civ. P. 26(a)(3) have been made.

18. The parties and their attorneys participated in a mediation on November 12, 2025, with Judge Shashi Kewalramani (Retired). The parties did not reach a settlement and do not believe a settlement is possible at this time.

## **EXHIBIT LIST**

19. The joint exhibit list of the Parties has been filed under separate cover as required by L.R. 16-6.1. (*See* ECF 504, 504-1.)

(a) Plaintiffs' exhibits begin at X-0001. GEO's exhibits begin at X-10000. Spartan's exhibits begin at X-20001. A party's inclusion of an exhibit as a joint exhibit or on their section of the exhibit list in no way waives any objection to the other party's introduction of such exhibit.

(b) Counsel shall meet no later than 10 calendar days before trial to stipulate to the extent possible to foundation, waiver of the best evidence rule, and which exhibits may be received into evidence at the start of trial. The exhibits to be received will be noted on the extra copies of the exhibit lists.

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

(c)    Daily Exhibit Disclosure and Rulings. To streamline trial and avoid jury downtime: by 7:00 p.m. each trial day, each party will email the other parties with a list of the exhibits it reasonably anticipates using the next trial day for direct examination. Objections will be exchanged by 10:00 p.m. with short bases, or the parties will hold a telephonic meet and confer to try to address objections. This procedure does not apply to exhibits used on cross-examination. To the extent possible, the parties will ask the Court to resolve disputes before the jury is brought in or at the next break. Otherwise, exhibits will be presented during trial testimony and objections preserved.  Exhibits admitted on this process may then be used with any competent witness, subject to the Court's ruling.

(d)    Preservation of Objections. The parties have exchanged objections to exhibits identified in the joint exhibit list on or before February 9, 2026.  Objections made in this exchange are preserved.  Failure to object to authenticity or foundation under the above stipulation does not waive objections under FRE 402, 403, 404, 801–805, or other applicable rules.  Objections not raised by the deadlines may be deemed waived except for FRE 402/403 good-cause exceptions.

## WITNESS LIST AND TESTIMONY

20.    The parties filed their witness lists for the Phase One trial on January 26, 26. (ECF 503, ECF 506, ECF 507).  All parties reserve all objections to any party's witness list.

a)    Except with a Court order based on a showing of good cause, only the witnesses identified in the filed witness lists will be permitted to testify (other than solely for authentication,

- 16 -
[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

foundation, impeachment, or rebuttal upon reasonable notice to the opposing party).  No party shall be required to present testimony from any witness on its list of witnesses.

b)  Should a party call a witness on the other party's witness list as part of their case in chief, the other party may examine that witness beyond the scope of the direct examination so as not to re-call the witness multiple times at trial.  The parties agree to call witnesses only once (i.e., a one-and-done rule) at trial unless otherwise agreed, or in case of extenuating circumstances.

c)  Each party shall provide a preliminary list of witnesses expected to be called on a given trial day by 7:00 p.m. PT two calendar days prior.

d)  The parties will disclose the order in which they intend to call live witnesses by 7:00 pm PT the night before the witness will be called.  This will allow both sides to make their witnesses available and avoid the scheduling problems (and attendant wasted time for the jury and Court) that inevitably arise when witnesses and counsel do not know the order of the trial proceedings.

21.  Each party intending to present evidence by way of deposition testimony will mark such depositions in accordance with L.R. 16-2.7.  For this purpose, the depositions listed in the Parties' witness lists—along with designations, counter-designations, and all related objections—will be lodged with the Clerk by the time and in the format required by L.R. 32-1.  The parties reserve their rights to submit designations for any witness that a party indicates it will call live but who does not appear or is withdrawn as a live witness.

a)  The Parties may offer designated deposition testimony at trial, subject to objections to admissibility and any other objections.  A

- 17 -

party's decision not to introduce some or all of the deposition testimony of a witness shall not be commented upon at trial.

b) A party intending to offer a witness by deposition shall provide the other party with a list of final deposition designations (from the previously designated testimony, including counter-designations) it intends to introduce by 7:00 p.m. PT two calendar days before the deposition testimony is expected to be read or played in Court. The Parties will meet and confer on any objections by 10:00 p.m. PT the same day.

c) Disputed designations shall be submitted to the Court by the party offering the testimony by 8:00 a.m. PT on the day before such deposition testimony is expected to be read or played in Court, except disputed designations expected to be read or played in Court on the first day of trial shall be submitted that day. The submissions of disputed designations to the Court shall include highlighted copies of the disputed materials and an itemized list of the remaining objections.

d) The party offering the deposition testimony will provide a final video to be played, if applicable, by 10:00 p.m. the night before it is expected to be played in Court. Regardless of whether deposition testimony is read or played by video, the time available for each party's trial presentation shall be reduced by the length of its own designations, counter-designations, and rebuttal designations.

e) The Parties will meet and confer to remove irrelevant and redundant material such as objections and colloquy between counsel when the deposition is read or viewed at trial to the extent feasible.

- 18 -
[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

f)   Any party may use as a counter designation deposition testimony that was previously designated by another party (subject to any objection of the designating party), to the same effect as if it had initially designated the testimony as its own.

g)   Prior to playing any deposition testimony, the party offering the testimony shall provide the court reporter with an excerpt of the relevant transcript with the relevant designations highlighted.

h)   Any deposition testimony may be used at trial for the purpose of impeachment, regardless of whether a party identified that testimony on its list of deposition designations, if the testimony is otherwise competent for such purpose.

i)   In order to reduce the number of duplicative exhibits, where a deposition excerpt refers to a document by exhibit number and that identical document, including any redactions, was also marked as a different exhibit number, a party may substitute one exhibit for another.

## DEMONSTRATIVES

22.   The Parties have agreed to a procedure with respect to demonstrative exhibits that does not require demonstrative exhibits to be included on the trial exhibit lists.

a)   Demonstratives are to be used for illustrative purposes only and will not be entered into evidence.  Following the conclusion of trial, demonstratives shown to the jury may be lodged with the Court.  The Parties do not waive any objection to the admissibility of evidence cited or referenced in any demonstrative exhibit.

b)   For purposes of disclosure of demonstratives to be used during direct examination to the other party, a party shall provide by

- 19 -

7:00 p.m. PT the day before the party intends to use the demonstrative either: (1) a color PDF or PowerPoint copy of the demonstrative exhibit it is intending to use; or (2) for videos or animations, a digital interactive format, including, as applicable, flash format, PPT format, MPEG or other video format, of demonstrative video or animation it is intending to use.  Further, to the extent necessary, the Parties will confer to the extent they are unable to provide a demonstrative in the specified format.  For irregularly sized physical demonstrative exhibits, the party seeking to use it shall provide a color representation in 8.5" x 11" PDF format.

c)  For each demonstrative exhibit that is based in whole or in part on an admissible trial exhibit, the party intending to use the demonstrative exhibit will disclose, either on the face of the demonstrative exhibit or in an accompanying writing provided at the time the demonstrative exhibit is disclosed to the opposing party, all trial exhibits that form the basis of the demonstrative exhibit.

d)  The provisions regarding the exchange of demonstrative exhibits do not apply to demonstrative exhibits created during testimony, demonstrative exhibits to be used for cross examination, or demonstrative exhibits to be used in closing statements, none of which need to be provided to the other side in advance of their use.  The Parties further agree that notice of a party's intended use of enlargements of trial exhibits and/or deposition testimony and of ballooning, excerption, highlighting, jumping-to-a-page, or other emphasis of the particular trial exhibit and/or deposition testimony, need not be provided to the other side in advance of

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

their use, subject to the Parties' evidentiary objections and compliance with the provisions of this Pretrial Order governing the use of trial exhibits and/or deposition testimony.

### ORDER OF PRESENTATION OF EVIDENCE

23. Unless the Court specifies otherwise, the order of presentation of evidence will generally follow the burden of proof, as stated below:

    (a) Opening statements (Plaintiffs' opening statement first, followed by GEO's opening statement, and then by Spartan's opening statement);

    (b) Plaintiffs' presentation of evidence for issues for which Plaintiffs bear the burden of proof (Plaintiffs' case-in-chief);

    (c) GEO's presentation of evidence rebutting Plaintiffs' presentation of evidence in support of GEO's case-in-chief (GEO's rebuttal);

    (d) Spartan's presentation of evidence rebutting Plaintiffs' presentation of evidence in support of Spartan's case-in-chief (Spartan's rebuttal);

    (e) Plaintiffs' presentation of evidence rebutting Defendants' presentation of evidence in support of Defendants' cases-in-chief (Plaintiffs' rebuttal); and

    (f) Closing arguments (Plaintiffs first, followed by GEO, then by Spartan, and ending with Plaintiffs' rebuttal).

### PENDING MOTIONS AND DISPUTES

24. The following law and motion matters and motions in limine, and no others, are pending for the Court's decision in advance of the Phase One trial, as identified in the Parties' joint filing on January 19, 2026 (ECF 496):[2]

---

[2] Plaintiffs no longer request a ruling prior to Phase One on Plaintiffs' Motion to Strike Defendants' Undisclosed Witnesses (ECF 405) given the witnesses identified in Defendants' witness lists and the parties' stipulation in paragraph 33 below.

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

a)     Plaintiffs' Motion in Limine No. 1 to Exclude Mention of Criminal History (ECF 394)

b)     Plaintiffs' Motion in Limine No. 2 to Exclude Evidence and Argument of EPA Label Approval (ECF 396)

c)     Plaintiffs' Motion for a Juror Questionnaire (ECF 395)

d)     GEO's Motion in Limine No. 2 to Exclude Evidence of EPA Investigation and Allegations (ECF 406)

e)     GEO's Motion in Limine No. 5 to Exclude Evidence of the Preliminary Injunction from *Hernandez Roman, et al. v. Alejandro Mayorkas, et al.*; Case No. 5:20-CV-00768-TJH-PVC (ECF 407)

f)     Spartan's Motion in Limine No. 1 to Exclude Hearsay Statements that Dispensers were set to "2 Ounces Per Gallon" (ECF 397)

g)     Spartan's Motion in Limine No. 2 to Preclude Improper Lay Opinions on Technical Subjects (ECF 403)

h)     Spartan's Motion in Limine No. 3 to Require Accurate Regulatory Terminology for HDQ Neutral: Refer to it as an "Antimicrobial Pesticide," Not Generically a "Pesticide" (ECF 398)

i)     Spartan's Motion in Limine No. 4 to Exclude Testimony or Argument that the EPA-Approved Label Was "Defective" or Should Have Contained Different/Additional Warnings (ECF 399)

j)     Spartan's Motion in Limine No. 5 to Exclude Failure to Warn Evidence or Argument for Any Plaintiff Who Did Not Read, See, or Receive the Label or Warnings (ECF 402)

//

//

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

**OTHER ISSUES**

25. Pursuant to Federal Rule of Evidence 615, the Parties request that the Court prevent fact witnesses, other than witnesses who have already testified and been excused because they are not expected to be further called, from hearing the testimony of other witnesses.

26. The operative Protective Order governing confidentiality (ECF 166), insofar as it restricts the dissemination and use of "Protected Information" (documents marked "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL"), shall not apply to any documents, evidence, or argument presented in open court. If either party wishes for the courtroom to be sealed for the presentation of any documents, evidence, or argument, they must file a motion in advance of the introduction of that subject matter to request such sealing.

27. Two Plaintiffs (Ligaya Ronduen and Carlos Castillo) have been removed from the United States and will be testifying remotely. The Parties agree that these two Plaintiffs may be sworn in by a domestic oath officer as though their testimony were taking place within the United States. GEO's agreement is contingent on Plaintiffs bearing any risk regarding technical problems that may arise.

28. Based on the Parties' witness lists (ECF 503, 506, 507), Plaintiffs ask the Court to confirm that any witness who will testify live will do so in-person absent good cause. Plaintiffs will object to the remote testimony of any Defendant employee witness absent good cause.

29. Certain Plaintiffs will require certified Spanish-language interpreters for their testimony. Plaintiffs will secure the interpreters before trial.

30. Plaintiffs seek to subpoena Tarren Wethington, a Spartan employee, to testify in person for trial. Both Plaintiffs and Spartan have designated Mr. Wethington as a witness that they "may call" live at trial. (ECF 506, 507.) Mr. Wethington lives in Arizona but manages the Western Region of the United States, and Plaintiffs believe he regularly transacts business in person within 100 miles of

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

the Court.  Fed. R. Civ. P. 45(c)(1)(A).  Alternatively, given Mr. Wethington's relevance to the case and his proximity to California, Plaintiffs would subpoena him under Fed. R. Civ. P. 45(c)(1)(B)(ii).  If there is any possibility that Spartan "may call" Mr. Wethington as a live witness, as its witness list states, Plaintiffs ask the Court to require that Spartan make him available for Plaintiffs' case-in-chief, as well. See Fed. R. Evid. 611(a) ("The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to (1) make those procedures effective for determining the truth; [and] (2) avoid wasting time.")  Spartan disputes Plaintiffs' assertion that Mr. Wethington regularly transacts business within 100 miles of the Court and objects that he is beyond the Court's subpoena power.

31.    Plaintiffs seek to subpoena Lucia Meza, Mary Wise-McCormick, Joshua Johnson, and James Janecka–all GEO employees–to testify in person for trial.  All were designated as "will call" witnesses for live testimony at trial either by Plaintiffs or GEO.  (ECF 503, 506.)  Ms. Meza, Ms. Wise-McCormick, and Mr. Johnson all work in person at the Adelanto facility, which is within 100 miles of the Court.  Fed. R. Civ. P. 45(c)(1)(A).  Mr. Janecka is the Regional Vice President of the Western Region for GEO, which includes the Adelanto facility.  Plaintiffs requested that GEO's counsel confirm whether they will accept service of Plaintiffs' trial subpoenas for these four witnesses.  GEO has not responded.

32.    Spartan has designated four of Plaintiffs' former attorneys in this matter as "may call" witnesses: Pilar Gonzalez Morales, Vanessa Domenichelli, Amelia Piazza, and Shubhra Shivpuri.  (ECF 507.)

a. Plaintiffs' position: Plaintiffs object to Spartan's untimely and improper designation of these witnesses.  Spartan failed to disclose these witnesses at any point in this litigation, including in Spartan's November 2025 trial witness list, and thus cannot call them at trial.  (*See* ECF 405; *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862 (9th Cir. 2014)

(affirming exclusion of nondisclosed witnesses).) Nor can Spartan meet its burden to overcome the presumption against obtaining testimony from Plaintiffs' former counsel. *See Monster Energy Co. v. Vital Pharm., Inc.*, No. 5:18-CV-01882-JGB (SHKx), 2020 WL 2405295, at *8 (C.D. Cal. Mar. 10, 2020); *id.* at *9 ("discovery sought from opposing counsel is universally disfavored"). Spartan's sole purpose for calling these attorneys is to establish the date(s) of Plaintiffs' initial contact with and formal retention of counsel, both of which Spartan may obtain from Plaintiffs at trial. *See id.* at *7, *11 (to obtain testimony for former counsel, party seeking testimony must demonstrate that "no other means exist to obtain the information" than former counsel).

b. Spartan's position: Spartan designated four former counsel from the Social Justice Legal Foundation who were on the attorney caption of the Complaint (ECF 1) solely as "may call" to establish two non-privileged facts: the date of initial contact and the date of formal retention for each Plaintiff. These dates are directly relevant to Phase One's delayed-discovery and inquiry-notice issues because, once a plaintiff suspects wrongdoing, the discovery rule charges the plaintiff with knowledge a reasonable investigation would have revealed, and the timeline of contacting and retaining counsel is probative of when suspicion and investigation began. *Fox*, 35 Cal.4th at 808; CACI 455 (2026 Edition). These dates are also relevant under imputed-knowledge principles: California law recognizes actual and constructive notice and imputes notice to principals from their agents, including attorneys; thus, non-privileged identity-and-date facts about the attorney-client relationship bear on constructive notice and accrual. Cal. Civ. Code §§ 18-19, 2332; *E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal.App.4th 1308, 1318-19. If Plaintiffs

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

will stipulate to those dates or provide short declarations attesting to them, Spartan will withdraw these "may call" designations.

33.     For this phase of trial alone, and to obviate the need for multiple witnesses whose only purpose is to lay foundation, the Parties stipulate to authenticity (FRE 901) and the requirements for the business records exception to hearsay (FRE 803(6)) for all of Plaintiffs' medical records dated 2020 or later that are included in the Joint Exhibit List.  (ECF 504, 504-1.)  As a result, GEO withdraws its designation of witnesses 10 through 22 from its witness list.  (ECF 503.)  This stipulation does not affect or waive objections as to any subsequent proceeding or phase of trial.

34.     Plaintiffs intend to ask the Court for a decision on the appropriate trigger date for the statute of limitations for Plaintiffs' claims against Spartan: November 4, 2022 (as Plaintiffs argue) or January 6, 20234 (as Spartan argues), as discussed in paragraphs 8 and 9 above.

35.     Defendants contend that informing the jury of the name of one of Plaintiff's Firms, the Social Justice Legal Foundation, is unduly prejudicial as it infers a motive for the bringing of the action and that the matter is being brought to obtain social justice.  It impermissibly infers that Plaintiffs' counsel are vouching for their client's motives.  Plaintiffs' position is that there is no support for Defendants' request (which would apply equally to organizations like the American Civil Liberties Union or the NAACP) and that this request is an untimely and improper motion in limine.

## **CONCLUSION**

36.     The foregoing admissions having been made by the Parties, and the Parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the Phase One trial of this cause, unless modified to prevent manifest injustice.

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER

Dated:  February 2, 2026

Respectfully submitted,
SOCIAL JUSTICE LEGAL FOUNDATION


By:  */s/ Sara Haji*
Sara Haji

*Attorneys for Plaintiffs*


HUESTON HENNIGAN LLP

Dated:  February 2, 2026

By:  */s/ Robert N. Klieger*
Robert N. Klieger
Emily Michael Munson

*Attorneys for Plaintiffs*


Dated:  February 2, 2026

PIERSON FERDINAND LLP

By:  */s/ David D. Mesa*
Matthew H. Weiner
David D. Mesa

*Attorneys for Defendant and Third-Party Defendant Spartan Chemical Company, Inc.*


EDLIN GALLAGHER HUIE + BLUM

Dated:  February 2, 2026

By:  */s/ Fred M. Blum*
Fred M. Blum
Michael E. Gallagher
Daniel Trowbridge

*Attorneys for Defendant and Third-Party Plaintiff The GEO Group, Inc.*

- 27 -
[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER