**PIERSON FERDINAND LLP**
DAVID D. MESA, State Bar No. 257488
MATTHEW H. WEINER, State Bar No. 236394
2100 Geng Road, Suite 210
Palo Alto, CA 94303
Telephone: 415.915.4415
*david.mesa@pierferd.com*
*matthew.weiner@pierferd.com*

Attorneys for Defendant and Third-Party Defendant
SPARTAN CHEMICAL COMPANY, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| LIGAYA RONDUEN, et al.,<br>Plaintiffs,<br>v.<br><br>THE GEO GROUP, INC., a Florida corporation, and SPARTAN CHEMICAL COMPANY, INC., an Ohio corporation,<br>Defendants. | Case No.: 5:23-cv-00481-JGB-ACCV<br><br>[CLASS ACTION]<br><br>Judge: Hon. Jesus G. Bernal |
| THE GEO GROUP, INC., a Florida corporation,<br>Third-Party Plaintiff,<br><br>v.<br><br>SPARTAN CHEMICAL COMPANY, INC. and ROES 1-10,<br>Third-Party Defendants. | **SPARTAN CHEMICAL COMPANY, INC.'S OPPOSITION IN PART TO PROPOSED INTERVENOR'S MOTION TO UNSEAL COURT RECORDS (ECF NO. 544); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: December 7, 2026<br>Time: 9:00 a.m.<br>Place: Courtroom 1, Riverside<br><br>Complaint Filed: March 20, 2023<br>FAC Filed: January 6, 2025<br>Trial Date: None set (class settlement preliminarily approved September 25, 2026, Dkt. 541) |
| INLAND COALITION FOR IMMIGRANT JUSTICE,<br>Proposed Intervenor. | |

TO THE COURT, ALL PARTIES, AND PROPOSED INTERVENOR INLAND COALITION FOR IMMIGRANT JUSTICE AND THEIR COUNSEL OF RECORD:

Defendant and Third-Party Defendant Spartan Chemical Company, Inc. hereby submits its Opposition in Part to the Motion to Unseal Court Records filed by Proposed Intervenor Inland Coalition for Immigrant Justice (ECF No. 544), noticed for hearing on December 7, 2026, at 9:00 a.m., in Courtroom 1 of the above-entitled Court, located at 3470 Twelfth Street, Riverside, California 92501. This Opposition is based on the Memorandum of Points and Authorities below, the concurrently filed Declarations of Amy Swinford, Justin Black, and David D. Mesa and their exhibits, the records and files in this action, and such argument as the Court may permit.

Dated: November 16, 2026

PIERSON FERDINAND LLP

By: /s/ David D. Mesa
David D. Mesa
Matthew H. Weiner
Attorneys for Defendant and Third-Party Defendant
SPARTAN CHEMICAL COMPANY, INC.

## TABLE OF CONTENTS


I. INTRODUCTION ........................................................................ 1

II. BACKGROUND ........................................................................ 2

A. The Sealed Exhibits and the Court's Prior Orders ................................ 2

B. Spartan's Pre-Motion Disclosure of Its Narrow Position .................... 3

C. The Information Spartan Asks the Court to Redact ......................... 4

III. ARGUMENT ........................................................................ 6

A. Spartan Did Not Forfeit the Right to Be Heard, and the Court Should Decide the Three Redaction Categories on the Merits ......................... 6

B. Spartan Carries the Burden, Does Not Rely on the Protective Order, and Meets the Compelling Reasons Standard for Each Redaction ............. 8

C. The Invoice Pricing Fields Warrant Redaction ...................................... 9

D. The Price-Hold Sentence, the Reporting Metrics, the Equipment Term, and the Customer-Specific Fulfillment, Freight, and Payment Terms in the Statement of Work Warrant Redaction ........... 11

E. Employee Contact Information Warrants Redaction........................... 15

F. The Public Interest in Detention Conditions Is Fully Served by Unsealing Everything Except the Redacted Fields ............................. 18

G. Spartan Does Not Oppose Intervention ............................................... 19

IV. CONCLUSION ........................................................................ 19

# TABLE OF AUTHORITIES

## Cases

*A.H. v. Wynn Las Vegas, LLC*, No. 2:24-cv-01041-GMN-NJK, 2026 WL 674499 (D. Nev. Mar. 9, 2026) .......... 15

*AIU Ins. Co. v. McKesson Corp.*, 598 F. Supp. 3d 774 (N.D. Cal. 2022) .......... 7

*Alpha & Omega Semiconductor Ltd. v. Force MOS Tech. Co.*, 840 F. Supp. 3d 545 (N.D. Cal. 2026) .......... 9

*Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016) (en banc) .......... 15

*Avila v. Ford Motor Co.*, 821 F. Supp. 3d 1113 (N.D. Cal. 2026) .......... 14

*Bailey v. Rite Aid Corp.*, 338 F.R.D. 390 (N.D. Cal. 2021) .......... 8

*Bloom v. Zuffa, LLC*, No. 2:22-cv-00412-RFB-BNW, 2026 WL 2031777 (D. Nev. July 13, 2026) .......... 9

*Brydges v. Lewis*, 18 F.3d 651 (9th Cir. 1994) .......... 6

*Civil Beat L. Ctr. for the Pub. Int., Inc. v. Maile*, 117 F.4th 1200 (9th Cir. 2024) .......... 18

*Confederated Tribes of Siletz Indians of Or. v. Weyerhaeuser Co.*, 340 F. Supp. 2d 1118 (D. Or. 2003) .......... 11

*Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092 (9th Cir. 2016) .......... 8

*Elec. Frontier Found. v. Off. of the Dir. of Nat'l Intel.*, 639 F.3d 876 (9th Cir. 2010) .......... 15

*Empower Clinic Servs., L.L.C. v. Legitscript L.L.C.*, No. 3:25-cv-00514-AB, 2025 WL 1099105 (D. Or. Apr. 11, 2025) .......... 15

*Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003) .......... 8

*Gonzalez v. The GEO Group, Inc.*, No. 2:22-cv-04014-JGB (ACCVx) (C.D. Cal.) .......... 2, 7, 17

*GoPro, Inc. v. 360Heros, Inc.*, 291 F. Supp. 3d 1060 (N.D. Cal. 2017) .......... 7

*Gutierrez v. Converse Inc.*, No. CV 23-6547-KK-MARx, 2024 WL 3075256 (C.D. Cal. June 6, 2024) .... ........ 7

*In re Elec. Arts, Inc.*, 298 F. App'x 568 (9th Cir. 2008) ........ 9, 12, 13

*In re Meta Pixel Tax Filing Cases*, 826 F. Supp. 3d 1217 (N.D. Cal. 2026) .......... 18

*In re Midland Nat'l Life Ins. Co. Annuity Sales Pracs. Litig.*, 686 F.3d 1115 (9th Cir. 2012) .. ........ 8, 14

*In re PFA Ins. Mktg. Litig.*, 696 F. Supp. 3d 788 (N.D. Cal. 2021) ……….......... 8

*Johnson v. Zuffa, LLC*, No. 2:21-cv-01189-RFB-BNW, 2026 WL 2138056 (D. Nev. July 23, 2026) ....... ........ 15

*Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172 (9th Cir. 2006) .......... 6, 8, 11

*Kelly v. Wengler*, 979 F. Supp. 2d 1243 (D. Idaho 2013) ………….......... 18

*Kurin, Inc. v. ICU Med., Inc.*, No. 8:24-cv-00564-FWS-ADS, 2024 WL 5423824 (C.D. Cal. Dec. 10, 2024) ........ 7, 15

*Meek v. SkyWest, Inc.*, 562 F. Supp. 3d 488 (N.D. Cal. 2021) ………….......... 7

*Mission Wellness Pharmacy LLC v. Caremark LLC*, 641 F. Supp. 3d 673 (D. Ariz. 2022) ... ........ 10

*Nightingale v. U.S. Citizenship & Immigr. Servs.*, 507 F. Supp. 3d 1193 (N.D. Cal. 2020) ... ........ 15

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978) ........ 8, 13

*Perez v. City of Fresno*, 482 F. Supp. 3d 1037 (E.D. Cal. 2020), *reconsideration denied*, 519 F. Supp. 3d 718 (E.D. Cal. 2021) ........ 17

*Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665 (9th Cir. 2010) ........ 6

*Pomares v. Dep't of Veterans Affs.*, 113 F.4th 870 (9th Cir. 2024) ........ 15

*Primus Grp., Inc. v. Inst. for Env't Health, Inc.*, 395 F. Supp. 3d 1243 (N.D. Cal. 2019) .... ........ 9, 11

*Pulse Elecs., Inc. v. U.D. Elec. Corp.*, 530 F. Supp. 3d 988 (S.D. Cal. 2021) .... 9, 12

*Rabin v. Google LLC*, No. 22-cv-04547-PCP, 2026 WL 2392370 (N.D. Cal. Aug. 17, 2026) . ............................................................................................... 11, 12
*Raher v. Fed. Bureau of Prisons*, 749 F. Supp. 2d 1148 (D. Or. 2010) .................. 18
*San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096 (9th Cir. 1999) ...... 18
*Smith v. Google, LLC*, 839 F. Supp. 3d 809 (N.D. Cal. 2026) ................................. 7
*SteppeChange LLC v. VEON Ltd.*, 354 F. Supp. 3d 1033 (N.D. Cal. 2018) ........... 12
*TML Recovery, LLC v. Cigna Corp.*, 714 F. Supp. 3d 1214 (C.D. Cal. 2024) .... 9, 14
*UCP Int'l Co. v. Balsam Brands Inc.*, 252 F. Supp. 3d 828 (N.D. Cal. 2017) .......... 6
*United States v. Warren*, 601 F.2d 471 (9th Cir. 1979) ........................................... 6
*Vrugtman v. It's Just Lunch Int'l LLC*, No. EDCV 20-2352 JGB (SPx), 2023 WL 6369765 (C.D. Cal. Aug. 25, 2023) ………………………………………......... 7
*Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652 (N.D. Cal. 2021) ……………….......... 9

**Rules**

C.D. Cal. L.R. 7-12 ......................................................................................... 6
C.D. Cal. L.R. 79-5.2.2(a) ............................................................................... 2
C.D. Cal. L.R. 79-5.2.2(b)(i) ........................................................................ 2, 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Spartan Chemical Company, Inc. ("Spartan") does not ask the Court to keep a single Spartan document sealed. Before Inland Coalition for Immigrant Justice ("ICIJ") filed its motion, Spartan told ICIJ in writing, document by document, that it consents to public filing of every Spartan-designated record identified in ICIJ's table, subject to three line-level redactions. (Declaration of David D. Mesa ("Mesa Decl.") ¶¶ 3-7 & Ex. A.) Spartan maintains that position here. Every sentence of every brief, every e-mail, every inspection report, every label, and every expert report will be public. The public will see what Spartan sold, to whom, when, in what quantities, how it was labeled, how it was dispensed, and what Spartan's employees said about it.

Spartan asks the Court to redact only three categories of information, none of which bears on any question the Court decided or any question ICIJ says the public needs to understand: (1) the pricing fields on Spartan's customer invoices (SPARTAN_000009) and on two order confirmations for the same account (SPARTAN_002143; SPARTAN_002145), and the dollar amounts on an internal 2018 Spartan product report for the same account (SPARTAN_001965); (2) the price-hold sentence (SPARTAN_000046), the reporting-metrics list (SPARTAN_000047), the equipment term on SPARTAN_000047, and four narrow passages setting out customer-specific fulfillment, freight, and payment terms (SPARTAN_000045) in the Statement of Work; and (3) the individual e-mail addresses, mobile and direct-dial telephone numbers, extensions, and LinkedIn profile addresses of Spartan employees, while leaving every employee's name and title public. Each redaction is supported by a particularized declaration from Spartan's International & Risk Manager, tied clause by clause and page by page to the record. (Declaration of Amy Swinford ("Swinford Decl.") ¶¶ 6-36.) Spartan's Chief Financial Officer, Justin Black, has submitted a declaration that adds to, and does not replace, the Swinford Declaration on pricing, price-hold, equipment, fulfillment, freight, payment, reporting, and invoice matters

within his responsibility for Spartan's pricing, margin, and cost analysis. (Declaration of Justin Black ("Black Decl.") ¶¶ 1-2.) Both declarations are filed publicly in their entirety.

ICIJ's principal response is that Spartan forfeited any right to be heard because it did not file a declaration within four days of Plaintiffs' 2025 sealing applications. That argument asks the Court to treat a permissive local rule as a mandatory forfeiture, to disregard the Court's own orders granting those applications, and to unseal the personal mobile phone numbers of non-party employees who received threats over this very subject as a sanction for a filing that was never theirs to make. The Court has discretion to decide the access question on the merits, and it should do so here, as it did in *Gonzalez v. The GEO Group, Inc.*, No. 2:22-cv-04014-JGB (ACCVx), Dkt. 143 at 6 n.2 (C.D. Cal. Apr. 7, 2026) (Mesa Decl. Ex. E). On the merits, the three narrow categories satisfy the compelling reasons standard. Spartan does not oppose ICIJ's motion to intervene for the limited purpose of seeking access.

Spartan asks the Court to proceed on the existing record and does not make any new sealed filing. The unredacted documents are already provisionally sealed on the docket at ECF Nos. 315 and 336. (Mesa Decl. ¶ 12.) The Court can therefore rule on the existing seal: grant ICIJ's motion in part, keep under seal only the specific passages shown in the redacted exhibits and identified by ECF number, Bates page, and category in the redaction index (Mesa Decl. Exs. B-D), and unseal everything else. Public redacted versions of the exhibits are filed with this Opposition. (Mesa Decl. ¶¶ 8-10 & Exs. B-D.) No application under Local Rule 79-5.2.2(a) is needed, and Spartan makes none.

## II. BACKGROUND

### A. The Sealed Exhibits and the Court's Prior Orders.

Under the parties' stipulated procedure, the filing party provisionally lodged under seal any material another party had designated confidential, and the designating party was to support continued sealing by declaration under Local Rule 79-5.2.2(b)(i).

(ECF No. 544 at 9-10 (citing Dkt. 253).) Plaintiffs lodged Spartan-designated documents with their class certification papers (Dkts. 314, 315) and their oppositions to Defendants' motions for summary judgment (Dkts. 335, 336). Spartan did not file a supporting declaration. (Mesa Decl. ¶ 2.) The Court nevertheless granted both applications (Dkt. 365 (granting Dkt. 314); Dkt. 491 (granting Dkt. 335)), as ICIJ acknowledges. (ECF No. 544 at 6.) ICIJ's motion identifies no Spartan-designated document among the Dkt. 445 materials. (ECF No. 544-2 at 7.) The Court granted preliminary approval of the class settlement on September 25, 2026. (Dkt. 541.)

**B. Spartan's Pre-Motion Disclosure of Its Narrow Position.**

ICIJ's counsel initiated a conference on September 1, 2026, and counsel met on September 10 and September 23, 2026. (Mesa Decl. ¶¶ 3-5.) The September 23 conference and Spartan's written follow-up were Spartan's meet and confer on the scope of any unsealing: Spartan explained that it would not ask the Court to keep any Spartan document sealed in its entirety and would consent to unsealing subject only to three narrowly tailored categories of redaction. (*Id.* ¶ 5.) On October 2, 2026, Spartan delivered a redline of ICIJ's own table applying those categories document by document, including, for the invoices and both order confirmations, consent "subject to redaction of unit pricing, extended pricing, total value, and payment/discount terms, and employee personal information." (*Id.* ¶¶ 6, 14 & Ex. A.) ICIJ did not accept those redactions. Three days later, it filed this motion. (*Id.* ¶ 6.) ICIJ's Exhibit 1 records four of those documents (SPARTAN_000050, SPARTAN_017540, SPARTAN_017545, and SPARTAN_003612) as "Not Opposed" without the employee contact-information redaction to which Spartan conditioned its consent, and ICIJ's brief characterizes Spartan as agreeing that "a dozen" records should be unsealed without qualification. (ECF No. 544 at i-ii, 8; ECF No. 544-2 at 8; Mesa Decl. ¶ 7.) Spartan corrects the record here: Spartan consents to unsealing those four documents subject only to the employee contact-information redaction described in Part III.E.

### C. The Information Spartan Asks the Court to Redact.

**Invoices (SPARTAN_000009; Dkt. 315-46; Dkt. 336-52).** Spartan asks the Court to redact four data fields on each invoice line: unit price, extended price, tax, and total invoice value. Product names, product codes, quantities, weights, units, ship dates, ship-to locations, invoice numbers, terms of sale, and the sales-representative field remain public. (Swinford Decl. ¶¶ 19-25; Black Decl. ¶¶ 9-11; Mesa Decl. ¶ 9 & Ex. C.) These are the same four fields Spartan itself redacted when it publicly filed HDQ Neutral invoices to Adelanto with its own summary judgment papers. (Dkt. 317-7 (Schalitz Decl.) Ex. D; Swinford Decl. ¶ 20.) **Product report (SPARTAN_001965; Dkt. 336-63).** Plaintiffs' Exhibit 121 includes an internal Spartan "Product Lookup" report dated October 10, 2018, listing products purchased by the two GEO-Adelanto accounts from January 1 through October 10, 2018. Spartan asks the Court to redact only the dollar amounts on that page: the dollar value of each product line, the "Distrib. End User Credit" amount, and the two grand-total amounts. Product names, part codes, pack sizes, quantities, gallons, and weights remain public. (Swinford Decl. ¶¶ 6, 19-22, 25; Black Decl. ¶¶ 2, 9, 11; Mesa Decl. ¶ 10 & Ex. D-12.)[1] **Order confirmations (SPARTAN_002143; SPARTAN_002145; Dkts. 336-50, 336-51).** Spartan seeks the same narrow pricing redactions on the two GEO-Adelanto order confirmations produced as SPARTAN_002143 and SPARTAN_002145 (Pls.' Exs. 103 and 104): unit prices, extended values, line totals, tax, and total order values, with quantities and product descriptions left public. (Mesa Decl. ¶ 10 & Exs. D-9, D-10; Swinford Decl. ¶ 20; Black Decl. ¶¶ 9, 11.)

[1] Spartan's October 2, 2026 positions to ICIJ proposed only employee contact-information redactions for Plaintiffs' Exhibit 121. (Mesa Decl. ¶ 14 & Ex. A.) After further review in preparing this Opposition, Spartan determined that the SPARTAN_001965 dollar figures disclose customer-specific pricing of the same kind as the invoices and order confirmations, for which Spartan's October 2 positions had already proposed pricing redactions, and added them. The request remains narrow and reaches the dollar figures only. (Mesa Decl. ¶¶ 10, 14; Swinford Decl. ¶¶ 19-22; Black Decl. ¶¶ 9, 11.)

**Statement of Work (SPARTAN_000044 to SPARTAN_000049; Dkt. 315-12; Dkt. 336-17).** The six-page Statement of Work governs Spartan's supply of housekeeping, laundry, warewash, floor-care, carpet-care, food-service, and drain-maintenance chemicals to GEO facilities throughout the United States from December 1, 2019 through November 30, 2022. (Swinford Decl. ¶ 10; Black Decl. ¶ 5.) Spartan asks the Court to redact (a) the second sentence of the "PRICES" paragraph, which sets the price-hold term (SPARTAN_000046), (b) the bulleted list of metrics in the REPORTING paragraph (SPARTAN_000047), (c) the first sentence of the "DISPENSER AND CHEMICAL CAGE AGREEMENT" provision on SPARTAN_000047, which states the equipment term (Swinford Decl. ¶ 18; Black Decl. ¶ 6), and (d) four narrow passages on SPARTAN_000045: the passage describing order routing and the delivery commitment and identifying where the servicing distributors are listed; the passage describing the proof-of-delivery and invoicing process; the text under "SHIPPING INSTRUCTIONS," which states the freight-prepaid threshold and related freight terms; and the payment term. (Swinford Decl. ¶¶ 6, 18; Black Decl. ¶ 6; Mesa Decl. ¶ 8 & Ex. B.) Every other provision, including the intent, the ordering channels, minimum-order, remittance, lead-time, service-equipment-support, account-representation, quarterly-audit, training-materials, and roll-out provisions, and the remainder of the dispenser and cage provision, which are the provisions bearing on how HDQ Neutral was supplied and serviced, remains public, as do the headings of the ordering-process, shipping, and payment-terms provisions and the sentences of the "REPORTING" paragraph stating that GEO receives monthly usage reports at no cost and that Spartan hosts monthly review calls to address usage spikes. (Swinford Decl. ¶¶ 11-18; Black Decl. ¶¶ 6-8; Mesa Decl. Ex. B.)

**Employee contact information.** Across the Spartan-designated exhibits, Spartan asks the Court to redact only the direct-contact identifiers of Spartan employees: individual e-mail addresses, mobile and direct-dial telephone numbers,

extensions, and LinkedIn profile URLs. In one instance, Spartan also redacts a former employee's home street address appearing in an e-mail signature (Pls.' Ex. 117). Names, titles, the company's address, its published main, toll-free, and fax numbers, generic departmental mailboxes, and the substance of every communication remain public. (Swinford Decl. ¶¶ 26-27, 35; Mesa Decl. ¶ 10 & Ex. D.) Exhibit D-12 (Pls.' Ex. 121) also reflects the SPARTAN_001965 dollar-figure redactions described above.

## III. ARGUMENT

### A. Spartan Did Not Forfeit the Right to Be Heard, and the Court Should Decide the Three Redaction Categories on the Merits.

ICIJ rests its forfeiture argument on Local Rule 79-5.2.2(b)(i), Local Rule 7-12, and the parties' stipulated procedure. (ECF No. 544 at 8-12.) None of them compels the result ICIJ seeks.

*First*, the rules are permissive. Local Rule 79-5.2.2(b)(i) provides that a designating party's failure to file the required declaration *may* result in unsealing, and Local Rule 7-12 provides that the failure to file a required document *may* be deemed consent. The Ninth Circuit has held that even a local rule providing that a failure to respond *shall* constitute consent leaves the district court with discretion, because such fictional "consent" can be "withdrawn" by "permission" of the court given in its "discretion." *United States v. Warren*, 601 F.2d 471, 473 (9th Cir. 1979) (per curiam); *see Brydges v. Lewis*, 18 F.3d 651, 652 (9th Cir. 1994) (per curiam) (where a local rule permits but does not require granting a motion for non-response, the district court retains discretion). ICIJ itself relies on *Warren* (ECF No. 544 at 11), but *Warren* confirms the Court's discretion; it does not foreclose it.

*Second*, the Court has already exercised that discretion. Notwithstanding the absence of Spartan declarations, the Court granted Plaintiffs' applications and maintained the records under seal. (Dkts. 365, 491.) The Court therefore did not treat Spartan's silence as consent to public filing. ICIJ argues that those orders lack findings

(ECF No. 544 at 6, 18), and Spartan agrees that the Court must now "articulate the factual basis for its ruling." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006); *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 679 (9th Cir. 2010). That is a reason to decide the question now on a proper record, not a reason to decide it by default.

*Third*, courts in this Circuit routinely permit a designating party to make a late showing rather than ordering immediate unsealing. *See UCP Int'l Co. v. Balsam Brands Inc.*, 252 F. Supp. 3d 828, 835-36 (N.D. Cal. 2017) (denying sealing where the designating party's declarations were insufficient as to some documents and absent as to others, but leaving the documents provisionally sealed and permitting a supplemental declaration within fourteen days); *AIU Ins. Co. v. McKesson Corp.*, 598 F. Supp. 3d 774, 799-800 (N.D. Cal. 2022) (permitting renewed motion to seal within five days after designating party filed nothing); *GoPro, Inc. v. 360Heros, Inc.*, 291 F. Supp. 3d 1060, 1076 (N.D. Cal. 2017) (granting seven days to submit declaration). This Court took the same approach in *Gonzalez*, where it determined that a GEO sealing application had never been adjudicated and kept the provisionally sealed records under seal "until it can adjudicate" that application "together with the Motion to Unseal." *Gonzalez*, Dkt. 143 at 6 n.2 (Mesa Decl. Ex. E).

*Fourth*, ICIJ's authorities involved initial sealing applications, not a nonparty's later motion to unseal answered by a narrow, fully supported showing. *See* ECF No. 544 at 11-12 (citing *Vrugtman v. It's Just Lunch Int'l LLC*, No. EDCV 20-2352 JGB (SPx), 2023 WL 6369765, at *5 *(C.D. Cal. Aug. 25, 2023), and* Gutierrez v. Converse Inc.*, No. CV 23-6547-KK-MARx, 2024 WL 3075256, at* *3 (C.D. Cal. June 6, 2024)). The same is true of *Smith v. Google, LLC*, 839 F. Supp. 3d 809, 815-16 (N.D. Cal. 2026), and *Meek v. SkyWest, Inc.*, 562 F. Supp. 3d 488, 501 (N.D. Cal. 2021), in which the court denied an initial application after the designating party filed nothing. Here the Court is adjudicating a motion to unseal for the first time, and it has before it the declaration that was missing from those cases.

*Fifth*, a forfeiture ruling would fall hardest on persons who were never parties to any default. The contact information of Spartan's employees implicates the privacy interests of non-party individuals, and courts in this District protect those interests as a matter of course. *Kurin, Inc. v. ICU Med., Inc.*, No. 8:24-cv-00564-FWS-ADS, 2024 WL 5423824, at *3 (C.D. Cal. Dec. 10, 2024) (non-party employees "have privacy interests" in personnel and personal identifying information; sealing third-party e-mail addresses) (internal quotation marks and citation omitted). Spartan does not issue separate work telephones, so the mobile numbers in the exhibits are the employees' personal mobile phone numbers. (Swinford Decl. ¶ 34.) Unsealing those numbers as a consequence of a corporate filing lapse would serve no purpose of the access doctrine.

**B. Spartan Carries the Burden, Does Not Rely on the Protective Order, and Meets the Compelling Reasons Standard for Each Redaction.**

Spartan accepts that it bears the burden of justifying each redaction, *Kamakana*, 447 F.3d at 1178-79, 1182, and that its confidentiality designations under the Protective Order (Dkt. 166) do not by themselves justify sealing. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1134-36 (9th Cir. 2003). Spartan does not rely on the Protective Order or on reliance interests. It relies on the facts in the Swinford Declaration and the Black Declaration.

The governing standard depends on whether the motion to which a record is attached is "more than tangentially related to the merits." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016). The inquiry is made with respect to the particular material at issue, and some district courts have applied good cause to class certification materials. *See Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 395 (N.D. Cal. 2021) (compelling reasons not required to seal class certification materials); *In re PFA Ins. Mktg. Litig.*, 696 F. Supp. 3d 788, 796 (N.D. Cal. 2021) (same). The Court need not resolve that question, however, because each of Spartan's three redactions satisfies the compelling reasons standard. Compelling reasons exist

where court files might become "sources of business information that might harm a litigant's competitive standing," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978), or might otherwise "become a vehicle for improper purposes," *Kamakana*, 447 F.3d at 1179 (quoting *Nixon*, 435 U.S. at 598), and the Ninth Circuit has approved redaction of individuals' personal information under that standard. *Id.* at 1182, 1184 (affirming redaction of home addresses and Social Security numbers). Redaction of competitively sensitive and personal information, rather than wholesale sealing, is the remedy the Ninth Circuit itself has directed. *In re Midland Nat'l Life Ins. Co. Annuity Sales Pracs. Litig.*, 686 F.3d 1115, 1119-20 (9th Cir. 2012).

### C. The Invoice Pricing Fields Warrant Redaction.

Pricing terms are the type of information whose disclosure might harm a litigant's competitive standing. *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (unpublished). Courts in this Circuit consistently redact confidential unit pricing and related financial terms from summary judgment and class certification records. *See TML Recovery, LLC v. Cigna Corp.*, 714 F. Supp. 3d 1214, 1218, 1221-22 (C.D. Cal. 2024) (recognizing that confidential profit, cost, and pricing information may be sealed where disclosure could cause competitive disadvantage, though declining to seal terms central to the summary judgment motions); *Primus Grp., Inc. v. Inst. for Env't Health, Inc.*, 395 F. Supp. 3d 1243, 1267 (N.D. Cal. 2019) (sealing pricing practices not known to customers or competitors, where competitors could adjust their pricing and customers could use the information in negotiations); *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 699 (N.D. Cal. 2021) (redacting non-public suggested and minimum prices and pricing strategy); *Pulse Elecs., Inc. v. U.D. Elec. Corp.*, 530 F. Supp. 3d 988, 1031 (S.D. Cal. 2021) (sealing non-public profit, expenditure, and loss information); *Alpha & Omega Semiconductor Ltd. v. Force MOS Tech. Co.*, 840 F. Supp. 3d 545, 571 (N.D. Cal. 2026) (redacting pricing information and profit margins).

Spartan's showing supplies the specific causal chain courts require: what the information is, who could exploit it, how, and with what concrete harm. *See Bloom v. Zuffa, LLC*, No. 2:22-cv-00412-RFB-BNW, 2026 WL 2031777, at *5 (D. Nev. July 13, 2026). The invoices disclose Spartan's customer-specific, after-discount net prices for quaternary ammonium disinfectants and other institutional sanitation products. (Black Decl. ¶ 9; Swinford Decl. ¶¶ 19-21.) That information is not public and is shared only with the customer and, where applicable, the servicing distributor. (Black Decl. ¶¶ 4, 9; Swinford Decl. ¶¶ 5, 22.) Spartan maintains two levels of pricing, each with restricted access: distributor cost is available only to authorized distributors through a password-protected log-in to their distributor accounts on Spartan's website, and national-account pricing is provided to national-account customers only in the form Spartan physically provides to them, with no remote or online access. (Swinford Decl. ¶ 5; Black Decl. ¶ 4.) Spartan competes for institutional and government-facility chemical programs against several national manufacturers, including Ecolab and Diversey; a competitor holding Spartan's net invoice prices could use them to undercut Spartan in bids, and other institutional customers can use the figures to demand the same net price. (Black Decl. ¶¶ 3, 10; Swinford Decl. ¶¶ 4, 23-24.)

ICIJ will say the prices date from 2020. The age of pricing data is not dispositive; the question is whether the pricing mechanism remains in use and whether the historical data remain competitively meaningful. *Mission Wellness Pharmacy LLC v. Caremark LLC*, 641 F. Supp. 3d 673, 679-80 (D. Ariz. 2022) (age of data diminishes but does not eliminate the need for confidentiality; sealing older rates that competitors could use to project current ones, while unsealing an obsolete fee structure). Although Spartan no longer supplies HDQ Neutral to GEO, it continues to supply GEO with other disinfectant products, continues to sell quaternary ammonium disinfectants of comparable formulation and pack size to institutional customers, and continues to price them using the same program-pricing methodology reflected on the invoices. (Black Decl. ¶¶ 5, 11; Swinford Decl. ¶¶ 8, 25.) Spartan also has a current Statement

of Work in place with GEO, and it includes a price-hold commitment. (Swinford Decl. ¶ 14; Black Decl. ¶ 5.) Because Spartan uses the same methodology today, the 2020 net prices remain competitively meaningful today. (Swinford Decl. ¶ 25; Black Decl. ¶ 11.)

The same analysis applies to the dollar amounts on SPARTAN_001965. Because the report lists quantity and gallons for each product line, dividing each line's dollar value by those figures yields Spartan's net per-unit and per-gallon price for the account, the same information the invoice price fields disclose. (Swinford Decl. ¶¶ 19, 21; Black Decl. ¶ 9.) The "Distrib. End User Credit" amount further reveals the credit Spartan applied to the account, which is part of its program pricing and margin structure. (Swinford Decl. ¶ 21; Black Decl. ¶ 9.) The 2018 figures reflect the same program pricing for the same account, and they remain competitively meaningful for the reasons stated above. (Swinford Decl. ¶ 25; Black Decl. ¶ 11.)

The invoice analysis applies equally to the unit prices, extended values, line totals, tax, and total order values on the two GEO-Adelanto order confirmations (SPARTAN_002143; SPARTAN_002145), which state the same customer-specific net pricing for the same account and whose products and quantities will remain public. (Black Decl. ¶¶ 9, 11; Swinford Decl. ¶ 20; Mesa Decl. ¶ 10.)

On the other side of the balance, the public interest in these pricing fields is minimal. The public's interest in judicial records rests on its interest in "understanding the judicial process." *Kamakana*, 447 F.3d at 1179. Where the redacted figures did not bear on the Court's resolution of any motion, that interest is weak and is outweighed by the competitive harm. *Rabin v. Google LLC*, No. 22-cv-04547-PCP, 2026 WL 2392370, at *9 (N.D. Cal. Aug. 17, 2026); *see Primus*, 395 F. Supp. 3d at 1267. Spartan's request is also consistent with how the same information already appears on the public docket: Spartan filed HDQ Neutral invoices publicly with these price fields redacted and their other content, including the terms of sale, visible. (Dkt. 317-7, Ex. D; Swinford Decl. ¶ 20.) Neither the class certification order nor the

summary judgment order relied on Spartan's per-unit prices or invoice totals (see Dkts. 365, 491), and nothing about the products, quantities, timing, or delivery of HDQ Neutral to Adelanto will be concealed.

**D.** The Price-Hold Sentence, the Reporting Metrics, the Equipment Term, and the Customer-Specific Fulfillment, Freight, and Payment Terms in the Statement of Work Warrant Redaction.

Spartan recognizes that non-price contract terms require a more particularized showing than price figures. *See Confederated Tribes of Siletz Indians of Or. v. Weyerhaeuser Co.*, 340 F. Supp. 2d 1118, 1124 (D. Or. 2003) (unsealing supply contracts except for price terms). That is why Spartan does not seek to seal the Statement of Work or to redact the provisions that describe Spartan's supply, servicing, training, and audit obligations. It seeks to redact four sentences, one list, one cross-reference to the servicing-distributor directory, the freight term in the Shipping Instructions, and the payment term.

**The price-hold sentence.** A commitment to hold prices firm for a stated period is a pricing term. Its duration is a negotiated, account-specific economic term that Spartan does not disclose to other customers or competitors, and it is a principal variable in competitive bidding for multi-year institutional programs. (Black Decl. ¶¶ 6-7; Swinford Decl. ¶¶ 12-14.) Disclosure would allow a competitor to offer a longer hold period at the next bid and would allow other national accounts to demand the same commitment. (Black Decl. ¶ 7; Swinford Decl. ¶ 14.) Contract terms of this kind are sealable. *In re Elec. Arts*, 298 F. App'x at 569 (pricing terms and guaranteed minimum payment terms); *SteppeChange LLC v. VEON Ltd.*, 354 F. Supp. 3d 1033, 1045-46 (N.D. Cal. 2018) (nonpublic pricing terms in contract).

**The reporting metrics.** Spartan seeks to redact only the bulleted list of specific metrics in the REPORTING paragraph. The statements in that paragraph that GEO receives monthly usage reports at no cost and that Spartan hosts monthly review calls to address usage spikes remain public. (Swinford Decl. ¶ 15.) Spartan designed that reporting package, continues to offer the same metric structure to current institutional

customers, and does not publish it. (Black Decl. ¶ 8; Swinford Decl. ¶ 16.) If the list were public, competitors could replicate Spartan's reporting offering without the investment Spartan made to develop it. (Black Decl. ¶ 8; Swinford Decl. ¶ 17.) Spartan does not overstate the point: this is its most modest request, and it seeks only to keep a short, non-public list that it developed and still uses from being handed to competitors through a court filing, where the list bears on no issue the Court decided. Courts seal non-public business information of this kind. *Pulse Elecs.*, 530 F. Supp. 3d at 1031 (non-public financial, pricing, and strategy information); *Rabin*, 2026 WL 2392370, at *9 (granular internal metrics and pricing strategy).**The equipment term.** Like the price hold, the equipment term on SPARTAN_000047 is negotiated account by account, and the equipment Spartan provides is a cost component of the overall economics of an account. (Black Decl. ¶ 6; Swinford Decl. ¶ 18.) If the term were public, competitors and Spartan's other customers and prospects could infer Spartan's approach to equipment costs and use that information in competing bids and in their own negotiations with Spartan. (Black Decl. ¶ 6; Swinford Decl. ¶ 18.) The request is a single sentence; the rest of the dispenser and cage provision remains public.

**Customer-specific fulfillment, freight, and payment terms.** Spartan also seeks to redact four narrow passages on SPARTAN_000045: (i) the passage describing order routing and the delivery commitment and identifying where the servicing distributors are listed; (ii) the passage describing the proof-of-delivery and invoicing process; (iii) the Shipping Instructions text stating the freight-prepaid threshold and related freight terms; and (iv) the payment term. These are not boilerplate. They are confidential, customer-specific commercial terms that Spartan negotiated for a single national account, and they are precisely the kind of "business information that might harm a litigant's competitive standing" that need not be made available through court files. *Nixon*, 435 U.S. at 598. Contract terms of this character are routinely sealed. *See In re Elec. Arts*, 298 F. App'x at 569 (pricing terms, royalty

rates, and guaranteed minimum payment terms). (Swinford Decl. ¶¶ 6, 18; Black Decl. ¶ 6.)

Freight and payment terms are economic concessions in their own right. Each carries a direct cost to Spartan: the freight expense Spartan absorbs, and the carrying cost of the receivables Spartan finances during the payment period, both of which Spartan's Chief Financial Officer analyzes as part of the margin on each national account. (Black Decl. ¶ 6.) Spartan sets those terms account by account, does not publish them, and does not apply them uniformly across its customers. (Black Decl. ¶ 6; Swinford Decl. ¶ 18.) Combined with the price-hold and equipment terms, they disclose the total economic package Spartan offers a national institutional account. (Swinford Decl. ¶ 18; Black Decl. ¶ 6.) A competitor holding that picture could structure a bid to undercut it, and Spartan's other customers and prospects could demand the same freight and payment terms regardless of differences in order size, delivery locations, or credit profile. (Black Decl. ¶ 6; Swinford Decl. ¶ 18.)

The fulfillment passages are sensitive for a related reason. The delivery commitment and invoicing process reflect Spartan's cost-to-serve structure for national accounts, and the delivery and distributor-routing terms reveal how Spartan structures its go-to-market and fulfillment model for national accounts, which competitors could replicate or target. (Black Decl. ¶ 6; Swinford Decl. ¶ 18.)

On the other side of the balance, the public interest in these passages is nil. Not one of them says anything about HDQ Neutral, its labeling, its safety, or how it was diluted, dispensed, or used at Adelanto, and none bore on any question the Court decided. (Swinford Decl. ¶¶ 9, 18.) The public's understanding of this dispute, and of the Court's rulings, is exactly the same with or without them. The request is also narrowly tailored: Spartan seeks to redact sentences, not provisions. The headings of the ordering-process, shipping, and payment-terms provisions, the ordering channels, the minimum-order provision, and the rest of the Statement of Work remain public. (Swinford Decl. ¶ 11.) *See In re Midland*, 686 F.3d at 1119-20.

Two points distinguish this request from the contract terms unsealed in *TML Recovery*, 714 F. Supp. 3d at 1221-22. There, the contract terms were central to the court's resolution of the summary judgment motions. Here, neither the price-hold duration, the reporting metrics, the equipment term, nor the customer-specific fulfillment, freight, and payment terms has anything to do with how HDQ Neutral was diluted, dispensed, labeled, or used at Adelanto, and the provisions of the Statement of Work that do bear on those questions will be public. And unlike the documents dating back to 2012, 2015, and 2018 at issue in *Avila v. Ford Motor Co.*, 821 F. Supp. 3d 1113, 1124-25 (N.D. Cal. 2026), the price-hold term reflects a structure Spartan uses today: Spartan has a substantial number of national-account and institutional agreements in place, many of which include a price-hold commitment, and Spartan continues to offer the same metric structure to current institutional customers. (Black Decl. ¶¶ 7-8; Swinford Decl. ¶¶ 14, 16.) Finally, the Statement of Work is a national agreement covering all GEO facilities in the United States and every category of Spartan housekeeping and sanitation chemical; it is not an Adelanto-specific or ICE-specific price list. (Swinford Decl. ¶ 10; Black Decl. ¶ 5.)

**E. Employee Contact Information Warrants Redaction.**

Courts in this District frequently seal personal contact information such as e-mail addresses and telephone numbers, particularly for non-parties. *Kurin*, 2024 WL 5423824, at *3. Courts throughout the Circuit do the same, including where the contact information belongs to government employees in immigration matters. *Nightingale v. U.S. Citizenship & Immigr. Servs.*, 507 F. Supp. 3d 1193, 1213 (N.D. Cal. 2020) (sealing personal identifying information of ICE and USCIS employees in summary judgment exhibits); *A.H. v. Wynn Las Vegas, LLC*, No. 2:24-cv-01041-GMN-NJK, 2026 WL 674499, at *4 & n.6 (D. Nev. Mar. 9, 2026) (declining to redact employee names but redacting employee e-mail addresses on the court's own motion because they could be used for harassment); *Johnson v. Zuffa, LLC*, No. 2:21-cv-01189-RFB-BNW, 2026 WL 2138056, at *2, *5 (D. Nev. July 23, 2026) (redacting

phone numbers and e-mail addresses under good-cause standard); *Empower Clinic Servs., L.L.C. v. Legitscript L.L.C.*, No. 3:25-cv-00514-AB, 2025 WL 1099105, at *3 (D. Or. Apr. 11, 2025) (redacting employee work and personal phone numbers under compelling reasons standard, while declining to redact names and an e-mail address on the record presented). In the analogous FOIA context, the Ninth Circuit has likewise recognized that e-mail addresses "may add to the risk of privacy invasion with little additional benefit to the public interest" even where names are disclosed. *Pomares v. Dep't of Veterans Affs.*, 113 F.4th 870, 885 (9th Cir. 2024) (quoting *Elec. Frontier Found. v. Off. of the Dir. of Nat'l Intel.*, 639 F.3d 876, 888 (9th Cir. 2010), *abrogated* on *other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 990 (9th Cir. 2016) (en banc) (per curiam)).

Spartan's request is stronger than those that succeeded in these cases. In May and June 2020, HDQ Neutral use at Adelanto became the subject of an advocacy complaint (filed by ICIJ and Freedom for Immigrants), a protest, press inquiries, and a congressional letter identifying Spartan by name. (Swinford Decl. ¶ 28.) During June 2020, Spartan and its employees received a large volume of hostile, harassing, and threatening communications, including e-mails to employees' individual Spartan addresses and social-media messages directed at Spartan and its employees. On a single day, June 13, 2020, Spartan received more than 400 posts on its Instagram account; posts on a public Instagram page Spartan did not control listed employees' contact information; and a regional manager reported that an employee had been threatened on social media and was frightened. (*Id.* ¶ 29.) The recipients included sales, customer-service, reception, and marketing personnel, and several employees whose direct-contact information appears in the exhibits work in those same roles. (*Id.* ¶ 31.) Spartan preserved copies of the e-mails, disabled comments on its social media accounts, and offers the records for in camera review. (*Id.* ¶ 32.) To the declarant's recollection, the communications tapered off in late June and early July 2020. (*Id.* ¶

33.) ICIJ's motion seeks to unseal documents on the same subject matter, and publication of the identifiers would renew that risk. (*Id.* ¶ 34.)

That risk is concrete, not speculative. On May 21, 2020, two advocacy organizations submitted a complaint concerning HDQ Neutral to ICE, GEO, and DHS's Office for Civil Rights and Civil Liberties. By June 17, 2020, a document titled "Hold Spartan Chemical Accountable – Contact Spartan" was circulating online. It listed Spartan's corporate social media accounts and the personal Instagram account of a Spartan employee, listed named Spartan employees with their individual work e-mail addresses and direct-dial telephone extensions, urged readers to "call and email frequently," supplied a template e-mail to be paraphrased "so it doesn't get filtered out," and asked readers to "show up to these places" at Spartan's offices. After June 17, 2020, Spartan received e-mails from members of the public whose text closely matched the template. (Swinford Decl. ¶ 30.) The document, produced as SPARTAN_006093 to SPARTAN_006096, is not attached to this Opposition; Spartan will lodge a copy for in camera review if the Court wishes. (*Id.*) Spartan does not know who created the document, and it does not suggest that ICIJ had any role in it. The point is a narrower one. The last time public attention focused on this subject, it fell on individual Spartan employees through precisely the identifiers Spartan now asks the Court to redact. The remedy Spartan seeks is correspondingly narrow: redaction of contact identifiers only, with the employees' names and titles left public. (Swinford Decl. ¶ 35.)

The request is also narrowly tailored in precisely the way ICIJ's counsel has told this Court the law requires. In *Gonzalez*, ICIJ faulted GEO for failing to explain why redaction of employee names and e-mail addresses would not suffice, and pointed to decisions redacting officers' telephone numbers. *Gonzalez*, Dkt. 133 at 9-10. Spartan seeks no name redactions. Its employees' names, titles, and words will be public, so *Perez v. City of Fresno*, 482 F. Supp. 3d 1037, 1048-49 (E.D. Cal. 2020), *reconsideration denied*, 519 F. Supp. 3d 718 (E.D. Cal. 2021), which declined to

obscure the identities of private contractor employees who actively participated in a restraint under a public contract, and which noted that the footage disclosed no addresses, Social Security numbers, or similar private information, *id.* at 1044, has no application. Plaintiffs themselves sought redaction of the names of non-litigants to protect them against retaliation (Declaration of Ashley Artmann in Support of Ex Parte Application to Seal, Sept. 8, 2025, ¶¶ 14-17, ECF No. 336), a broader request than Spartan's, which is limited to contact details and leaves names and titles public. Plaintiffs also sought sealing of their own protected health information. (Artmann Decl., Dec. 1, 2025, ¶ 8, ECF No. 445; *see* Mesa Decl. ¶ 12.) ICIJ has excluded Plaintiffs' personal information from its own request (ECF No. 544 at i, 5 n.8); Spartan's non-party employees are entitled to equivalent treatment. The line Spartan draws is a principled one, applied even-handedly: Spartan has extended the identical convention, as a courtesy, to GEO and Home Depot personnel appearing in the same exhibits.[2]

### F. The Public Interest in Detention Conditions Is Fully Served by Unsealing Everything Except the Redacted Fields.

Spartan does not minimize the public's interest in conditions at Adelanto. That interest is the reason Spartan has consented to the release of every substantive record. But the right of access can be accommodated by "selective redaction," a narrowly tailored alternative to sealing. *See Civil Beat L. Ctr. for the Pub. Int., Inc. v. Maile*, 117 F.4th 1200, 1211 (9th Cir. 2024) (First Amendment right of access). Even in litigation over a privately operated correctional facility, courts have treated proprietary and safety concerns as grounds, "at best," for limited redactions rather than wholesale sealing, which is all Spartan asks. *See Kelly v. Wengler*, 979 F. Supp.

---

[2] As a courtesy to GEO and non-party The Home Depot, Spartan has also redacted, in red, the individual e-mail addresses and mobile, cell, and direct-extension numbers of GEO and Home Depot personnel in Exhibits B and D, applying the identical convention under which names and titles remain public. (Mesa Decl. ¶ 11.) Spartan does not itself seek to seal that information and defers to GEO and Home Depot on whether it should remain redacted.

2d 1243, 1246 (D. Idaho 2013) (unsealing filings subject to limited redactions). And *Raher v. Fed. Bureau of Prisons*, 749 F. Supp. 2d 1148 (D. Or. 2010), a FOIA case about prices paid by a federal agency to a detention contractor, does not address a private supplier's pricing to another private company. Spartan is not the government's contractor; it is a supplier to one. The public will learn everything about what Spartan supplied and how it was used. It does not need Spartan's net price, its price-hold period, its reporting metrics, its equipment term, its customer-specific fulfillment, freight, and payment terms, or its employees' personal mobile phone numbers to understand this case or the Court's rulings.

Nor does Spartan contend that the settlement extinguishes the presumption of access; it does not. *See In re Midland*, 686 F.3d at 1118, 1120 (applying compelling reasons standard to records filed with summary judgment motions after the defendants settled). Spartan notes only that the redacted fields played no role in any ruling, which further diminishes any public interest in them. *See In re Meta Pixel Tax Filing Cases*, 826 F. Supp. 3d 1217, 1238-39 (N.D. Cal. 2026) (sealing material not relied on in the class certification analysis while unsealing material central to it).

### G. Spartan Does Not Oppose Intervention.

Spartan does not oppose ICIJ's motion to intervene for the limited purpose of seeking access to the sealed records (ECF No. 543), and it has filed a separate statement of non-opposition. *See San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1100-01 (9th Cir. 1999). Spartan reserves all arguments on the merits of the motion to unseal.

## IV. CONCLUSION

Spartan respectfully requests that the Court (1) grant ICIJ's motion in part and deny it in part; (2) maintain under seal the existing provisionally sealed copies at ECF Nos. 315 and 336 only as to the specific passages shown in the redacted exhibits and redaction index (Mesa Decl. Exs. B-D), namely the invoice pricing fields on SPARTAN_000009, the pricing fields on the order confirmations SPARTAN_002143

and SPARTAN_002145, the dollar amounts on SPARTAN_001965, the identified Statement of Work passages on SPARTAN_000045 through SPARTAN_000047, and Spartan employees' direct-contact identifiers; (3) unseal all other portions of the Spartan-designated records, with the public redacted versions filed as Mesa Decl. Exs. B-D serving as the public record of those exhibits; and (4) decline to adopt ICIJ's proposed finding of forfeiture. Spartan takes no position in this opposition on records designated by GEO, except that Spartan requests the same contact-information redactions for Spartan employees whose contact details appear in GEO-designated exhibits. (Mesa Decl. ¶ 15.)

Dated: November 16, 2026

PIERSON FERDINAND LLP

By: /s/ David D. Mesa
David D. Mesa
Matthew H. Weiner
Attorneys for Defendant and Third-Party Defendant
SPARTAN CHEMICAL COMPANY, INC.