**PIERSON FERDINAND LLP**
DAVID D. MESA, State Bar No. 257488
MATTHEW H. WEINER, State Bar No. 236394
2100 Geng Road, Suite 210
Palo Alto, CA 94303
Telephone: 415.915.4415
*david.mesa@pierferd.com*
*matthew.weiner@pierferd.com*

Attorneys for Defendant and Third-Party Defendant
SPARTAN CHEMICAL COMPANY, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| LIGAYA RONDUEN, et al.,<br>Plaintiffs,<br>v.<br><br>THE GEO GROUP, INC., a Florida corporation, and SPARTAN CHEMICAL COMPANY, INC., an Ohio corporation,<br>Defendants. | Case No.: 5:23-cv-00481-JGB-ACCV<br><br>[CLASS ACTION]<br><br>Judge: Hon. Jesus G. Bernal |
| THE GEO GROUP, INC., a Florida corporation,<br>Third-Party Plaintiff,<br><br>v.<br><br>SPARTAN CHEMICAL COMPANY, INC. and ROES 1-10,<br>Third-Party Defendants. | **DECLARATION OF AMY SWINFORD IN SUPPORT OF SPARTAN CHEMICAL COMPANY, INC.'S OPPOSITION IN PART TO MOTION TO UNSEAL COURT RECORDS (ECF NO. 544)**<br><br>Hearing Date: December 7, 2026<br>Time: 9:00 a.m.<br>Place: Courtroom 1, Riverside<br><br>Complaint Filed: March 20, 2023<br>FAC Filed: January 6, 2025<br>Trial Date: None set (class settlement preliminarily approved September 25, 2026, Dkt. 541) |
| INLAND COALITION FOR IMMIGRANT JUSTICE,<br>Proposed Intervenor. | |

I, Amy Swinford, declare as follows:

1. I am the International & Risk Manager of Spartan Chemical Company, Inc. ("Spartan"). I have held that position since 2008. I have personal knowledge of the facts stated in this declaration, including through my responsibilities for Spartan's risk management, my participation in Spartan's response to the 2020 public controversy concerning HDQ Neutral (as a recipient of internal e-mail correspondence), and my review of the business records described below, which Spartan makes and keeps in the ordinary course of its business. If called as a witness, I could and would testify competently to these facts.

2. I submit this declaration in support of Spartan's Opposition in Part to the Motion to Unseal Court Records filed by Inland Coalition for Immigrant Justice ("ICIJ") (ECF No. 544). I understand that Spartan consents to public filing of every Spartan-designated document identified in ICIJ's motion, subject only to the three categories of redactions described below, and that Spartan does not oppose ICIJ's motion to intervene. I make this declaration to explain, document by document and clause by clause, why each of those three categories of information would cause concrete harm if made public.

3. I have a dual role as Risk Manager and International Manager. As Risk Manager, I serve as the company's primary point of contact for product liability matters and litigation, facilitating contact between relevant Spartan personnel and attorneys, gathering requested documents and company information to support the company's defense, and consulting with and reporting to a designated member of Spartan's Board in all product liability matters. As International Manager, I oversee the coordination and processing of all international orders shipped outside the continental United States. As a Spartan employee, I am familiar with Spartan's general policy of keeping customer pricing and contract terms confidential. The facts stated below concerning Spartan's pricing, price-hold commitments, and account practices

are based on my consultations with Justin Black, Spartan's Chief Financial Officer, and Doug Peterson, Spartan's Vice President Corporate Accounts, and on my review of the documents identified below. Mr. Black addresses those facts from his personal knowledge in his declaration submitted with this declaration. The facts stated below concerning the 2020 communications and Spartan's response to them are based on my review of Spartan's business records and on my consultation with Cali Sartor, Spartan's Vice President of Marketing, regarding her recollection and records of those communications and of Spartan's actions in response.

4. Spartan is a privately held manufacturer of commercial cleaning, sanitation, and disinfectant chemicals headquartered at 1110 Spartan Drive, Maumee, Ohio 43537. Spartan sells to institutional customers, including correctional, healthcare, education, hospitality, and government facilities, through national-account agreements and through a network of authorized distributors. Spartan competes for those programs against several national manufacturers of institutional sanitation chemicals, including Ecolab and Diversey, which bid against Spartan for multi-site institutional accounts.

5. Spartan does not publish customer-specific pricing, price-hold commitments, or account-reporting packages. Spartan discloses that information only to the customer concerned and to the authorized distributor servicing the account, and only for purposes of administering the account. Spartan marks its national-account Statements of Work "Confidential - Not for Public Disclosure," as the Statement of Work at issue here is marked on every page, and maintains two levels of pricing, each with restricted access. Distributor cost, the price an authorized distributor pays when purchasing from Spartan, is available only to authorized distributors through a password-protected log-in to their distributor accounts on Spartan's website. National-account pricing, the pricing referenced in the Statement of Work, is prepared account by account by Spartan's corporate accounts team; national-account customers have no

remote or online access to it and receive only the pricing that Spartan physically provides to them. To my knowledge, none of the information Spartan asks the Court to redact has been publicly disclosed.

6. **Summary of the requested redactions.** Spartan asks the Court to redact only the following information: (a) four price fields on the invoices produced as SPARTAN_000009 (Dkt. 315-46; Dkt. 336-52), the corresponding dollar figures on the product lookup report produced as SPARTAN_001965 (Dkt. 336-63), and the pricing fields on the two GEO-Adelanto order confirmations produced as SPARTAN_002143 and SPARTAN_002145; (b) limited passages in the Statement of Work produced as SPARTAN_000044 through SPARTAN_000049 (Dkt. 315-12; Dkt. 336-17), namely the price-hold sentence, the list of REPORTING metrics, and the customer-specific commercial terms described in paragraph 18 below (two passages describing order routing, delivery, proof of delivery, and invoicing, the shipping-instructions text, and the payment term on SPARTAN_000045, and the equipment sentence in the dispenser and cage provision); and (c) direct-contact identifiers of Spartan employees wherever they appear in the Spartan-designated exhibits. Spartan does not ask the Court to redact any employee's name or title, any product name, quantity, or date, or the substance of any communication.

7. The proposed redactions are shown on the redacted versions attached as Exhibits B through D to the Declaration of David D. Mesa. I have reviewed those exhibits, and they accurately reflect the redactions described in this declaration.

8. Spartan no longer supplies HDQ Neutral to GEO, but it continues to supply GEO with other disinfectant products. Quaternary ammonium disinfectants make up most of Spartan's disinfectant line and are purchased by the large majority of Spartan's customers across all market segments, including schools, hotels, hospitals, food service, and institutional and government facilities.

9. I understand that ICIJ contends the public has a heightened interest because Spartan supplied a contractor that operates an immigration detention facility. The information Spartan asks to redact does not describe how HDQ Neutral was diluted, dispensed, labeled, applied, or serviced at Adelanto. All of that information will be public.

10. **A. The Statement of Work (SPARTAN_000044 to SPARTAN_000049).** The Statement of Work is a six-page national-account agreement between Spartan and GEO Group Facilities, effective December 1, 2019 through November 30, 2022, executed by Spartan's Vice President of National Accounts on January 7, 2020. It covers "all Spartan housekeeping, laundry, warewash, floor care, carpet care, food service, and drain maintenance chemicals" purchased by GEO facilities "located in the United States." (SPARTAN_000044.) It is not specific to the Adelanto facility or to facilities operated for U.S. Immigration and Customs Enforcement.

11. Spartan does not seek to redact the Statement of Work's intent, minimum-order, remittance, lead-time, service-equipment-support, account-representation, quarterly-audit, training-materials, or roll-out provisions, the ordering-process headings, the description of the customer service channels for placing orders, or any other part of the ordering-process, shipping, payment-terms, or dispenser and cage provisions other than the passages described in paragraph 18 below. Those provisions describe what Spartan agreed to supply and how it agreed to service, train, and audit GEO facilities, and they will be public.

12. **A.1 The price-hold sentence (SPARTAN_000046, "PRICES").** The "PRICES" paragraph contains two sentences. Spartan does not seek to redact the first, which states that pricing is based on the Exhibit A formulary. Spartan seeks to redact only the second sentence, which states the price-hold term.

13. A price-hold commitment is one of the principal economic terms Spartan negotiates in multi-year national-account programs. Spartan negotiates its duration account by account, based on its own cost and business considerations, and does not disclose one customer's price-hold terms to other customers or to competitors.

14. Spartan continues to offer price-hold commitments, structured the same way, in its current national-account and institutional proposals. Spartan has a current Statement of Work in place with GEO, and it includes a price-hold commitment. Spartan currently has a substantial number of national-account and institutional agreements in place, many of which include a price-hold commitment. If the price-hold term Spartan agreed to for GEO were public, (a) competing manufacturers bidding against Spartan for multi-site institutional accounts could offer a price-hold term calibrated to beat Spartan's known position, and (b) Spartan's other national-account customers and prospects could demand at least the same price-hold term, regardless of differences in volume, product mix, or service level. Either result would reduce Spartan's margins or cost it business in competitive bids.

15. **A.2 The reporting metrics (SPARTAN_000047, "REPORTING").** The "REPORTING" paragraph states that GEO will receive monthly usage reports at no cost and that Spartan will host monthly review calls to address spikes in usage. Spartan does not seek to redact those statements. Spartan seeks to redact only the bulleted list that follows those statements, which identifies the specific metrics the reports contain.

16. That metric set is a Spartan-developed reporting package. Spartan designed it to help multi-site institutional customers measure and compare chemical cost across their facilities. Spartan presents this reporting package in its proposals as a feature of its programs, continues to offer the same metric structure to current institutional customers, and does not publish it.

17. If the metric list were public, competitors could replicate Spartan's reporting offering without the investment Spartan made to develop it, and could structure their pricing to undercut Spartan on the specific measures that institutional purchasing departments use to compare programs.

18. **A.3 Customer-specific commercial terms (SPARTAN_000045 and SPARTAN_000047).** Spartan seeks to redact five passages that state customer-specific commercial terms negotiated for the GEO national account. On SPARTAN_000045**,** Spartan seeks to redact (a) the passage describing order routing and the delivery commitment, and identifying where the servicing distributors are listed; (b) the passage describing the proof-of-delivery and invoicing process; (c) the text under "SHIPPING INSTRUCTIONS," which describes how products will be shipped and states the freight-prepaid threshold and the related freight terms; and (d) the payment term. On SPARTAN_000047, Spartan seeks to redact (e) the first sentence of the **"DISPENSER AND CHEMICAL CAGE AGREEMENT**" provision, which states the equipment term on which dilution centers and containment cages are provided to GEO Group Facilities. These terms were negotiated for the GEO national account, and Spartan does not publish them. Spartan does not disclose to the market the distribution and fulfillment model it uses for a national account, including distribution-center routing, the delivery commitment, how servicing distributors are selected, and the proof-of-delivery and invoicing process, or the freight-prepaid threshold, the payment term, or the equipment term. Spartan treats these terms as confidential and limits access to them in the manner described in paragraph 5 above. The freight terms, the payment term, and the equipment term are economic terms that Spartan negotiates, and they are not uniform across Spartan's customers. Together with the price-hold term, they show the total economic package Spartan offers a national institutional account. If they were public, competing manufacturers could calibrate their own bids for multi-site institutional accounts to match or exceed that

package, and Spartan's other customers and prospects could demand the same terms regardless of differences in volume, product mix, or service level. The delivery and distributor-routing terms also reveal how Spartan structures its go-to-market and fulfillment model for national accounts, which competitors could replicate or target. Either result would reduce Spartan's margins or cost it business in competitive bids. None of these terms concerns HDQ Neutral, its labeling, or how it was used at Adelanto.

19. **B. The invoices (SPARTAN_000009), product lookup report (SPARTAN_001965), and order confirmations.** The invoices are Spartan invoices to GEO for products shipped to the Adelanto facility in 2020, including HDQ Neutral and other Spartan sanitation products. Each invoice line identifies the product, product code, quantity, weight, and unit of measure, and states an after-discount unit price and extended price; each invoice states tax, a total value, and terms of sale. SPARTAN_001965 is an internal Spartan "Product Lookup" report, generated from Spartan's records on October 10, 2018, that lists, for each of the two GEO-Adelanto accounts, the products purchased from January 1 through October 10, 2018, with pack size, quantity, gallons, and weight; the dollar value of each product line; a distributor end-user credit; and a grand total for each account.

20. Spartan asks the Court to redact four fields: unit price, extended price, tax, and total invoice value. Spartan does not ask to redact product names or codes, quantities, weights, units, ship dates, ship-to locations, invoice numbers, terms of sale, or the sales-representative field. These are the same four fields Spartan redacted when it publicly filed HDQ Neutral invoices to the Adelanto facility as Exhibit D to the Declaration of William J. Schalitz (Dkt. 317-7), on which the terms of sale are visible. Anyone reading the redacted invoices will be able to see what Spartan shipped to Adelanto, when, and in what quantities. On SPARTAN_001965, Spartan asks the Court to redact only the dollar amounts: the dollar value of each product line, the end-

user credit amount, and the grand-total dollar amount for each account. Product names, part codes, pack sizes, quantities, gallons, and weights would remain public. The same customer-specific pricing fields (unit price, extended value, tax, and total) appear on two GEO-Adelanto order confirmations produced as SPARTAN_002143 and SPARTAN_002145 (Plaintiffs' Exhibits 103 and 104). Spartan asks the Court to redact only those pricing fields on the order confirmations, with products and quantities remaining public, and the reasons stated in this declaration for the invoices apply equally to them.

21. The unit and extended prices are Spartan's customer-specific net prices for each product after application of the program pricing and discounts negotiated for the account. Together with the tax and total fields, from which the net prices can be derived, they reveal Spartan's net pricing for a national institutional account. The dollar values on SPARTAN_001965 reveal the same information. Because the report states the quantity and gallons for each product line, dividing a line's dollar value by those figures yields Spartan's net price per unit and per gallon for the account. The end-user credit amount reveals the credit Spartan applied to the account, which is part of its program pricing and margin structure.

22. Spartan provides invoices only to the customer billed and, where applicable, to the servicing distributor. Spartan does not publish its customer-specific net prices, and to my knowledge the pricing on these invoices has not been publicly disclosed. The same is true of SPARTAN_001965, which is an internal report that Spartan does not provide to the public.

23. Spartan's competitors in institutional sanitation chemicals could use Spartan's customer-specific net prices to undercut Spartan in competitive bids for institutional accounts. Because the invoices show a consistent series of transactions over a period, rather than a single price point, they reflect Spartan's stable program pricing rather than a one-time price.

24. Spartan's other institutional customers and prospects could also use the invoices to demand the same net prices in their own negotiations, regardless of differences in volume, delivery requirements, or service obligations. Either use would cause Spartan to lose bids or accept lower margins.

25. The fact that the invoices date from 2020 does not eliminate that harm. Spartan continues to sell quaternary ammonium disinfectants of comparable formulation and pack size to institutional customers, and continues to price them using the same program-pricing approach reflected on these invoices. As a result, the 2020 net prices remain competitively meaningful today. The same is true of the 2018 figures on SPARTAN_001965, which reflect the program pricing for the same account. Spartan's current pricing to GEO and to other institutional customers continues to be built on the same cost structure and pricing approach reflected in the redacted figures. A competitor with those figures could readily estimate Spartan's current pricing.

26. **C. Employee contact information.** The Spartan-designated exhibits, including the internal and external e-mail chains, the Statement of Work, and the inspection-report transmittals, contain direct-contact information for approximately 13 to 15 current and former Spartan employees, including sales, national-accounts, technical, regulatory, marketing, and customer-service personnel.

27. Spartan asks the Court to redact only the following identifiers: mobile and direct telephone numbers, direct-dial extensions, individual e-mail addresses, fax numbers, LinkedIn profile addresses, and the contact details within e-mail signature blocks. Spartan does not ask to redact any employee's name or job title, Spartan's corporate address or toll-free number, generic departmental mailboxes, or any part of the content of any communication.

28. In May and June 2020, HDQ Neutral use at the Adelanto facility became the subject of an advocacy complaint to the Department of Homeland Security Office for Civil Rights and Civil Liberties (filed by ICIJ and Freedom for Immigrants), a

protest outside the facility, press inquiries to Spartan, and a June 15, 2020 letter from Members of Congress to ICE that identified Spartan by name.

29. During June 2020, Spartan and its employees received a large volume of hostile, harassing, and threatening communications concerning HDQ Neutral and its use in detention facilities. Not all of these communications were documented. They included e-mails sent to employees' individual Spartan e-mail addresses, telephone calls to Spartan's main switchboard, submissions through Spartan's website contact form, and messages and posts directed at Spartan and its employees through social media, including LinkedIn, Twitter, and Instagram. On a single day, Saturday, June 13, 2020, Spartan received more than 400 posts on its Instagram account. By June 8, 2020, the volume of "belligerent, nasty emails and posts" was such that Spartan instructed its staff not to respond to them and the marketing employee who monitors Spartan's social media accounts in the ordinary course continued to monitor them until the activity normalized. On or about June 16, 2020, Spartan learned that posts on a public Instagram page that Spartan did not control listed the contact information of Spartan employees; Spartan could not remove the posts and filed a complaint with Instagram. The same day, a Spartan regional manager reported that a Spartan employee had been threatened on social media and was frightened.

30. Spartan's business records reflect the following. On May 21, 2020, two advocacy organizations submitted a complaint concerning the use of HDQ Neutral at the Adelanto facility to ICE, GEO, and the DHS Office for Civil Rights and Civil Liberties, and the complaint was publicly reported shortly afterward. On June 17, 2020, a Spartan employee forwarded internally a document that was then circulating online, titled "Hold Spartan Chemical Accountable – Contact Spartan," which was produced in this action as SPARTAN_006093 to SPARTAN_006096. Spartan does not know who created the document. On its face, the document (a) listed Spartan's corporate social media accounts and the personal Instagram account of a Spartan

employee; (b) listed named Spartan employees, with their individual work e-mail addresses and direct-dial telephone extensions, and urged readers to "call and email frequently"; (c) included a template e-mail and asked readers to paraphrase it "so it doesn't get filtered out"; and (d) listed the cities of Spartan's offices and asked readers to "show up to these places." After June 17, 2020, Spartan received e-mails from members of the public whose text closely matched that template. Spartan has not attached the document to avoid republishing its employees' contact information; Spartan will lodge a copy for in camera review if the Court wishes.

31. The employees who received or handled these communications included sales, customer service, reception, and marketing personnel, including the employees responsible for Spartan's switchboard and social media accounts. Several of the employees whose direct-contact information appears in the exhibits at issue work in these same sales and customer-facing roles.

32. Spartan preserved copies of the e-mails it received, and a log of replies received through its general website contact address. Spartan does not keep a telephone call log, and the communications were not reported to law enforcement. Spartan did consult its outside counsel and retained a public relations firm to respond to the controversy. During this period, Spartan disabled comments on its social media accounts to stop harassing posts. Spartan will make these records available for the Court's in camera review if the Court wishes.

33. To my recollection, the communications began to taper off in late June and early July 2020, and I am not aware of comparable communications since then.

34. ICIJ's motion seeks to unseal documents concerning the same subject matter that prompted the 2020 communications, and I understand that public interest organizations frequently publicize records they obtain through unsealing. If the employees' mobile numbers, direct lines, e-mail addresses, and LinkedIn profiles are made public in the court file, anyone reading the records will be able to contact those

individuals directly, at work and on their personal mobile phones and individual accounts, about the same subject that produced threats in 2020. Spartan does not issue separate work telephones; the mobile numbers that appear in the exhibits are the employees' personal phones, some of which are carried on Spartan's corporate phone plan. I believe, based on that experience, that unsealing this information would create a real risk of renewed harassment and threats.

35. Redacting the contact identifiers while leaving names, titles, and content public would not prevent the public from knowing who said or did what. It would prevent only direct contact with the individuals through the identifiers listed above.

36. Spartan has proposed these redactions in good faith and has limited them to what is necessary to prevent the specific harms described above. Spartan does not object to the public filing of any other portion of the Spartan-designated exhibits.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 16, 2026, at Maumee, Ohio.

Amy Swinford

Amy Swinford